**Stephen R. Sady, OSB #81099**
**Chief Deputy Federal Defender**
**101 SW Main Street, Suite 1700**
**Portland, OR  97204**
**Tel: (503) 326-2123**
**Fax: (503) 326-5524**
**Email: Steve_Sady@fd.org**

**Attorney for Petitioner**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

**RICHARD LEE,**                                          **Civ. No. 02-300-CL**

               **Petitioner,**              **MEMORANDUM OF LAW IN**
                                 **SUPPORT OF PETITION FOR WRIT**
    **vs.**                                          **OF HABEAS CORPUS**

**ROBERT LAMPERT,**

               **Respondent.**
_____

# TABLE OF CONTENTS

**Page**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Richard Lee Was Never Left Alone With The Child Victim  . . . . . . . . . . 3

    B.    Only After Robert Nachand, Frequently Left Alone With The Child, Was Convicted Of Abusing Matthew, Did The Allegations Of Abuse By Mr. Lee Arise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    The Trial Court Denied The Defense Motion Filed Under Oregon's Rape-shield Law Requesting Admission Of Evidence Of The Abuse By Robert Nachand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.    Matthew Was Questioned In The Presence Of The Jury, But His Competency Was Never Formally Established . . . . . . . . . . . . . . . . . . . . . 7

    E.    Matthew Confused The Defendant With Robert Nachand, The Man Who Was Convicted Of Abusing Him  . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    F.    Matthew Unequivocally Denied That Any Act Of Sodomy Ever Occurred With The Defendant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    G.    The Only State's Evidence Of Sodomy Was Admitted Through The Victim's Out-Of-Court Statement To Law Enforcement . . . . . . . . . . . . 12

    H.    None Of The Other State Witness Provided Evidence To Support Sodomy Charges, And In Fact, Offered Evidence Of Benign Conduct Or Mistaken Identification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    I.    Defense Counsel Called Matthew's Father, Daniel Hendricks, As His Only Witness . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    J.    The Jury Convicted Mr. Lee Of Sodomy And Sex Abuse  . . . . . . . . . . . 16

i

K.     Despite A Letter From Trial Counsel Regarding Appellate Issues And Lee's Innocence, Appellate Counsel Did Not Raise Any Issues On Direct Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

L.     Mr. Lee Sought Relief In State Post-Conviction Proceedings . . . . . . . . 18

M.     The Ninth Circuit Held That It Was Error To Dismiss Mr. Lee's Federal Habeas Corpus Petition As Time Barred . . . . . . . . . . . . . . . . . . 20

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

I.     Trial Counsel Provided Ineffective Assistance Of Counsel When He Not Only Failed To Consult An Expert But, Failed To Object To, And Offered, Hearsay Statements That Constituted The Sole Evidence Of The Most Serious Charge Against Mr. Lee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

A.     Counsel Was Constitutionally Ineffective Because He Failed To Object To The Admission Of Hearsay That Constituted The Only State's Evidence Of The Most Serious Charges Against Mr. Lee . . . . . . . . . . . 24

1.     The Constitution Requires That Witness Be Subject To Full And Effective Cross-Examination Before The Witness's Prior Statement Is Admissible . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

2.     Matthew's Hearsay Statement Was Inadmissible Because He Was Not Questioned About The Substance Of The Statement On Direct Examination, Thereby Precluding Full Cross-Examination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

3.     Trial Counsel Compounded His Errors By Calling Daniel Hendricks And Eliciting Hearsay Testimony About What Matthew Had Told Him . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

4.     Mr. Lee Was Prejudiced By Counsel's Ineffectiveness . . . . . . . . 32

B.     Counsel Provided Ineffective Assistance For Failing To Consult Or Hire An Expert In Child Abuse Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

ii

1.     Under The Circumstances Of This Case, Counsel Had An Obligation To Consult An Expert In Child Abuse Case . . . . . . . . 32

2.     A Child Abuse Expert Could Have Provided Valuable Information And Testimony Regarding A Child's Competency And Suggestibility, And Proper Interview Techniques . . . . . . . . . 35

3.     Counsel's Failure To Consult A Child Abuse Expert Fell Below Reasonable Standards Of Professionalism That Greatly Prejudiced Mr. Lee's Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

II.    In Failing To Raise On Appeal That The Trial Court Erred In Limiting Defense Counsel's Ability To Cross-Examine The Child Witness, Appellate Counsel Provided Ineffective Assistance In Violation Of The Sixth And Fourteenth Amendments To The United States Constitution . . . . . . . . . . . . . . . . 38

A.     Mr. Lee's Confrontation And Due Process Right To Present A Defense Were Denied When The State Court Applied An Unconstitutional Procedural Bar To Prevent Him From Offering Evidence Central To His Defense Of Mistaken Identity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

B.     By Failing To Raise A Meritorious Issue On Appeal, Appellate Counsel's Performance Fell Below The *Strickland* Standard . . . . . . . . . . 44

III.   There Was Insufficient Evidence To Sustain A Conviction . . . . . . . . . . . . . . . . . 47

A.     There Was Insufficient Evidence As A Matter Of Law To Sustain The Sodomy Convictions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

B.     There Was Insufficient Evidence To Convict Beyond A Reasonable Doubt That Mr. Lee Abused Matthew . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

IV.   Mr. Lee's Claims Are Not Procedurally Barred By The Statute Of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

A.     Mr. Lee Has Demonstrated A Sufficient Showing Of Actual Innocence To Warrant An Evidentiary Hearing Regarding Grounds For Equitably Tolling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

B.    The Statute Of Limitations Should Be Equitably Tolled Because Mr. Lee Was A Victim Of The Oregon Two-Year Statute Of Limitations Trap . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Ake v. Oklahoma,*
      470 U.S. 68 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

*Allen v. Yukins,*
      366 F.3d 396 (6th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Anders v. California,*
      386 U.S. 738 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Bousley v. United States,*
      523 U.S. 614 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*Brown v. United States,*
      167 F.3d 109 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Calderon v. United States District Court (Beeler),*
      128 F.3d 1283 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Calderon v. United States District Court (Kelly),*
      163 F.3d 530 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Caro v. Calderon,*
      165 F.3d 1223, 1226 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Chipman v. Cal,*
      386 U.S. 18 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

*Crane v. Kentucky,*
      476 U.S. 683 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Crawford v. Washington,*
      541 U.S. 36 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

*Crotts v. Smith,*
      73 F.3d 861 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*Davis v. Alaska,*

415 U.S. 308 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 24, 40, 42

*Delaware v. Fensterer*,
    474 U.S. 15 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Delaware v. Van Arsdall*,
    475 U.S. 673 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 39

*Delgado v. Lewis*,
    223 F.3d 876 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Eckert v. Tansy*,
    936 F.2d 444 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Espinoza-Matthews v. California*,
    432 F.3d 1021 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Evitts v. Lucey*,
    469 U.S. 387 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Ferguson v. Palmateer*,
    321 F.3d 820 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Fisher v. Johnson*,
    174 F.3d 710 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Franklin v. Henry*,
    122 F.3d 1270 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 44

*Frierson v. Woodford*,
    463 F.3d 982 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 34

*Gausvik v. Perez*,
    345 F.3d 813 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Gibson v. Klinger*,
    232 F.3d 799 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Gideon v. Wainwright*,
    372 U.S. 335 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Guam v. McGravey*,
    14 F.3d 1344 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Halbert v. Michigan*,
    545 U.S. 605 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Herrera v. Collins*,
    506 U.S. 390 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51, 52

*Holmes v. South Carolina*,
    126 S. Ct. 1727 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 38, 39

*House v. Bell*,
    126 S. Ct. 2064 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

*Idaho v. Wright*,
    497 U.S. 805 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 24, 35, 48

*Jackson v. Virginia*,
    443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Jones v. Souter*,
    395 F.3d 577 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

*LaJoie v. Thompson*,
    217 F.3d 663 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40, 41, 42, 43, 44, 46

*Latzer v. Abrams*,
    602 F. Supp. 1314 (D.C.NY 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

*Lilly v. Virginia*,
    527 U.S. 116 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Lowery v. Collins*,
    996 F.2d 770 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*Majoy v. Roe,*
    296 F.3d 770 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 51

*Maryland v. Craig,*
    497 U.S. 836 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Michigan v. Lucas,*
    500 U.S. 145 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 40, 41

*Miller v. Keeney,*
    882 F.2d 1428 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Moore v. Johnson,*
    194 F.3d 586 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*O'Neal v. Lampert,*
    199 F. Supp. 2d 1064 (D. Or. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Ohio v. Roberts,*
    448 U.S. 56 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 26

*Pace v. DiGuglielmo,*
    544 U.S. 408 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54, 55

*Pennsylvania v. Ritchie,*
    480 U.S. 39 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Powell v. Alabama,*
    287 U.S. 45 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Roe v. Delo,*
    160 F.3d 416 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Rompilla v. Beard,*
    545 U.S. 374 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

*Roy v. Lampert,*
    455 F.3d 945 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Sanders v. Ratelle,*
    21 F.3d 1446 (9th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Schlup v. Delo,*
    513 U.S. 298 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 51, 52, 53, 57

*Spitsyn v. Moore,*
    345 F.3d 796 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Strickland v. Washington,*
    466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Swan v. Peterson,*
    6 F.3d 1373 (9th Cir.1993), *cert. denied,* 513 U.S. 985 (1994) . . . . . . . . . . . . . 35

*United States v. Andrews,*
    75 F.3d 552 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*United States v. Inadi,*
    475 U.S. 387 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Owens,*
    484 U.S. 554 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Swanson,*
    943 F.2d 1070 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Vargas,*
    933 F.2d 701 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Washington v. Schriver,*
    255 F.3d 45 (2nd Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Whalem/Hunt v. Early,*
    233 F.3d 1146 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55

*Wharton v. Bockting*,
    127 S. Ct. 1173 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

*Wiggins v. Smith*,
    539 U.S. 510 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Wigglesworth v. State of Oregon*,
    49 F.3d 578 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Williams v. Taylor*,
    529 U.S. 362 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 33

*Wood v. Alaska*,
    957 F.2d 1544 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 43

*Woodford v. Garcean*,
    538 U.S. 202 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

*Wyzykowski v. Department of Correctional*,
    226 F.3d 1213 (11th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

## STATE CASES

*Hunter v. Maass*,
    106 Or. App. 438 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Lerch v. Cupp*,
    9 Or. App. 508 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Palmer v. State of Oregon*,
    318 Or. 352 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*People v. Michael M.*,
    618 N.Y.S.2d 171 (N.Y.Sup.Ct.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*In re R.M. Children*,
    627 N.Y.S.2d 869 (N.Y.Fam.Ct.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*State v. Balfour*,
    311 Or. 434, 814 P.2d 1069 (1991) . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19, 21, 38

*State v. Wright*,

97 Or. App. 401 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13

## FEDERAL STATUTES

28 U.S.C. §2244 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22, 30, 54, 55

28 U.S.C. §2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## STATE STATUTES

OEC Rule 412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

OEC Rule 803(18a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 36

**Stephen R. Sady, OSB #81099**
**Chief Deputy Federal Defender**
**101 SW Main Street, Suite 1700**
**Portland, OR 97204**
**Tel: (503) 326-2123**
**Fax: (503) 326-5524**
**Email: Steve_Sady@fd.org**

**Attorney for Petitioner**


# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON


**RICHARD LEE,**                                            **Civ. No. 02-300-CL**

              **Petitioner,**                          **MEMORANDUM OF LAW IN**
                                                **SUPPORT OF PETITION FOR WRIT**
    **vs.**                                           **OF HABEAS CORPUS**

**ROBERT LAMPERT,**

              **Respondent.**

───────────────────────────────

## Introduction

During the fall of 1993, Matthew was sexually assaulted. After throughly interviewing Matthew, the state charged Robert Nachand, Matthew's babysitter's live-in boyfriend, with numerous counts of child sex abuse. Nachand pled guilty and was sentenced to 28 months imprisonment. Several months later, Matthew's father contacted the police

with new allegations that the petitioner, Richard Lee also abused Matthew during the same period of time that Nachand had abused Matthew. Detective Fowler interviewed Matthew with his father present, asking questions about "Robert or Richard." As a result of that interview, Mr. Lee was charged with two counts of sex abuse and two counts of sodomy. Following a jury trial in which Matthew testified, Mr. Lee was convicted and later sentenced to 188 months.

Because there was no forensic evidence against Mr. Lee, his conviction is based solely on the testimony of the child and the child's prior statements admitted through the police detective. Counsel did not object to the introduction of the hearsay statements that provided the only evidence of sodomy, even though the Supreme Court had held such testimony violated the Sixth Amendment in *Idaho v. Wright*, 497 U.S. 805 (1990). Although counsel tried to introduce evidence of Nachand's abuse of the child, the court denied the motion under Oregon's rape-shield law, which appellate counsel did not raise the denial as error on direct appeal notwithstanding the constitutional right to present a theory of defense that someone else committed the crime, as reaffirmed in *Holmes v. South Carolina*, 126 S. Ct. 1727 (2006). Counsel did not even consult an expert in child abuse or child testimony, who would have provided essential information in developing a viable defense.

Despite these clear violations of Supreme Court precedent, the state post-conviction proceedings resulted in denial of relief. In his federal petition for relief, Mr. Lee asserts that his attorneys failed to protect his rights under the Confrontation Clause in several respects and inadequately prepared his case in violation of his right to effective assistance of counsel.

Page 2    MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

He also asserts that he is actually innocent of the charges and that there was insufficient evidence to support the conviction.

## STATEMENT OF FACTS

### A.  Richard Lee Was Never Left Alone With The Child Victim.

Cheryll Lee babysat four-year-old Matthew and his two sisters at her apartment in Albany, Oregon during the fall of 1993. Ex. K at 94. Robert Nachand, Ms. Lee's live-in boyfriend, was frequently present while she babysat the children. Ex. K at 97. Mr. Lee, Cheryll's former brother-in-law, also visited the apartment occasionally during the fall with his brother Larry Lee. Ex. K at 95. Cheryll Lee frequently left Matthew alone with Robert Nachand. Ex. K at 107. At no time was Richard Lee alone in the apartment with Matthew, (Ex. K at 105), but on three separate occasions, Cheryll Lee left the children in the apartment with Robert Nachand and Richard Lee for approximately 20 minutes while she went to the store. Ex. K at 103-05. Two days after one of these occasions, Matthew approached Cheryll Lee and told her that "Richard touch his pee-pee." Ex. K at 107. Later that day, Cheryll Lee confronted Mr. Lee with Matthew's accusations. Ex. K at 101. Mr. Lee explained that "must have happened the other day when I was wrestling with him when you went to the store." Ex. K at 100. Cheryll Lee believed Mr. Lee's explanation because "I've seen him with kids before in the past. I've known him for, you know several years, and he's always played with kids, you know." Ex. K at 108.

### B.  Only After Robert Nachand, Frequently Left Alone With The Child, Was Convicted Of Abusing Matthew, Did The Allegations Of Abuse By Mr. Lee Arise.

During this period, Robert Nachand sexually abused Matthew. The police conducted an interview with Matthew, who only described abuse by Nachand. Ex. K at 145. In March 1994, Nachand pled guilty to two Counts of sex abuse; a sodomy count was dismissed as part of the plea agreement. He was sentenced to 28 months.

In the summer of 1994, several months after Nachand was convicted, Matthew's father asked Matthew if Richard Lee had ever abused him. Ex. K at 170. When Matthew said that he did, Daniel Hendricks reported the abuse to the police. Ex. K at 171. Matthew was subsequently interviewed by Detective Fowler in the presence of his father. Ex. K at 112. Detective Fowler used three anatomically correct dolls – designated as the Matthew, the Richard, and the Robert dolls. Ex. K at 144-45. Fowler took photographs of Matthew positioning the dolls, which were later introduced in the state's case in chief. Ex. K at 17. Detective Fowler questioned Matthew about both Mr. Lee and the abuse by Robert Nachand and posed questions such as "did Richard or Robert do this to you." Ex. K at 131. Based on the interview with Detective Fowler, Mr. Lee was charged with two counts of sex abuse in the first degree and two counts of sodomy.

### C.    The Trial Court Denied The Defense Motion Filed Under Oregon's Rape-shield Law Requesting Admission Of Evidence Of The Abuse By Robert Nachand.

The defense theory of the case was of mistaken identity – that the child confused the abuse by Nachand with Mr. Lee. To that end, a month before trial, the defense moved in limine to admit evidence that the victim had been abused by Robert Nachand, alleging acts

that were similar to those made against Mr. Lee.  Ex. J-103.  Counsel requested admission

of the evidence under Oregon's rape-shield law:

> (2)     Notwithstanding any other provision of law, in a prosecution for a crime
> described in ORS 163.355 to ORS 163.427, or in a prosecution for an attempt
> to commit such a crime, evidence of a victim's past sexual behavior other than
> reputation or opinion evidence is also not admissible, unless such evidence
> other than reputation or opinion evidence is:
> . . .
> (b)     Is evidence that
> . . .
>> (C)     Is otherwise constitutionally required to be admitted.

OEC 412(2)(b)(C).  The motion was necessary under Oregon's rape-shield law because

"sexual behavior" is defined to include both volitional and nonvolitional acts.  *State v.*

*Wright*, 97 Or.App. 401, 406 (1989).  Counsel made the motion under the Confrontation

Clauses to United States Constitution, citing to *Davis v. Alaska*, 415 U.S. 308 (1974), and

*Latzer v. Abrams*, 602 F.Supp. 1314 (D.C.NY 1985).[1]

In the offer of proof, the defense submitted that, during the police interview in which

the victim was questioned about the abuse, the similarities of the allegations suggested that

the victim confused the abuse by Nachand with Mr. Lee.  Ex. J-103 at 2.  Specifically, the

defense argued that "[i]t is critical to defendant's case that he be able to call and cross-

examine witnesses as to this evidence of mistaken identification.  Such evidence is

---

[1] *Latzer* extended *Davis v. Alaska* to hold that prohibitions on any questions regarding
the victim's sexual history deprived the petitioner of his ability to challenge a critical element
of the state's case, the identity of the alleged perpetrator, in violation of his constitutional
right to confrontation.  Ex. J-103 at 4.

**Page 5   MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

constitutionally required to be admitted so that defendant's confrontation rights and his right
to present exculpatory material will be protected."  Ex. J-103 at 2.

During the hearing, counsel argued that the court should allow evidence tending to
establish that the victim had been abused by Robert Nachand to support the defense of
mistaken identification by the victim.  Ex. K at 9-11.

> [O]ur position is that . . . this is certainly an avenue of cross-examination that
> we have to be able to explore.  You know, was this child indeed abused by two
> different individuals? Did two different individuals actually abuse him, or was
> he repeatedly abused by the one individual, Mr. Nachand, who's been
> convicted, and then mistakenly identified another individual as to also
> participating in some of that abuse? I just don't see how we can cross-examine
> effectively without getting into that.  Otherwise, you know, we would have to
> go to trial simply with the child saying it happened, and Mr. Lee denying it,
> without having a chance to really explore the – you know – the credibility of
> the witness, and to explore the underlying foundation of this as far a whether
> these are bonified [sic] accusations against Mr. Lee.

Ex. K at 12.  The prosecutor argued that the evidence of Nachand's abuse was prior sexual
conduct, and that none of the exceptions to OEC 412 applied to identity issues.  The court
heard evidence from Detective Fowler regarding the victim's identification of Mr. Lee.  The
court denied the motion, holding as follows:

> Based upon the offer of proof and testimony, the facts relating to identification
> in the instant case are quite different from the facts in *Latzer v. Abrams*, 602
> F.Supp. 1314 (1985) and other cases cited.  For example, the victims in *Latzer*
> were introduced to the accused by an alias name at an unfamiliar place on a
> particular day.  The next day the victims departed from the accused and the
> place where they met, and did not meet again.
>
> [T]he testimony establishes that both accused persons were known to the
> victim over a period of at least weeks, at a place familiar to the child victim.
> Further, a witness, Cheryll, can give evidence that Defendant [Lee] was in the
> presence of the victim at that place at the times alleged.  Finally, Defendant

has made statements to Cheryll, which according to her, reported statements tend to show that the victim and Defendant knew each other and that the relevant conduct did occur.

This Court recognizes that the provisions of OEC 412 must give precedence to the Defendant's right to cross examine on the issue of identification of the Defendant and possible faulty memory of the victim. However in this case, this Court finds the threshold proof is insufficient to establish that he Constitutional rights brought into play here.

Ex J-104. Although Judge Frost did not preside over the trial, defense counsel did not renew its motion prior trial.

### D. Matthew Was Questioned In The Presence Of The Jury, But His Competency Was Never Formally Established.

Although Matthew was only five at the time of trial, defense counsel did not ask for a competency hearing. When the prosecution called Matthew as its first witness, the court stated in the presence of the jury: "I'm not asking for an oath at this point. You may inquire with respect to availability of this witness." Ex. K at 69.

The prosecutor asked Matthew a few questions about his age and family and, without consulting the court, proceeded to ask him questions about the offense. She asked: "Do you know who this is, Matthew? What's his name?" The child answered: "Robert – I mean Richard." Ex. K at 71. The prosecutor then asked more questions going to the child's competency, followed by direct examination. The court interrupted and stated: "we probably should have some witnesses with respect to truth, and understanding true and lies, and all that sort of – okay?" Ex. K at 73. After the prosecutor asked questions regarding truthfulness, she asked: "Further, your honor?" The court replied "Go ahead."

Rather than asking further competency questions, or waiting for the court to make a determination of the child's availability, the prosecutor jumped into direct examination. Matthew was asked to identify parts on drawings of the body :

> Q. All right. First of all, can you – can you tell us what those drawings look like to you?
> A. A hand.
> Q. Pardon?
> A, A hand.
> Q. Okay. And what else? Anything else?
> A. A head.
> Q. Anything else?
> A. And some ears.
> Q. I'm sorry?
> A. And some ears.
> Q. Ears? Anything else on there?
> A. And a bottom.

Ex. K at 75. This line of questioning continued, with the prosecutor having to prompt the child to identify various parts – "Do you see a head on there?" "Do you see the part of the body where you go to the bathroom?" Ex. K at 76-77. Despite the child's difficulty answering these most basic questions, again neither the court or defense counsel interrupted the questioning for the court to make a determination of availability.

### E.     Matthew Confused The Defendant With Robert Nachand, The Man Who Was Convicted Of Abusing Him.

During the competency questioning, the prosecutor pointed to the defendant, and asked: "Do you know who this is, Matthew? What's his name?" The child answered: "Robert – I mean Richard." Ex. K at 71. On cross-examination, counsel asked Matthew about his identification of Mr. Lee:

**Page 8   MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

> Q.    Okay, Matt.  Now, this person Cheryll, she was your baby-sitter for a while?
> A.    Yeah.
> . . .
> Q.    And she had a friend – she had a friend named Robert?
> A.    Yeah.
> Q.    And he lived there with her; is that right?
> A.    Yeah.
> Q.    You've been asked some questions about being touched, you know, in places where you shouldn't be touched, is that right?
> A.    Yeah.
> Q.    Okay.  And when Ms. Parker first asked you, you know, who this was that was sitting here, you said – do you remember you said "Robert – I mean, Richard"?
> A.    Yeah.
> Q.    So you're getting those two people mixed up, huh, Robert and Richard?
> A.    Yeah.
> Q.    And these things that you've talked about, about being touched, that was by Robert?
> A.    Yeah.

Ex. K at 94.  At that point, the prosecutor objected, and at the prosecutor's suggestion, Matthew left the courtroom with his parents, and the jury was escorted from the courtroom. Defense counsel argued that the misidentification of Richard opened the door to questioning the child about Robert Nachand, and in any event, even under OEC 412, the questioning was proper.  Ex. K at 86.  The court allowed cross-examination as to "whether this defendant did these acts or whether it was someone else or no one else."  Ex. K at 87.  Defense counsel elicited that Robert Nachand was the abuser:

> Q.    Now, these things that you've described . . . you said that's Robert?
> A.    Yeah.
> Q.    Now, you said he had his shirt off, is that right?
> A.    Yeah.
> Q.    And – but he had his pants on?
> A.    Yeah.
> Q.    When he had his shirt off, did you – you know, did you notice anything about his body?

| | |
|---|---|
| A. | No. |
| Q. | Did you see anything on his arms or his stomach or anything? |
| A. | No. No. |
| Q. | Nothing?  Nothing you can tell us about? |
| A. | No. |
| Q. | And what – so he had – Robert had his shirt off.  Was that in the kitchen? |
| A. | I don't know where. |

Ex K at 8-90.  On redirect, Matthew identified the defendant as Richard and stated that he was the person who abused him.  Ex. K at 90.  On recross, Matthew denied saying that Robert abused him earlier and said that he spoke with his parents when he had left the courtroom earlier.  Ex. K at 91.

### F.     Matthew Unequivocally Denied That Any Act Of Sodomy Ever Occurred With The Defendant.

On direct examination, Matthew testified that the defendant did not touch him with anything other than one hand, denying that any act of sodomy occurred:

| | |
|---|---|
| Q. | When – when he touched you on those parts of the body, did you have your clothes on or off? |
| A. | Off. |
| | . . . |
| Q. | Did he have his clothes on or off? |
| A. | Yeah. |
| Q. | Do you remember which was off? |
| A. | His shirt. |
| Q. | His shirt.  Anything else? |
| A. | No. |
| Q. | Was [sic] his pants on? |
| A. | Yeah. |
| Q. | When he touched you on the part of the body there that you circled, what did he touch you with? |
| A. | With his hand. |
| Q. | With one hand or both hands? |
| A. | One hand. |
| Q. | And did he touch you on your pee-pee with one hand? |

| A. | Yeah. |
|---|---|
| Q. | And on your bottom with one hand? |
| A. | Yeah. |
| Q. | All right.  Did – did he touch you on your bottom with anything else but his hand? |
| A. | No. |
| Q. | And did he touch you on your pee-pee with anything but his hand? |
| A. | No. |
| Q. | Are you scared of him? |
| A. | No. |

Ex. K at 78-79.

Matthew testified that he saw only the defendant's chest, and that he did not see anything on the chest. Ex. K at 82. Cross-examination concluded with Matthew stating that he did not notice any tattoos when he had his shirt off. Ex. K at 89.  Matthew was then excused.  Ex. K at 91.  Trial counsel did not object.

### G.     The Only State's Evidence Of Sodomy Was Admitted Through The Victim's Out-Of-Court Statement To Law Enforcement.

Although defense counsel indicated that he might object to Detective Fowler's testimony as impermissible hearsay, he did not do so.[2]  Fowler testified as to what Matthew had shown him using anatomically correct dolls and what Matthew had told him.  In particular, he said that Matthew indicated that the adult and child dolls had all of their clothes off.  Ex. K at 116-19.  He also testified that Matthew placed the adult doll's mouth to the child doll's penis.

Q.     What, if anything, did Matthew tell you then?

---

[2] Admission of child abuse victims' out-of-court statements are governed by OEC Rule 803(18a).

> A.    Matthew told me that Richard also touched his, Matthew's bottom, with his, Richard's, mouth.
>
> . . .
>
> Q.    Did Matthew make any other statements to you at that time?
>
> . . .
>
> A.    He told me that Richard had put his pee-pee in Matthew's mouth. . . . He told me that Richard had rubbed his, meaning Richard's, pee-pee on Matthew's bottom.

Ex. K at 118-120.  Fowler also testified that Matthew told him that "when the sexual touching was going on that 'water came out' . . . from Richard's pee-pee." Ex. K at 120.  He also said that Matthew said that Richard "had rubbed his bottom with a cup, and also talked of a toy." Ex. K at 120.  Fowler said that "there was some confusion when discussing the number of times" the abuse took place.  Ex. K at 122.

On cross-examination, Fowler acknowledged that his questioning of Matthew involved both Robert and Richard:

> Q.    And then – I think your testimony is then he said at one point that water came out.  Water came out; is that right?
>
> A.    That was in response to a question by me, words to the effect of, "when these things happened, did anything happen to Richard's pee-pee?"
>
> Q.    Richard's pee-pee or Robert's pee-pee?
>
> A.    Correct.
>
> Q.    Correct.
>
> A.    Yes.
>
> Q.    Robert's pee-pee?
>
> A.    Richard or Robert's.
>
> Q.    So you were asking questions about both of those men?

Ex. K at 131.  The prosecutor objected on the grounds that the questioning went beyond the scope of direct examination and that it pertained to past sexual behavior.  Citing to *State v. Wright*, the prosecutor argued that prior sexual conduct included both volitional and

nonvolitional conduct, and thus the abuse by Nachand was inadmissible under Oregon's

rape-shield laws.  Defense counsel countered:

> Well, your honor, I mean, [the prosecutor] may be threading the needle, but the
> trouble is, is then it puts us in a real bind in terms of cross-examination.
> As I understand it, what happened when Detective Fowler went through this
> interview with CSD with the dolls is, not only had – did he have the boy
> demonstrate what which was alleged – what was alleged to have happened
> between the boy and Richard Lee, but he also had him demonstrate what
> happened between the boy and Robert Nachand, the other individual that was
> prosecuted, at the same time during the same interview.  And after these
> demonstrations were made with the dolls for both individuals, as I understand
> it, he asked him if anything happened to Richard or Robert's pee-pees, and he
> said, "Water came out."  How am I supposed to know if that's Richard or
> Robert, or both of them.  And I think I have to be allowed to ask that in cross-
> examination.

Ex. K at 133-34.  Counsel further argued that Fowler's testimony attributing all acts to Mr.

Lee was inconsistent with his report indicating that Matthew was questioned about abuse by

either Nachand or the defendant, and that he should be allowed to cross-examine the witness.

Ex. K at 137.  Although the court did not overruled the initial OEC 412 ruling, the judge did

allow for limited questioning about Nachand:

> Well, given the circumstances in that it was an interview involving, apparently,
> the questioning about two people, and limited to the scope, I'm not going to
> tip this 412 ruling.  But it seems to me that as to this particular interview, there
> could be an issue as to this victim being confused, not prior sexual conduct per
> se, but as to this particular interview, saying Richard when he meant Robert
> or vice versa.

Ex. K at 138 139.  Fowler testified, over objection, that a "Robert" doll was included in the

interview, that Matthew showed oral sex with the Robert doll, and that Matthew was

questioned about touching by Robert *or* Richard.  Ex. K at 141-42.  On redirect, the

prosecutor asked Fowler whether he knew that Nachand had been charged with abusing

Matthew and subsequently convicted.  Ex. K at 145.

### H.     None Of The Other State Witness Provided Evidence To Support Sodomy Charges, And In Fact, Offered Evidence Of Benign Conduct Or Mistaken Identification.

Cheryll Lee, the babysitter, testified that when she left the apartment while Matthew

and his sister were there, Robert Nachand was regularly there.  She testified that Mr. Lee

occasionally visited.  She also recalled that after she left Matthew alone with Robert and

Richard, Matthew told her that Richard touched his pee-pee.  Ex. K at 106, 134-35.

The prosecutor elicited testimony from Detective Strong that, during his interview

with Richard Lee, Mr. Lee denied committing any abuse.  Mr. Lee told Detective Strong that

he visited his ex-sister-in-law about once a week, usually with his brother Larry Lee, or ex-

brother-in-law.  Ex. K at 154.  Mr. Lee said that his brother looked exactly like him, except

he had a receding hairline.  Ex. K at 156.  Richard Lee denied abusing Matthew.  Ex. K at

157.

### I.     Defense Counsel Called Matthew's Father, Daniel Hendricks, As His Only Witness.

Defense counsel called Matthew's father as the sole defense witness.  He first

established that Daniel Hendricks, was facing criminal charges when the allegations that

Richard Lee were first made.  Ex. K at 161.  Next, the defense suggested that the allegations

were made immediately after Hendricks's roommate had been in a confrontation with Mr.

Lee.  Ex. K at 162.

**Page 14 MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

Counsel then asked about the abuse by Nachand Hendricks testified that Matthew had described the abuse by Nachand to include oral sex.  Inexplicitly, defense counsel then questioned him about Matthew's statements regarding abuse by Mr. Lee, stating that Matthew told him that "Yes, Daddy, he stuck it up inside me."  Ex. K at 164.  Despite these allegations, Hendricks admitted that he never took Matthew to see a doctor.  Ex. K at 165.

On cross-examination, Hendricks testified that Matthew had nightmares and began wetting the bed, during the period Cheryll Lee babysat at her home, but that behavior stopped when Cheryll began babysitting at his house.  Ex. K at 167.  Hendricks described how Matthew came to implicate Richard Lee.  He said that during the summer while with his son he saw Mr. Lee pass by.  Seeing Lee prompted Hendricks to ask Matthew whether Lee had abused him too.  Ex. K at 169-70.

> He told me that at one point in time that him and Richard had sex.  I should say Robert and him both had sex with him together at one point in time is what he had said.  He told me that he had had oral sex – or my son performed oral sex on the defendant. . . .

> . . . And then he said that he had been sodomized by him.

Ex. K at 171.  On re-direct, Hendricks was unclear as to why he thought to question Matthew about sexual abuse by Richard Lee. Ex. K at 174.  Although Mr. Lee did not testify, he did show the jury his arms:

> Why don't you just roll up that one – first the left, the left arm.  The sleeve is being rolled up to show, just for the record, a tattoo of a knife on the left hand – the left arm, I mean.  I don't know if everybody can see that, but there's another tattoo on the right shoulder.

Ex. K at 178.  The only other evidence introduced by the defense was Nachand's conviction record.

**J.      The Jury Convicted Mr. Lee Of Sodomy And Sex Abuse.**

Following instructions on sex abuse and sodomy, the jury returned a guilty verdict on all counts.  The jury was only unanimous on count 4, sex abuse in the first degree and eleven to one on the remaining counts.  Ex. K at 228.  Defense counsel did not move for a judgment of acquittal after the state's case, move to dismiss any of the sodomy charges, or a move for judgment notwithstanding the verdict.  Mr. Lee was sentenced to 188 months imprisonment with 130 months post-prison supervision.  Ex. K at 259-261.

**K.      Despite A Letter From Trial Counsel Regarding Appellate Issues And Lee's Innocence, Appellate Counsel Did Not Raise Any Issues On Direct Appeal.**

The State Public Defender's Office was appointed to represent Mr. Lee on direct appeal.  On July 19, 1995, trial counsel wrote to Lou Miles, Mr. Lee's appellate counsel, with suggestions for potential appeal issues:

> We believe that this was a case in which the boy had been pressed by his father and therefore claimed that there was [sic] two perpetrators instead of only one. We filed a Rule 412 motion, which was denied.  I enclose a copy of our motion, the judge's letter ruling, and the order of denial.  Because of the denial of our 412 motion, we were very hampered in presenting our case at trial.  We could not push our basic defense.  Ultimately, based upon the boy's testimony, it appeared that the door was opening and we attempted to get the necessary evidence before the jury.  As you will see in the transcript, eventually the prosecutor, at the very end of the State's case, simply opened the door. However, by this time, the case had already developed substantially and we were unable to bring the full impact of the evidence to the jury.  Therefore, I believe that the judge's initial denial of our 412 motion severely restricted our ability to effectively try this case.

Page 16 MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

Ex. S.  Counsel also enclosed the State's notice of intent to introduce Matthew's hearsay statements.  *Id.*

Despite the significant constitutional issues and the lengthy sentence, appellate counsel raised no issues, instead filing a brief under *State v. Balfour*, 311 Or. 434, 814 P2d 1069 (1991), indicating a lack of nonfrivolous issues.  Ex. C.  A *Balfour* brief is the Oregon version of *Anders v. California*, 386 U.S. 738 (1967), except it lacks procedural protections of withdrawal of counsel and record review by the appellate court.  *State v. Balfour*, 311 Or. 434, 814 P.2d 1069 (1991).  Mr. Lee did not file a Part B submission, which is the provision for *pro se* argument.

On June 19, 1996, the conviction was affirmed without opinion.  Ex. D.  Mr. Lee did not file a petition for review to the Oregon Supreme Court.

### L.    Mr. Lee Sought Relief In State Post-Conviction Proceedings.

In his post-conviction petition, Mr. Lee alleged that his Sixth and Fourteenth Amendment rights to the adequate assistance of counsel were violated in a number of respects, including that counsel failed to adequately investigate, to object to the introduction of certain evidence, to call an expert in the reliability of child testimony, and that he inadequately cross-examined witnesses, called a witness who was prejudicial to the defense, failed to move for a mistrial or judgment of acquittal, and did not adequately object to the denial of the OEC 412 motion.  Mr. Lee also claimed ineffective assistance of appellate counsel for failing to raise both preserved and plain error on appeal.  Ex. F.  In support, Mr.

Lee submitted a post-conviction trial memorandum, focusing on the ineffective assistance

of appellate counsel for failing to raise the Rule 412 issue.  Ex. G.

In response, the State provided declarations from both trial and appellate counsel.

Appellate counsel explained his reason for not assigning error to the court's denial of the

Rule 412 motion, but failed to identify the confrontation violations:

> Although the trial court denied the pretrial OEC 412 motion regarding the
> evidence of Robert Nachand, the door was later opened to this evidence.  A
> defense witness also offered evidence about Nachand.  Nachand's conviction
> record was a defense exhibit.

> After reviewing the transcript, I discussed the case with at least one other
> attorney in my office.  We believed I could not assign error to the denial of the
> pretrial motion, even if the denial was improper because the evidence was later
> received.  I filed a *Balfour* brief because it was my opinion that there were no
> meritorious appellate issues in the case.

Ex. J-110.  Mr. Lee was deposed, commenting that he had asked trial counsel to withdraw

on several occasions because he was concerned that trial counsel was not preparing for the

case adequately.  Ex. J-107.

Following trial, the trial court entered an order and made findings of fact, in pertinent

part, as follows:

> The evidence against petitioner was sufficient to prove the allegations in the
> indictment.  Counsel reasonably did not move for a judgment of acquittal at
> the close of the state's case-in-chief.

> Petitioner identified no material inconsistency between statements made by
> witnesses to the police and their testimony at trial.

> Petitioner did not identify a basis on which counsel should have objected to
> pictures of anatomically-correct dolls used in the investigation of petitioner's
> abuse of the victim.

Petitioner did not submit evidence to demonstrate that counsel's decision not to call an expert witness to testify regarding witnesses who have been "coached" was a failure to exercise reasonable professional skill and judgment.

Because the evidence at issue in counsel's OEC 412 motion was eventually admitted at petitioner's trial, appellate counsel reasonably did not assign error the court's initial ruling excluding the evidence.

Ex M.  The post-conviction trial court made the following conclusions of law:

Counsel's effort to admit evidence at issue in the OEC 412 hearing were more than adequate to satisfy requirements for adequate assistance of counsel under the Oregon State Constitution and the United States Constitution.

In the direct appeal from the underlying criminal proceedings resulting in petitioner's conviction, petitioner was not denied the right to assistance of counsel, as guaranteed by either the United States Constitution or the Constitution of the State of Oregon.

Petitioner was not prejudiced by the court's initial ruling excluding evidence at issue in the OEC 412 motion because the evidence was eventually admitted at petitioner's trial.

Petitioner's claims of trial court error are barred by *Palmer v. State of Oregon*, 318 Or. 352 (1994), *Lerch v. Cupp*, 9 Or.App. 508 (1972), and *Hunter v. Maass,* 106 Or.App. 438 (1991).

Ex. M at 7.  Mr. Lee appealed raising as error the above listed findings of fact and conclusions of law.  Ex. N.  The court of appeals affirmed without opinion.  Ex. O.  The Supreme Court denied the petition for review on August 7, 2001.  Ex. P.

### M.    The Ninth Circuit Held That It Was Error To Dismiss Mr. Lee's Federal Habeas Corpus Petition As Time Barred.

On March 11, 2002, Mr. Lee filed a petition for writ of habeas corpus under 28 U.S.C. §2254 alleging four grounds for relief from those convictions based on the state's violation of the federal Constitution during his trial and appeal.

Page 19 MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

First, the petition alleged ineffective assistance of trial counsel, in "violation of the 6th Amenment [sic] to the U.S. Constitution," with four different ways in which trial counsel failed him. Second, again in violation of the Sixth Amendment, Mr. Lee alleged ineffective assistance of appellate counsel, providing as supporting facts counsel's failure to effectively present and preserve an appellate issue and submission of a *Balfour* brief "in violation of the 6th and 14th Amendments to the United States Constitution." In Ground 3, Mr. Lee alleged due process violations of the Fourteenth Amendment, listing three different factual bases for the allegations. Lastly, Mr. Lee alleged in a single ground actual innocence and insufficiency of the evidence, in violation of the Fourteenth Amendment, based on the lack of evidence against him and his consistent claims of innocence "throughout the legal processes against him" (CR 2).

On April 15, 2002, Magistrate Judge Cooney granted the petitioner's motion to proceed *in forma pauperis* and issued an order to show cause in writing by May 17, 2002, why the petition should not be dismissed on the ground that it was time barred by the statute of limitations under 28 U.S.C. §2244(d)(1)(A) (CR 4). On June 19, 2002, Judge Cooney issued findings and recommendation that the petition should be denied for failure to prosecute (CR 5). Based on correspondence from Mr. Lee explaining that he had not received the court's order because he had been transferred to another institution, on August 30, 2003, Judge Cooney withdrew the findings and recommendation and issued a second order to show cause why the case should not be dismissed (CR 6).

**Page 20 MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

On September 27, 2002, Mr. Lee filed a *pro se* response to the order to show cause (CR 7).  On November 15, 2002, Judge Cooney issued findings and recommendation that the petition be dismissed as time barred (CR 8).  Mr. Lee timely filed objections on November 25, 2002 (CR 9).  On December 3, 2002, Judge Hogan adopted the findings and recommendation and dismissed the petition (CR 11).  Mr. Lee submitted a timely notice of appeal, which was received by the court on December 17, 2002, and filed on January 6, 2003 (CR 13).  On February 24, 2003, the district court denied the certificate of appealability (CR 14).

The Ninth Circuit granted a certificate of appealability on June 18, 2003, on the issue of whether the district court properly denied appellant's federal habeas petition as untimely and appointed counsel for Mr. Lee.  The state agreed with the petitioner that the district court should not have dismissed the petition *sua sponte* and summarized its argument:  "The record that was before the district court does not demonstrate that petitioner's petition is time-barred."  State Ex. 113 at 1.  In a footnote, the state pointed out that the district court's judgment could be affirmed based on the statute of limitations because of the delay between direct appeal and the filing of the post-conviction petition, citing to the Oregon Reports.  State Ex. 113 at 4 n.2.  On March 24, 2004, Ninth Circuit remanded the case back to the district court finding:

> Lee contends, and the appellee agrees, that the district court erred in sua sponte concluding that Lee's habeas petition on its face was untimely filed under the Antiterrorism and Effective Death Penalty ("AEDPA").  The AEDPA, unless tolled, imposes a one-year statue of limitations on habeas petitions filed in federal court by state prisoners.  When Lee filed his federal habeas petition on

Page 21 **MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

> March 11, 2002 which was within one year of August 7, 2001, the alleged date that state court post-conviction proceedings became final, the district court erred in concluding that Lee's petition was time-barred for that reason, *see* 28 U.S.C. § 2244(d), and the district court should not have dismissed the petition as untimely on its face. Because we conclude that Lee is entitled to remand for this reason, we do not consider the alternative arguments raised in his brief.

State Ex. 114. On April 22, 2005, the state filed its answer to the petition in the District Court, arguing that Mr. Lee's petition was still time barred because the interval between when the direct appeal became final and the post-conviction petition was filed exceeded one year (CR 28). Mr. Lee did not file a reply at that time, instead moving to amend the petition to raise a claim under *Crawford v. Washington*, 541 U.S. 36 (2004), and to hold the case in abeyance while he exhausted that claim in state court (CR 30). The court granted the motion on June 28, 2005, to which the state objected (CR 32, 33). The court denied the state's objection (CR 36) and an amended petition was filed on July 25, 2005 (CR 37). Mr. Lee proceeded to exhaust his state post-conviction remedies relative to the *Crawford* claim. The state proceedings became final on May 31, 2006. The case was stayed pending the decision in *Wharton v. Bockting*. On February 28, 2007, the Supreme Court held that *Crawford* was not retroactive. *Wharton v. Bockting*, 127 S.Ct. 1173, 1182 (2007).

## ARGUMENT

**I.    Trial Counsel Provided Ineffective Assistance Of Counsel When He Not Only Failed To Consult An Expert But, Failed To Object To, And Offered, Hearsay Statements That Constituted The Sole Evidence Of The Most Serious Charge Against Mr. Lee.**

In a case in which the defendant claimed innocence and the only evidence were statements from a five-year-old who had been abused by another, trial counsel should have

retained an expert on child witness suggestability, should have vigorously objected to the state's introduction of hearsay, and should not have introduced damaging hearsay through the only defense witness. The Supreme Court established the governing test for ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). The two prongs of *Strickland* are:    1) counsel's performance "fell below an objective standard of reasonableness," and 2) this deficient performance prejudiced petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688. This is a lower burden of proof than the preponderance of the evidence standard. *See Williams v. Taylor*, 529 U.S. 362, 405-406 (2000) (explaining that *Strickland*'s prejudice prong does not equate with the preponderance standard).

Counsel for Mr. Lee was deficient in when he failed to consult an expert in child abuse cases, then failed to object to hearsay statements that provided the only evidence of sodomy. Counsel compounded his errors by calling the child victim's father, Daniel Hendricks, who testified in graphic detail to what Matthew had told him which was otherwise inadmissible. Mr. Lee was severely prejudiced by counsel's unreasonable performance.

### A.    Counsel Was Constitutionally Ineffective Because He Failed To Object To The Admission Of Hearsay That Constituted The Only State's Evidence Of The Most Serious Charges Against Mr. Lee.

The present case involves a serious violation of the Sixth Amendment's Confrontation Clause under *Davis*, 415 U.S. at 315; *Idaho v. Wright*, 497 U.S. 805 (1990); *Ohio v. Roberts* 448 U.S. 56, 66 (1980). The state's only evidence of the most serious charges was the

hearsay statement admitted through the testimony of Detective Fowler.  Without Fowler's testimony about what Matthew told and showed him, there was no evidence of sodomy. Although counsel considered filing a motion to exclude the hearsay, counsel did not object to Fowler's testimony and Matthew's hearsay statements were admitted.  Counsel's failure deprived Mr. Lee of his rights under the Sixth Amendment of the United States Constitution.

       1.       *The Constitution Requires That Witness Be Subject To Full And Effective Cross-Examination Before The Witness's Prior Statement Is Admissible.*

The Confrontation Clause is violated if the defense is denied "a full and fair opportunity to probe and expose . . . infirmities through cross-examination, thereby calling to the attention of the factfinder the reason for giving scant weight to the witness' testimony." *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985).  When the declarant is present at trial, he must be subject to unrestricted cross-examination.  This rule applies fully to testimony from child witnesses.  *Wright*, 497 U.S. at 817.  In this situation, the court need not inquire into the reliability of the out-of-court statement.  *United States v. Owens*, 484 U.S. 554, 560 (1988).[3]  Thus, the Confrontation Clause requires that the state elicit the damaging testimony – here the sodomy evidence – from the witness while under oath in a face-to-face

---

[3] The Supreme Court reiterated these principles in *Crawford* that the Confrontation Clause bars admission of a hearsay statement unless the declarant takes the stand and is asked both about the alleged underlying events and any prior statements admitted at trial.  *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (2004).  The petitioner does not rely on the retroactive effect of any new rule in *Crawford*, *see Bockting*, 127 S.Ct. at 1182, but the principles underlying such pre-*Crawford* cases such as *Roberts* and *Lilly v. Virginia*, 527 U.S. 116, 123-24 (1999).

**Page 24 MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

confrontation. "If the declarant is available and the same information can be presented to the trier of fact in the form of live testimony, with full cross-examination and the opportunity to view the demeanor of the declarant, there is little justification for relying on the weaker version." *United States v. Inadi*, 475 U.S. 387, 394 (1986).

The constitutional preference for live testimony may be disregarded in only two circumstances: (1) when the original out-of-court statement is inherently more reliable than any live in-court repetition would be – and falls within the firmly rooted hearsay exceptions; or (2) when live testimony is not possible because the declarant is unavailable, in which case the court must settle for the weaker version.

Under the second exception, the State may admit the hearsay if it "either produce[s], or demonstrate[s] the unavailability of the declarant whose statement it wishes to use against the defendant." *Roberts*, 448 U.S. at 65. The child hearsay admitted in this case does not fall within a firmly rooted hearsay exception and has been held to violate the Sixth Amendment. *Wright*, 497 U.S. at 826-27 (child hearsay was presumptively unreliable because it was not within a firmly rooted exception and had been made to someone with a preconceived notion that abuse had occurred and may have been tainted by prior interrogation). Unlike the firmly rooted exceptions, nothing about child hearsay indicates the hearsay statement would be more reliable than an in-court declaration of the same accusation. Accordingly, the Confrontation Clause requires the testimony to be presented in court by the witness unless the witness is unavailable, in which case the "weaker substitute" alone may be admitted if reliable. Here, the child was available and thus the Confrontation Clause's

preference for live testimony requires that he testify as to the acts of sexual contact alleged in the hearsay as a condition to its admission.

Where the prosecutor fails to question the child about the substance of the hearsay statement, excuses the witness, and then introduces the hearsay statement, the child, in essence, becomes unavailable for cross-examination on the out-of-court statements. The only opportunity to question the child on the substance of the hearsay would require the defense to call the witness in its case-in-chief – an unconstitutional choice:

> [F]orcing a defendant to call a child complainant to testify in order to cross-examine that individual creates a risk of inflaming the jury against a criminal defendant and also unfairly requires a defendant to choose between his right to cross-examine a complaining witness and his right to rely on the State's burden of proof in a criminal case. . . .The choice put to the [defendant] however, was a constitutionally unacceptable Catch 22.

*Lowery v. Collins*, 996 F.2d 770, 771-72 (5th Cir. 1993); *see also Wigglesworth v. State of Oregon*, 49 F.3d 578, 581 (9th Cir. 1995) (statute declaring lab report to be prima facia evidence "places the defendant in a 'Catch-22' situation--call the criminalist who prepared the report during the defendant's own case, and possibly bolster the prosecution's case, or forego examination of the criminalist and perhaps lose an opportunity to expose a defect in the report's authenticity" and unconstitutionally shift burden of proof on defendant)(citing *Lowrey*, 996 F.2d at 771; *In re Winship*, 397 U.S. 358 (1970)).  Because the child did not present direct testimony about the event and the substance of the hearsay statement so that the defendant was provided an opportunity for full cross-examination, the hearsay was excludable under the Confrontation Clause.

**Page 26 MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

   2.   *Matthew's Hearsay Statement Was Inadmissible Because He Was Not Questioned About The Substance Of The Statement On Direct Examination, Thereby Precluding Full Cross-Examination.*

Matthew testified that Mr. Lee touched his pee-pee with his hand on one occasion, but did no more. Although the prosecutor asked Matthew about photographs that Fowler took, she did not question Matthew about his statements to Fowler describing far more serious contact. After Matthew was excused and no longer available for cross-examination, Detective Fowler testified as to what Matthew told him, including that Mr. Lee not only sodomized him, but used a cup and a toy inappropriately. Mr. Lee never had an opportunity to question Matthew about the statements made to Fowler on cross-examination. His only opportunity to question the child would be to call him as a defense witness, an unacceptable choice. *Lowery*, 996 F.2d at 772. Mr. Lee's Confrontation Clause rights were clearly violated.

The ineffective failure to object to the admission of Matthew's out-of-court statement was especially serious because the hearsay lacked reliability as to abuse by Lee. The police interview involved two alleged abusers. Ex. T. Detective Fowler asked questions pertaining to both Nachand and Lee: "I asked Matthew if anything happened to Richard's or Robert's 'pee pee's.'" Ex. T at 4. Matthew's answers similarly pertained to either Lee or Nachand. Ex. K at 84. There was no way to test whether the photos of Matthew positioning the anatomically dolls involved the Richard or Robert dolls. There was no recording or video of the interview to test whether suggestive or leading questions were asked. The father was present during the interview and could have exerted undue influence for Matthew to confirm

that Lee abused him.  The initial questioning of Matthew at trial regarding his availability raised serious questions about his ability to recall or report.  Ex. K at 71-72.  And the strange and vague nature of the allegations involving the toy and cup was highly questionable.  At a minimum, counsel should have requested a reliability determination before the hearsay was admitted.

Moreover, there was no corroborating evidence.  There was no physical evidence of abuse; the cup and toy were never produced; none of the other witnesses reported that Matthew told them similar stories.  While Matthew testified and described acts of sex abuse, he expressly denied that any act of sodomy ever occurred.  The hearsay statement provided the only evidence of sodomy.  Once the prosecution had succeeded in rendering the witness unavailable, counsel should have raised confrontation and due process objections.  Had he objected, the Supreme Court's conclusion in *Wright* would have been equally applicable here:

> Given the presumption of inadmissibility accorded accusatory hearsay statements not admitted pursuant to a firmly rooted hearsay exception, we agree with the court below that the State has failed to show that the young daughter's incriminating statements to the [interviewer who expected to find abuse] possessed sufficient "particularized guarantees of trustworthiness" under the Confrontation Clause to overcome that presumption.

497 U.S. at 827.  There is no rational reason for counsel to not object to the introduction of Matthew's hearsay statement.  Counsel had Fowler's report and knew what Fowler would say based on his prior testimony in the motion in limine.  Yet, he did not object when the prosecutor had Matthew excused as a witness.  Then, when the prosecutor introduced that

hearsay through Fowler, counsel again did not object or raise the confrontation violation. The failure to object to prejudicial, inadmissible evidence render's counsel's conduct ineffective under *Strickland*. *Crotts v. Smith*, 73 F.3d 861, 866 (9th Cir. 1995) (*overruled on other grounds by* 28 U.S.C. § 2244) (ineffectiveness for failure to object to highly prejudicial evidence).

> 3. *Trial Counsel Compounded His Errors By Calling Daniel Hendricks And Eliciting Hearsay Testimony About What Matthew Had Told Him.*

Daniel Hendricks, the only witness called by the defense, testified that Matthew said that the abuse included anal penetration. The solicitation by defense counsel of this highly damaging testimony falls below the *Strickland* standard. *See United States v. Swanson*, 943 F.2d 1070, 1074 (9th Cir. 1991) (counsel ineffective when he told jury client committed crime); *Moore v. Johnson*, 194 F.3d 586, 611 (5th Cir. 1999). If the failure to object to highly prejudicial or otherwise inadmissible evidence falls below the *Strickland* standard of competence, it is inexcusable for counsel to introduce that same damaging evidence in the case-in-chief.

In *Moore*, the court found that counsel's performance was deficient when the attorney elicited highly prejudicial testimony in cross-examining a prosecution witness. *Moore*, 194 F.3d at 611. There, defense counsel's cross-examination went far beyond the scope of the direct and elicited damaging testimony that tied the defendant to the crime and supported the accuracy and credibility of the police investigation. 194 F.3d at 611-21. In finding that trial counsel's performance was deficient, the court noted:

> [N]either the record nor common sense supports the proposition that Devine's approach to Autrey's testimony was motivated by any strategic purpose that could conceivably have yielded any benefit to the defense. To the contrary, Devine's cross-examination of Autrey does nothing but set forth, from the mouth of Moore's own trial counsel, the state's best case against Moore. While perhaps not sufficient standing alone to support conviction, the evidence thus elicited would have contributed significantly to a guilty verdict, even if Moore's confession had been later deemed inadmissible. For the foregoing reasons, we affirm the district court's conclusion that Devine's ineffective cross-examination of Autrey constitutes deficient performance as defined in *Strickland*.

194 F.3d at 612. Similarly, in *Crotts*, the Ninth Circuit reversed a conviction where the prosecutor, in cross-examining the defendant, asked him if he was "wanted for killing a cop." 73 F.3d at 864. When the defendant said he was not, the prosecutor called a witness to testify that the defendant told her he had served a sentence for killing a police officer. 73 F.3d at 864. Defense counsel did not object either to the question or to the introduction of the rebuttal testimony. The Ninth Circuit, applying *Strickland*, held that trial counsel's failure to object was outside the range of professional competence. 73 F.3d at 866. As that court stated it, "Reasonably competent counsel would have objected to the admission of such prejudicial evidence." 73 F.3d at 866.

4.    *Mr. Lee Was Prejudiced By Counsel's Ineffectiveness.*

In *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986), the Court held that in determining whether a Confrontation Clause violation is prejudicial, courts must consider "the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, . . . and, of course, the overall strength of the prosecution's case." *See also United States v. Vargas*, 933 F.2d 701, 709 (9th Cir. 1991). Because the hearsay evidence was the sole prosecution evidence of the sodomy charge, Mr. Lee was prejudiced by the erroneous admission of hearsay.

**B.    Counsel Provided Ineffective Assistance For Failing To Consult Or Hire An Expert In Child Abuse Cases.**

Given the victim's young age, in combination with the prior abuse by Nachand, the strange statements made to the police, and the circumstances surrounding the initial allegations of abuse, Lee's counsel was ineffective for failing to consult with an expert in child abuse cases.

1.    *Under The Circumstances Of This Case, Counsel Had An Obligation To Consult An Expert In Child Abuse Case.*

Counsel has an obligation to conduct a reasonable investigation so that he can make an informed decision about how best to represent his client. *Strickland*, 466 U.S. at 691. Recently, the Supreme Court forcefully reiterated that counsel must conduct a through investigation. *Rompilla v. Beard*, 545 U.S. 374, 387 (2005)(failure to investigate readily available information can constitute deficient performance. ); *Wiggins v. Smith*, 539 U.S.

510, 525 (2003)(failure to investigate defendant's social history constitutes ineffectiveness);

*Williams v. Taylor*, 529 U.S. 362, 396 (2000) (holding that counsel failed to "fulfill their

obligation to conduct a thorough investigation").  In *Rompilla*, defense counsel "flout[ed]

prudence" when he did not review any part of the defendant's publicly available criminal

history record, including the trial transcript from which the prosecution read evidence into

the record.  545 U.S. at 388.  Thus, counsel may render ineffective assistance "where he

neither conducted a reasonable investigation nor made a showing of strategic reasons for

failing to do so."  *Frierson v. Woodford*, 463 F.3d 982, 989-990 (9th Cir. 2006)(citing

*Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir.1994)).

      Included in this obligation to investigate is a duty to consult with experts if the case

raises "red flags" that an expert would assist the defense.  In *Ake v. Oklahoma,* 470 U.S. 68

(1985), the Supreme Court observed that experts are indispensable when a mental condition

is at issue:

> [W]hen the State has made the defendant's mental condition relevant to his
> criminal culpability and to the punishment he might suffer, the assistance of
> a psychiatrist may well be crucial to the defendant's ability to marshal his
> defense. In this role, psychiatrists gather facts, through professional
> examination, interviews, and elsewhere, that they will share with the judge or
> jury; they analyze the information gathered and from it draw plausible
> conclusions about the defendant's mental condition, and about the effects of
> any disorder on behavior; and they offer opinions about how the defendant's
> mental condition might have affected his behavior at the time in question.
> They know the probative questions to ask of the opposing party's psychiatrists
> and how to interpret their answers. Unlike lay witnesses, who can merely
> describe symptoms they believe might be relevant to the defendant's mental
> state, psychiatrists can identify the "elusive and often deceptive" symptoms of
> insanity and tell the jury why their observations are relevant.

470 U.S. at 80.

In *Frierson*, the Ninth Circuit held that counsel "ignored the red flag of possible brain damage caused by multiple childhood head injuries by failing to consult a neurologist," and rejected counsel's explanations that he relied on family and prior evaluations. 463 F.3d at 991. "Counsel ... [has] an obligation to conduct an investigation which will allow a determination of what sort of experts to consult." *Frierson*, 463 F.3d at 991 (citing *Caro v. Calderon*, 165 F.3d 1223, 1226 (9th Cir. 1999)). The court concluded that counsel's failure was not compelled by his strategy, but rather by a failure to adequately investigate and prepare such information." *Id.* Frierson was prejudiced under the second prong of *Strickland*, because the jury was never presented with evidence that "might well have influenced the jury's appraisal of [Frierson's] moral culpability." 463 F.3d at 992. Although *Ake* and *Frierson* involved the defendants' mental abilities, Matthew's cognitive abilities were central here because he was the five-year-old complaining witness.

The need for expert testimony in child sex abuse cases is particularly necessary. In *Guam v. McGravey,* 14 F.3d 1344, 1349 (9th Cir. 1994)*,* the Ninth Circuit noted that the use of expert testimony on the issue of sexual abuse of children or the susceptibility of children to suggestion is encouraged because "the consequences of an erroneous verdict in a case involving the alleged sexual abuse of a child are grave." The Second Circuit, in analyzing trial court's exclusion of expert testimony, observed that expert testimony is highly valuable:

> The trial court's characterization of the expert's proposed testimony as "soft scientific testimony at best" is, at the very least, debatable. While we recognize that there is no absolute unanimity among scholars, a sufficient consensus

exists within the academic, professional, and law enforcement communities, confirmed in varying degrees by courts, to warrant the conclusion that the use of coercive or highly suggestive interrogation techniques can create a significant risk that the interrogation itself will distort the child's recollection of events, thereby undermining the reliability of the statements and subsequent testimony concerning such events. An emerging consensus in the case law relies upon scientific studies to conclude that suggestibility and improper interviewing techniques are serious issues with child witnesses.

*Washington v. Schriver,* 255 F.3d 45, 57 (2nd Cir. 2001)(citing , *Idaho v. Wright*, 497 U.S. 805, 826-27 (1990); *Maryland v. Craig*, 497 U.S. 836, 868 (1990) (Scalia, J., dissenting); *Swan v. Peterson,* 6 F.3d 1373, 1382 & n. 9 (9th Cir.1993), *cert. denied,* 513 U.S. 985 (1994); *People v. Michael M.,* 618 N.Y.S.2d 171, 177 (N.Y.Sup.Ct.1994); *In re R.M. Children,* 627 N.Y.S.2d 869, 873 (N.Y.Fam.Ct.1995)).

2.    *A Child Abuse Expert Could Have Provided Valuable Information And Testimony Regarding A Child's Competency And Suggestibility, And Proper Interview Techniques.*

In this case, the only evidence of sexual abuse by Mr. Lee were the statements made by Matthew, a five-year-old victim of prior sexual abuse. Matthew's extreme youth alone should have alerted counsel that Matthew's statements and testimony may not be competent or credible, and that the services of an expert in a competency evaluation would have likely resulted in Matthew's unavailability as a witness.[4] Although Matthew's statement to the police may have been admissible under Oregon's evidence Rule 803 (18a) if he did not testify, only the fact that the complaint was made would be admissible, but the details, such

_____

[4] Stephen J. Lepore, *Child Witness: Cognitive and Social Factors Related To Memory and Testimony,* Institute for Psychological Therapies Journal, Vol. 3 (1991) (attached as Ex. W).

Page 34 MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

as descriptions of sodomy, would be inadmissible. Counsel failed to ask for or call any experts or witnesses at a pre-trial hearing to question the child's competency.

Counsel also failed to consult or hire a child abuse interview expert regarding the proper interview techniques and could have provided valuable testimony to rebut the state's evidence. Here, the strange allegations involving a cup and a toy, coupled with the fact that the child was questioned about two abusers, certainly should have raised flags that the interview techniques were suspect and that Matthew's statements were not credible. Although counsel elicited some testimony about the irregularity of the interview techniques.

An expert witness in child abuse victim interview techniques would have provided strong rebuttal evidence to discredit Fowler's testimony.[5] *Gausvik v. Perez*, 345 F.3d 813, 815-816 (9th Cir. 2003)(noting that convictions against sex abuse defendants were overturned because investigative techniques were so coercive and abusive that they yielded false information).

A child abuse interview expert could also have provided valuable testimony regarding suggestability or undue influence in children. Here, Matthew made allegations only after prompting by his father. Then, his statements to the police were made in the father's presence. The assistance of an expert on child abuse victims would have provided valuable

---

[5] Kathleen Coulborn Faller, *Child Sexual Abuse: Intervention and Treatment Issues,* U.S. Dept. of Health and Human Services (excerpt on interview techniques)(1993) (attached as Ex. X).

**Page 35 MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

insight into the timing and circumstances of the initial revelations.[6]  An expert would also have mitigated the damaging evidence elicited by the prosecution during cross-examination of Daniel Hendricks.

> 3.     *Counsel's Failure To Consult A Child Abuse Expert Fell Below Reasonable Standards Of Professionalism That Greatly Prejudiced Mr. Lee's Case.*

Counsel not only failed to present such experts at trial, but also failed to consult them before trial, thereby depriving himself of critical knowledge necessary to the formulation of a defense.  Because there was no rational reason not to consult or call an expert in these circumstances, counsel's performance "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

Mr. Lee was severely prejudiced by counsel's deficient performance.  There was absolutely no evidence of abuse by Mr. Lee other than Matthew's statements.  Had the jury been provided with appropriate expert testimony as to the unreliability of the child's statements, and had counsel offered even the most obvious legal arguments supporting exclusion of the child's testimony at trial and his hearsay statements, there is a reasonable probability that the statements would have been found inadmissible.  It follows that there is a reasonable probability that the outcome of the trial would have been different.  *Strickland*, 466 U.S. at 694.

---

[6] Gilstrap & Ceci, *Reconceptualizing Children's Suggestibility: Biodirectional and Temporal Properties*, Child Development, Vo. 76, No. 1 at 40-53 (Jan/Feb. 2005) (attached as Ex. Y).

**II.      In Failing To Raise On Appeal That The Trial Court Erred In Limiting Defense Counsel's Ability To Cross-Examine The Child Witness, Appellate Counsel Provided Ineffective Assistance In Violation Of The Sixth And Fourteenth Amendments To The United States Constitution.**

Appellate counsel filed a *Balfour* brief, concluding that there were no meritorious issues for appeal.  The trial record establishes there are numerous meritorious issues for appeal including trial court error denying the motion to introduce evidence of Matthew's abuse by Robert Nachand.  Matthew's confusion between Nachand and Mr. Lee was the crux of the defense's case, and limitations on the defense's ability to question Matthew about Nachand's abuse unconstitutionally impeded the defense.  The erroneous pretrial ruling unconstitutionally impeded the defendant from presenting his defense, especially the right to introduce evidence of another's guilt.  *Holmes*, 126 S.Ct. at 1734; *Crane v. Kentucky*, 476 U.S. 683, 690 (1986).  Appellate counsel was ineffective in failing to raise this constitutional error on direct appeal.

**A.      Mr. Lee's Confrontation And Due Process Right To Present A Defense Were Denied When The State Court Applied An Unconstitutional Procedural Bar To Prevent Him From Offering Evidence Central To His Defense Of Mistaken Identity.**

Under the Due Process and Confrontation Clauses of the Constitution, a criminal defendant has a right to present a complete defense.  *Crane*, 476 U.S. at 690 (citing *California v. Trombetta*, 467 U.S. 479, 485 (1984)).  Included in those guarantees is the right to put before a jury evidence that might influence the determination of guilt and to cross-examine fully all adverse witnesses.  *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987); *Delaware v. Van Arsdall*, 475 U.S. 673, 678–79 (1986).

In *Holmes*, the trial court excluded evidence that another committed the crime. The Supreme Court reversed even though there was considerable forensic evidence implicating the defendant. After reviewing several of the cases on the unconstitutionality of evidentiary rules that hampered the defense case, the Court held that evidence that someone else committed the crime must be admitted if "it would have great probative value and not pose an undue risk of harassment, prejudice, or confusion of the issues." 126 S.Ct. at 1734. The exclusion of third-party guilt was deemed arbitrary because the state could point to no rationale for its exclusion. 126 S.Ct. at 1735. Similarly, in the present case, the defendant should have been able to point the finger at Nachand from the outset of the case. The defense would have been compelling given the proof that Nachand had actually abused the same child at the same time and the weakness and lack of corroboration of the inculpatory testimony.

The Supreme Court recognized the constitutional danger of rape-shield laws in *Michigan v. Lucas*, 500 U.S. 145, 150 (1991). In *Lucas*, the Court recognized that Michigan's rape-shield law represented a legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy, and that notice avoided unnecessary trial delay and prejudice to the prosecution. *Lucas*, 500 U.S. at 152. The Court cautioned, however: "Restrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrarily or disproportionate to the purposes they serve.'" *Lucas*, 500 U.S. at 150 (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). The right to confrontation "means more than being

allowed to confront the witnesses physically," it includes the right to engage in effective cross-examination. *Davis*, 415 U.S. at 315.

In *LaJoie v. Thompson*, 217 F.3d. 663, 676 (2000), the Ninth Circuit granted habeas relief on similar facts as in this case. There, as here, the victim had been unquestionably abused by others, with one having been convicted of the abuse. The defense sought to introduce the prior abuse to explain the forensic evidence of abuse and the victim's knowledge; nevertheless, the trial court did not allow evidence of the prior abuse under a rigid application of Oregon's rape-shield law notice requirements. *LaJoie*, 217 F.3d at 665-667. The Ninth Circuit reversed and remanded the case for a new trial, concluding that the Oregon Supreme Court's balancing of the interests underlying the rape-shield law against the interests of defendants generally was an unreasonable application of federal law as established by the United States Supreme Court. The Circuit began its analysis with the network of protections that establish the right to present a theory of defense:

> Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. In discussing the Compulsory Process Clause, the Supreme Court has held that our cases establish, at a minimum, that criminal defendants have the right to the government's assistance in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt. The defendant's right to compulsory process is itself designed to vindicate the principle that the ends of justice would be defeated if judgments were to be founded on partial of speculative presentation of the facts.

*LaJoie*, 217 F.3d at 668 (citations omitted). Applying *Lucas*, the Ninth Circuit concluded that the balance of interests – the state's interest in avoiding unfair surprise and the protection of the victim, versus the defense interest in presenting probative evidence that offered an alternative explanation for victims' injuries and knowledge – required that the evidence of the prior abuse be admitted. 217 F.3d at 670-71. "The admission of Watkin's conviction for raping VN would have placed before the jury evidence that VN was familiar with the act of penetration from events other than those allegedly involving LaJoie." 217 F.3d at 672 n.11. Here, the balance of interests weighed even more heavily in favor of the introduction of the evidence of abuse by Nachand.[7]

Mr. Lee's interest in presenting the evidence greatly outweighed the State's legitimate interests in precluding it, particularly because the evidence the defense sought did not pertain to the ordinary meaning of "prior sexual behavior." According to the primary treatise on Oregon evidence law:

> The principal purpose of OEC 412 is to protect victims of sexual crimes from the degrading and embarrassing disclosure of intimate details about their private lives. It does so by narrowly circumscribing when such evidence may be admitted. It does not do so, however, by sacrificing any constitutional right possessed by the defendant. The rule balances the interests involved: the interest in the victim of a sexual crime in protecting a private life from unwarranted public exposure , and the defendant's right to present adequately a defense by offering relevant and probative evidence.

_____

[7] As in *LaJoie*, the Court in *Eckert v. Tansy*, 936 F.2d 444 (9th Cir. 1991), recognized that "a court should balance a defendant's right to have witnesses testify in his or her behalf against 'countervailing public interests.'" 936 F.2d at 446 (quoting *Taylor*, 484 U.S. at 414-15). Although that case concerned pretrial notice of intent to call alibi witnesses, its logic is equally applicable to Rule 412 issues. *See Eckert*, 936 F.2d at 446.

**Page 40 MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

Laird Kirkpatrick, OREGON EVIDENCE at 202 (2d ed. 1989).

In *LaJoie*, the Ninth Circuit pointed out that even when the probative value of the evidence significantly outweighs the interests served by the evidentiary rule, the evidence may still be constitutionally excluded if it is unduly prejudicial. 217 F.3d at 673 (citing *Wood v. Alaska*, 957 F.2d 1544, 1551-54 (9th Cir. 1992)). The *LaJoie* court observed that the primary risk of prejudice in the rape-shield context is that an adult or sexually mature minor's sexual history "could be improperly used by the jury in deciding whether she was raped." 217 F.3d 673; *see also Wood*, 957 F.2d at 1552-53 (evidence that alleged victim had posed in pornographic magazine posed risk jury would conclude "woman with her sexual past could not be raped"). A victim's prior sexual abuse and assault does not present the same concerns. The evidence Mr. Lee wanted to introduce was not intended to harass the alleged victim. It was directly relevant to his defense. There was also no question of the veracity of the evidence, which the prosecutor conceded was true.

A final form of prejudice noted in the case law is a potential chilling effect on others similarly situated. The Supreme Court has ruled that this limited interest does not in itself outweigh an accused's interest in presenting relevant evidence. *Davis*, 415 U.S. at 319 (1974); *see also Wood*, 957 F.2d at 1552. Moreover, because the ruling admitting evidence in this case would only apply to the sexual assault by Nachand, legitimate concerns over the chilling effect of such a ruling are minuscule.

Because of the trial court's 412 ruling, the defense was denied an opportunity to present an opening statement on his theory of defense, to fully cross-examine Matthew

regarding the abuse by Nachand and the potential that Matthew was confused, and to present affirmative expert evidence regarding the potential for conflating the abuse by Nachand with the mere presence of him. The necessity of the evidence was made more critical when Matthew identified Nachand, not the defendant, as his abuser. The jury's critical job was to discern Matthew's ability to accurately identify his assailant. On that issue, the precluded evidence was critical: Mr. Lee's "defense was seriously undermined because the jury heard only part of the story that implicated him and was not permitted to hear highly probative evidence which the jury could have determined was exculpatory. The preclusion of this evidence had a substantial and injurious effect on the verdict." *LaJoie*, 217 F.3d at 673 (footnote omitted).

The prejudice here is also similar to that which led the Ninth Circuit to reverse the conviction for child sexual abuse in *Franklin v. Henry*, 122 F.3d 1270 (9th Cir. 1997). In that case, the trial court ruled that evidence that the victim had falsely alleged sexual abuse by her mother was barred by the state evidence code. 122 F.3d at 1272. The Circuit found this exclusion denied the defendant's due process rights because it would have raised doubts about the only percipient witness's – the complainant's – credibility. 122 F.3d at 1273. In so finding, the court stressed that the physical evidence of abuse, damage to the hymen, that led expert to conclude there had been penetration, was "thin" and "ambiguous." 122 F.3d at 1271, 1272, 1273. As in *LaJoie* and *Franklin*, Mr. Lee's due process and confrontation rights were violated when he was prevented from questioning Matthew about his abuse by Nachand – the core factor in the defense theory of the case of mistaken identity.

**B.    By Failing To Raise A Meritorious Issue On Appeal, Appellate Counsel's Performance Fell Below The *Strickland* Standard.**

The trial court error implicating Mr. Lee's fundamental trial rights could have resulted in a reversal, but for appellate counsel ineffectiveness. The right to effective representation extends to effective representation on appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985) (due process requires that a defendant have effective assistance of counsel on his first appeal as of right). Competent appellate counsel is essential to the interests protected by the Sixth Amendment:

> Navigating the appellate process without a lawyer's assistance is a perilous endeavor for a layperson, and well beyond the competence of individuals, like Halbert, who have little education, learning disabilities, and mental impairments. *See Evitts,* 469 U.S., at 393, 105 S.Ct. 830 ("[T]he services of a lawyer will for virtually every layman be necessary to present an appeal in a form suitable for appellate consideration on the merits."); *Gideon v. Wainwright*, 372 U.S. 335, (1963) ("Even the intelligent and educated layman has small and sometimes no skill in the science of law." (quoting *Powell v. Alabama*, 287 U.S. 45, 69 (1932)).

*Halbert v. Michigan*, 545 U.S. 605, 621 (2005). Appellate counsel's performance in this case was such that Mr. Lee was without appellate counsel to help navigate the process and preserve his rights.

In assessing appellate counsel's representation, the two *Strickland* prongs – deficient and prejudicial performance by counsel – "partially overlap when evaluating the performance of appellate counsel." *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). In analyzing the prejudice from a deficient performance, the focus is on the appeal and not "a potential

second trial." 882 F.2d at 1434 n.9 (citing *United States v. Birtle*, 792 F.2d 846 (9th Cir. 1986)).

Minimally competent appellate counsel would have raised the powerful issue under the Confrontation Clause. The failure of appellate counsel to challenge the preclusion of evidence that violated the Confrontation Clause constitutes ineffective assistance of counsel. *See generally Delgado v. Lewis*, 223 F.3d 876 (9th Cir. 2000) (finding ineffective assistance based on failure to raise two "very viable appellate issues"); *Roe v. Delo*, 160 F.3d 416 (8th Cir. 1998) (finding ineffective assistance in appellate counsel's failure to raise "plain error" in a murder case jury instruction); *Brown v. United States*, 167 F.3d 109 (2nd Cir. 1999) (finding appellate counsel ineffective in failing to challenge an obviously defective reasonable doubt instruction).

Appellate counsel's explanation for his failure to raise the denial of the Rule 412 motion – that the evidence of Nachand's abuse eventually was admitted, and therefore any trial court error was harmless – is unavailing. In *LaJoie*, as in this case, some evidence of the other abuse eventually was brought out. 217 F.3d at 675 ("jury learned at several points that others had sexually assaulted VN") (Ferguson, J., dissenting). In spite of this evidence being brought to the jury's attention, the Ninth Circuit concluded that the defense was unconstitutionally compromised:

> In sum, LaJoie's defense was seriously undermined because the jury heard only that part of the story that implicated him and was not permitted to hear highly probative evidence which the jury could have determined was exculpatory. The preclusion of this evidence had a substantial and injurious effect on the verdict.

217 F.3d at 673.  Here, cross-examination of Matthew on the abuse by Nachand would have put Matthew's knowledge of sex acts in context.  It would also have raised serious doubts about Matthew's credibility particularly because Matthew repeatedly confused Robert Nachand for Mr. Lee.  The preclusion of evidence severely diminished Mr. Lee's ability to confront his accuser and present a defense.  For example, counsel would have been more likely to obtain an expert to put these facts in context.

Appellate counsel's excuse for not raising the issue is especially prejudicial given the burdens of proof.  The decision that kept the theory of defense from even being mentioned until the end of the trial was erroneous.  Once the constitutional violation is established, the burden shifts to the state to prove beyond a reasonable doubt that the error was harmless. *Chipman v. Cal*, 386 U.S. 18, 23-24 (1967).  In essence, appellate counsel decided not to raise a viable – compelling – constitutional issue because he assumed the state could prove harmlessness beyond a reasonable doubt.  Such a position is untenable and constitutes a betrayal of counsel's role as the zealous advocate for his client.

## III.    There Was Insufficient Evidence To Sustain A Conviction.

The Constitution prohibits conviction without proof beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 309 (1979). When presented with a habeas corpus petition asserting that this core constitutional principle has been violated, a district court must determine whether, "after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. In applying this standard, a "mere modicum"

of evidence to support an element is not sufficient, 443 U.S. at 320, nor may the fact finder

resort to "mere suspicion or speculation." *United States v. Andrews*, 75 F.3d 552, 556 (9th

Cir. 1996).

Mr. Lee was charged and convicted of two counts of sexual abuse and two counts of

sodomy:  that the defendant touched Matthew's penis (count I), buttocks (count IV), and

engaged in deviate sex intercourse (counts II and III), between September 1, 1993 and

January 1994.  It is assumed that counts II and III involved separate events although the

indictment did not allege that.  Under the facts of this case, there was insufficient evidence

to convict.

**A.      There Was Insufficient Evidence As A Matter Of Law To Sustain The Sodomy Convictions.**

The child victim denied that he was touched by anything other than a hand.  The only evidence was the unreliable hearsay testimony that is insufficient as a matter of law under *Wright*.

Under *Wright*, a child sex-abuse victim's out-of-court statements are presumptively unreliable, and may only be admitted upon a showing a particularized trustworthiness.  497 U.S. at 818.  In *Wright*, the state failed to make that showing "in large measure because the statements resulted from an interview lacking certain procedural safeguards" in that the interviewer "failed to record the interview on videotape, asked leading questions, and questioned the child with a preconceived idea of what she should be disclosing."  497 U.S. at 818.  Although *Wright* did not adopt strict interview requirements, interview techniques are relevant in determining the reliability of the hearsay.  497 U.S. at 818-19.  Under *Wright*, Matthew's hearsay statements are unreliable and cannot support a conviction.

Under Oregon law, a conviction for sodomy, or deviate sexual intercourse, is defined as "sexual conduct between persons consisting of contact between the sex organs of one person and the mouth or anus of another."  ORS 163.305 (1).  The only direct evidence of Mr. Lee's guilt was the testimony by the child victim.  At most, Matthew testified to only one act of sexual abuse by Mr. Lee.

Matthew testified that Mr. Lee touched his genitals and bottom with his hand, but nothing more.  Ex. K at 78-79.  Matthew said that his abuser wore his pants at all times, and

only took off his shirt. When repeatedly questioned, Matthew denied that there was other touching. Based on this testimony, there was insufficient evidence of either sodomy charge.

The only state's evidence of sodomy was admitted as hearsay through Detective Fowler. Such hearsay is insufficient to sustain the conviction here, especially where the record is far from clear if the child was referring to Mr. Lee or Robert Nachand, his convicted abuser. The photos of the anatomical dolls in postures that could be characterized as sodomy referred to what "they" were doing to him. Fowler testified that Matthew was questioned on what Robert or Richard did, to which Matthew replied in the singular. Since Nachand pled guilty to those same acts, there was insufficient evidence to sustain a conviction that Richard Lee also committed the acts. This interview, as that in *Wright*, lacked any procedural safeguards, and was inherently unreliable. Without Fowler's testimony, there was no state's evidence of sodomy.

> **B.**     **There Was Insufficient Evidence To Convict Beyond A Reasonable Doubt That Mr. Lee Abused Matthew.**

The evidence of sexual abuse was similarly lacking. Matthew misidentified the defendant as "Robert" several times during the testimony. He also said that his abuser did not have any marks on his body or chest, while the jury was shown the extensive tattoos on Mr. Lee's arms and chest. Matthew and Mr. Lee were never alone in the small apartment – Nachand was always present, and Matthew's siblings were there. All of the alleged acts could not have been committed within the short 20 minutes that the babysitter was away, particularly those described by the father. The hearsay brought out through Detective Fowler

and Dan Hendricks, similarly did not describe more than one act of abuse. Ex. K at 122. At a minimum, there was insufficient evidence to support two convictions of sodomy alleged to have occurred on separate days. All of the above supports the claim of insufficient evidence to convict.

## IV.    Mr. Lee's Claims Are Not Procedurally Barred By The Statute Of Limitations.

The State argues that this Court should not consider the merits of Mr. Lee's petition because he missed the one-year statute of limitations provided in 2244(d)(1). There are two reasons the Court should reject the State's position and consider the merits of the case. First, the Court should excuse any untimeliness and consider the merits under the actual innocence gateway of *Schlup v. Delo*, 513 U.S. 298 (1995). Second, the statute of limitations should be equitably tolled because of statute of limitations trap in Oregon.

### A.    Mr. Lee Has Demonstrated A Sufficient Showing Of Actual Innocence To Warrant An Evidentiary Hearing Regarding Grounds For Equitably Tolling.

Equitable tolling is available if a petitioner presents evidence of innocence that meets the standard set forth in *Schlup v. Delo*, 513 U.S. 298 (1995). *O'Neal v. Lampert*, 199 F. Supp. 2d 1064 (D. Or. 2002) (Aiken, J.); *Gibson v. Klinger*, 232 F.3d 799 (10th Cir. 2000); *cf. Majoy v. Roe*, 296 F.3d 770 (9th Cir. 2002) (leaving open the possibility that equitable tolling could be available if the petitioner satisfies the *Schlup* standard and remanding to the district court for an evidentiary hearing on that issue); *Wyzykowski v. Dep't of Corr.*, 226 F.3d 1213 (11th Cir. 2000) (same).

In *Majoy*, the Ninth Circuit noted that:

Page 49 MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS

> To foreclose a claim of constitutional violation where there has been a colorable showing of factual innocence would likely constitute a due process violation or an improper suspension of habeas corpus relief.

296 F.3d at 777 (quotations omitted).  *See also Jones v. Souter*, 395 F.3d 577 (6th Cir. 2005)(holding that limitations period may be equitably tolled based on a credible showing of actual innocence under the *Schlup* standard).

It is critical when reviewing this issue to distinguish between the type of "actual innocence" showing needed to obtain relief from a procedural default under the *Schlup* gateway, and the type of showing needed to provide a free standing claim of "actual innocence" such as at issue in *Herrera v. Collins*, 506 U.S. 390 (1993).  The two are not the same, as the Supreme Court recently explained in determining that petitioner passed the *Schlup* gateway but did not meet the *Herrera* showing:

> Because a *Schlup* claim involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record. If new evidence so requires, this may include consideration of the credibility of the witnesses presented at trial.
> . . .
> Our review in this case addresses the merits of the *Schlup* inquiry, based on a fully developed record, and with respect to that inquiry *Schlup* makes plain that the habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial. Based on this total record, the court must make a probabilistic determination about what reasonable, properly instructed jurors would do. The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors.

**Page 50 MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS**

*House v. Bell* 126 S.Ct. 2064, 2077-78 (2006) (citations omitted). While the petitioner passed through this gateway and the court could proceed on the merits of his claims, the petitioner did not meet the higher burden in *Herrera*:

> In *Herrera*, however, the Court described the threshold for any hypothetical freestanding innocence claim as "extraordinarily high." The sequence of the Court's decisions in *Herrera* and *Schlup*-first leaving unresolved the status of freestanding claims and then establishing the gateway standard-implies at the least that *Herrera* requires more convincing proof of innocence than *Schlup*. It follows, given the closeness of the *Schlup* question here, that House's showing falls short of the threshold implied in *Herrera*.

*House,* 126 S.Ct. at 2087 (2006) (citations omitted).  Thus, to meet the *Schlup* requirements, Mr. Lee must document that, in light of the evidence presented at trial and which is now available, it is more likely than not that a reasonable juror would have declined to convict him.  Mr. Lee submits that he has made such a showing.

Mr. Lee was convicted because counsel was not able to present a cohesive defense of mistaken identity.  When the trial court shut down all inquiry into the abuse by Nachand – the essential element of the defense, the course and extent of investigation radically changed and obfuscated the need for an expert to explain how the abuse by Nachand infected Matthew's recollection, reliability and credibility.  Had the Nachand abuse been front and center of the defense case, as it should have been, and had the defense an opportunity to present a complete defense with full confrontation rather than that presented, no reasonable juror would have convicted Mr. Lee.

Even if Mr. Lee could establish his innocence only as to the sodomy charges, he still has passed through the *Schlup* gateway.  To pass through the *Schlup* gateway, the petitioner

need only be innocent of some charge, not all possible charges.  In *Bousley v. United States*, 523 U.S. 614, 624 (1998), the defendant was guilty of drug charges but could still assert *Schlup* as to the related gun charge.  The petitioner need only be "innocent of *the charge for which he was incarcerated.*"  *Schlup*, 513 U.S. at 321 (quoting *Kulhman v. Wilson*, 477 U.S. 436, 452 (1986) (emphasis added)).

In the present case, Mr. Lee has long since completed his sentence for improper touching – a 28 month sentence.  He is incarcerated for the oral sodomy charge, upon which the mass of evidence demonstrated innocence.  The victim, during his testimony, did not claim sodomy and affirmatively stated that he was touched by nothing other than a hand. There was no medical evidence of oral sodomy.  The validity of the charge is especially unlikely because the alleged contact occurred in the living room of a small house with other children present in an adjoining room only fifteen feet away.  In addition, a close examination of the transcript demonstrates that the competency of the complainant to testify was not clearly established.  Excessive hearsay was admitted at the trial.  The State trial court convicted Mr. Lee of serious felonies on a quantum of proof less than constitutionally required.

Mr. Lee maintains that he is actually innocent of the offenses for which he was convicted in 1995.  He requests an opportunity to personally address the Court on the reasons he did not file within the statutory time period.  Should the Court grant his request for an evidentiary hearing, he would testify regarding the facts that demonstrate his actual innocence of the various sexual offenses.  He would also present evidence that his brother,

Larry Lee, was present during the relevant time and had a history of child sex abuse, Ex. U; as well as call other witness who were present, and present information that calls into question the veracity of the victim. This is a tragic case of a small child being abused while in his babysitter's care. Matthew was exposed to three men who bear a resemblance (Ex. V), two of whom were convicted child sex abusers. But there is scant evidence that Richard Lee also abused Matthew. This Court can reach the merits of the petition.

### B.  The Statute Of Limitations Should Be Equitably Tolled Because Mr. Lee Was A Victim Of The Oregon Two-Year Statute Of Limitations Trap.

The statute of limitations in 28 U.S.C. § 2244(d) may be equitably tolled in proper circumstances. *Calderon v. United States Dist. Court (Beeler)*, 128 F.3d 1283, 1288 (9th Cir. 1997), overruled on other grounds by *Calderon v. United States Dist. Court (Kelly)*, 163 F.3d 530 (9th Cir. 1998) (*en banc*), abrogated on other grounds by *Woodford v. Garcean*, 538 U.S. 202 (2003). The Ninth Circuit has stated that equitable tolling is available only when "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time" and those circumstances are "the cause of the untimeliness." *Roy v. Lampert*, 455 F.3d 945, 950 (9th Cir. 2006)(quotations and citations omitted). In *Pace v. DiGuglielmo*, 544 U.S. 408 (2005), the Supreme Court "framed the equitable tolling standard in less absolute terms" than "impossible to file a petition on time." *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 n.5 (9th Cir. 2005).

The Supreme Court stated that a habeas petitioner is entitled to equitable tolling of the statute of limitations when he establishes "(1) that he has been pursuing his rights diligently,

and (2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418. The extraordinary circumstances must be the cause of the petitioner's untimeliness. *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). Determinations of whether "there are grounds for equitable tolling are highly fact dependent[.]" *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000). Courts "must be cautious not to apply the statute of limitations too harshly." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). Dismissing a first petition habeas petition is a "particularly serious matter." *Id*. Absence of prejudice to the respondent is also a factor in deciding whether equitable tolling of the AEDPA limitations period should apply. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

In this case, Mr. Lee meets both requirements: he diligently followed state post-conviction procedures, and the tension between the Oregon statute of limitations and §2244 put prisoners like Mr. Lee in an extraordinary and unacceptable bind that was the cause of the untimeliness.

Mr. Lee filed his state post-conviction petition within the two-year time frame provided by ORS 138.510(3). His timely filing establishes diligence.

The second criteria for equitable tolling arises because of the irreconcilable and prejudicial tension between the Oregon and Federal statute of limitations. Unbeknownst to Mr. Lee and countless other prisoners who filed their state post-conviction petitions well within Oregon's two-year period, the federal clock was running. Unless the interval between direct appeal and post-conviction is equitably tolled, prisoners, like Mr. Lee, must choose to

fostego the state's statute of limitations period, and instead rush to file to beat the federal

clock.  The federal courts should not deprive prisoners of a state created opportunity.[8]

**Conclusion**

Mr. Lee's conviction was obtained on scant evidence introduced by a child who

probably was not competent to testify or make an accurate statement to the police.  His

Confrontation Clause rights were violated by trial counsel's failure to object to hearsay

evidence, and by the trial court's preclusion of evidence central to the defense.  The case is

here on remand because the Ninth Circuit found that the petition was improperly dismissed

---

[8]*Ferguson v. Palmateer*, 321 F.3d 820 (2003), discussed the Oregon statute of limitations, but did not consider whether the statute of limitations should be equitably tolled.

as untimely.  If the Court finds the petition time barred, Mr. Lee respectfully requests an

opportunity to provide testimony supporting his claim of actual innocence under *Schlup*

entitling him to equitable tolling.

      Respectfully submitted this 25th day of April, 2007.


              /s/ Stephen R. Sady                

              Stephen R. Sady

              Attorney for Petitioner


              Lynn Deffebach

              Research and Writing Attorney

              on the brief