HARDY MYERS
Attorney General
JACQUELINE SADKER  #06497
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4794
Email:  Jacqueline.Sadker@doj.state.or.us

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RICHARD R. LEE,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>ROBERT O. LAMPERT,<br><br>　　　　　Respondent. | Case No. 02-300-CL<br><br>RESPONSE TO PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR HABEAS CORPUS AND REQUEST FOR EVIDENTIARY HEARING |

## I.   INTRODUCTION

Petitioner brings this habeas corpus proceeding under 28 U.S.C. § 2254, challenging his conviction for first-degree Sexual Abuse and first-degree Sodomy. He alleges numerous grounds for relief, all of which are time-bared under 28 U.S.C. § 2244(d). Petitioner concedes that his habeas petition is untimely under 28 U.S.C. § 2244(d). However, in his Memorandum of Law in Support of Petition for Writ of Habeas Corpus ("Pet. Memo."), he argues that his habeas petition should not be dismissed as time-barred because: 1) he "has demonstrated a sufficient showing of actual innocence to warrant an evidentiary hearing regarding grounds for equitable

Page 1 -   RESPONSE TO PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF
　　　　　PETITION FOR HABEAS CORPUS AND REQUEST FOR EVIDENTIARY HEARING
　　　JS/js3/TRIS7745　　　　　　　Department of Justice
　　　　　　　　　　　　　　　　　1162 Court Street NE
　　　　　　　　　　　　　　　　Salem, OR 97301-4096
　　　　　　　　　　　　　　　　　(503) 947-4700

tolling;" and 2) "the statute of limitations should be equitably tolled because [he] was a victim of the Oregon two-year statute of limitations trap." (*Id.* at 50-56).

Petitioner's petition for writ of habeas corpus should be dismissed because it is untimely. First, neither the Ninth Circuit nor the U.S. Supreme Court has held that the actual innocence exception can excuse an untimely petition. Second, even if the actual innocence exception could excuse petitioner's untimely petition, petitioner has not shown that he is actually innocent. Third, petitioner's "trap" argument has already been foreclosed by the Ninth Circuit. Finally, he is not entitled to an evidentiary hearing on any issue because he has not identified any new evidence that, if proven, would demonstrate his actual innocence. Accordingly, this Court should deny petitioner's request for relief.

## II. BACKGROUND

Petitioner is in the custody of the Oregon Department of Corrections (ODOC) pursuant to the Judgment of Conviction and Sentence, dated June 26, 1995, from Linn County Circuit Court Case No. 94071507. (Respondent's Exhibit ("Resp. Ex.") 101). Petitioner is in custody because a jury found that he had he sexually abused and sodomized a five-year-old boy over the course of approximately five months in 1994 and 1995. (Resp. Ex. 115).

Petitioner was indicted on two counts of first-degree Sexual Abuse and two counts of first-degree Sodomy. (*Id.*). Prior to trial, petitioner's trial counsel moved *in limine* to admit evidence that the victim in petitioner's case had made allegations of sexual abuse against another individual, Robert Nachand, that were similar to those made against petitioner, and that Nachand had pleaded guilty to charges stemming from the allegations. (Resp. Ex 124). Counsel requested admission of the evidence under OEC 412(2)(b)(C), which is Oregon's Rape Shield Law.[1] The court denied this motion. (Resp. Exs. 125, 126).

---

[1] OEC 412(2)(b)(C) provides, in relevant part, that "evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence . . . is otherwise constitutionally required to be admitted."

Page 2 -   RESPONSE TO PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF
PETITION FOR HABEAS CORPUS AND REQUEST FOR EVIDENTIARY HEARING
JS/js3/TRIS7745               Department of Justice
                              1162 Court Street NE
                              Salem, OR 97301-4096
                              (503) 947-4700

Petitioner proceeded to jury trial on April 17, 2005. The state called the five-year old victim as its first witness. (Resp. Ex. 115, Tr. 69). One of the first questions asked of the victim was whether he knew who petitioner was. The victim replied, "Robert, I mean Richard." (*Id.* at 71). Later, using pictures as an aid, the victim testified that petitioner had touched him on his penis and his bottom. (*Id.* at 77).

On cross-examination, counsel asked the victim about his earlier statement regarding "Robert":

> [Trial counsel:] Okay, and when [the prosecutor] first asked you, you know, who is this that was sitting her, you said – do you remember you said "Robert – I mean Richard."
>
> [Victim:] Yeah.
>
> [Trial counsel:] So you're getting those two people mixed up, huh, Robert and Richard?
>
> [Victim:] Yeah.
>
> [Trial counsel:] And these things that you've talked about, about being touched, that was by Robert?
>
> [Victim:] Yeah.

(*Id.* at 84).

Immediately after this exchange, the prosecutor asked to be heard outside the presence of the jury and witnesses and argued that counsel's cross-examination was improper under the court's earlier ruling. (*Id.* at 84-85). The trial court disagreed with the prosecutor, finding counsel was entitled to ask the victim whether petitioner had been the one to touch him or whether it had been someone else. (*Id.* at 86-87). Counsel continued his examination. (*Id.* at 89).

On re-direct, the prosecutor asked the victim the following questions:

> [Prosecutor:] Okay. Mathew, is this Robert[?]
>
> [Victim:] No.

Page 3 -    RESPONSE TO PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF
            PETITION FOR HABEAS CORPUS AND REQUEST FOR EVIDENTIARY HEARING
JS/js3/TRIS7745                   Department of Justice
                                  1162 Court Street NE
                                  Salem, OR 97301-4096
                                  (503) 947-4700

[Prosecutor:] Who is this?

[Victim:]    Richard.

[Prosecutor:] All right. And is this – is this the person that did those things that you've drawn for us today?

[Victim:]    Yeah.

(*Id.* at 90). On re-cross, trial counsel attempted to establish that it was "Robert" who had touched him, but the victim maintained that it was petitioner, "Richard." (*Id.* at 91).

Cheryl Lee, petitioner's former sister-in-law testified for the state after the victim. (*Id.* at 93). She testified that she baby-sat for the victim during September, October, November and December of 1993, and that petitioner would come over to her apartment occasionally during this time period. (*Id.* at 93-95). She testified that during this period, both the victim and petitioner had been in her apartment at the same time on more than one occasion. (*Id.* at 95-97). She also testified that she left the victim with petitioner on three occasions. (*Id.* at 101). She also testified that the victim reported to her that petitioner had touched his "pee-pee" and that when she confronted petitioner about it, he said it must have occurred when he and the victim were wrestling while Ms. Lee went to the store. (*Id.* at 97-99). On cross-examination, counsel elicited testimony that "Robert" had also been in the apartment with petitioner and the victim on the three occasions Ms. Lee had left the apartment. (*Id.* at 105).

The state then called Detective John Fowler from the Albany Police Department. (*Id.* at 109-10). Detective Fowler testified regarding his contacts with the victim, during which the victim told Detective Fowler, through the use of anatomically-correct dolls, that petitioner had sexually abused the victim in various ways. (*Id.* at 111-20). The victim "put the adult...male doll's mouth to the penis of the child doll." (Resp. Ex. 116 at 117).

On cross-examination, counsel elicited testimony from the detective that during his contacts with the victim, he had asked the victim questions regarding "Richard" *and* "Robert". (Ex 109, Tr. 131). Following this testimony, the prosecutor objected and counsel and the court

Page 4 -   RESPONSE TO PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF
           PETITION FOR HABEAS CORPUS AND REQUEST FOR EVIDENTIARY HEARING
           JS/js3/TRIS7745                Department of Justice
                                          1162 Court Street NE
                                          Salem, OR 97301-4096
                                          (503) 947-4700

discussed the issue again outside the presence of the jury. (Ex 109, Tr. 131). Counsel explained to the trial court he was in a "bind" regarding cross-examination of the detective because when the detective had interviewed the victim regarding petitioner's abuse, he had had the victim describe what petitioner had done and what Robert Nachand had done to him. (*Id.* at 133-34). The court allowed counsel to cross-examine the detective as to whether the victim's reports of abuse referred to Robert Nachand or petitioner. (*Id.* at 138-39). Detective Fowler testified that he had questioned the victim regarding the abuse by both "Richard" and "Robert." (*Id.* at 141-43).

During her closing statement, almost the first issue addressed by the prosecutor was the evidence regarding Robert Nachand. (Resp. Ex. 117, Tr. 190-91). Defense counsel's theory of the case during closing argument was that this was a case of mistaken identity. (*Id.* at 201-11).

Petitioner was convicted on all counts. (*Id.* at 227). Petitioner was sentenced to concurrent 28-month terms of imprisonment on the Sexual Abuse convictions and consecutive 110-month and 60-month terms of imprisonment on the Sodomy convictions, totaling 170 months' imprisonment. (*Id.* at 258-61).

Petitioner directly appealed the convictions and filed a *Balfour* brief. (Resp. Ex. 118). The Oregon Court of Appeals affirmed without opinion. (Resp. Ex. 103); *State v. Lee*, 141 Or. App. 597, 918 P.2d 459 (1996). Petitioner did not seek review by the Oregon Supreme Court. Petitioner filed an amended petition for post-conviction relief in *Lee v. Thompson*, Marion County Circuit Court Case No. 98C11671, but the court denied relief. (Resp. Exs. 119, 130-132). The Oregon Court of Appeals affirmed without opinion, *Lee v. Palmateer*, 174 Or. App. 320, 26 P.3d 190 (2001), and the Oregon Supreme Court denied review. (Resp. Ex. 136); 332 Or. 430, 30 P.3d 1183 (2001).

Petitioner filed for Federal Habeas corpus relief in this proceeding, but his petition was dismissed *sua sponte* after petitioner failed to show cause as to why his petition was untimely. (Resp. Ex. 106-09). Petition appealed the court's dismissal. (Resp. Ex. 111). Respondent

conceded that dismissal *sua sponte* was inappropriate because "the limited record before the district court did not establish conclusively that [it] was untimely." (Resp. Ex. 113 at 2-4). The Ninth Circuit agreed that the "district court should not have dismissed the petition as untimely on its face" and remanded. (Resp. Ex. 114).

### III. DISCUSSION

#### A. PETITIONER'S PETITION IS UNTIMELY

The full record in this case conclusively demonstrates that petitioner's petition is untimely. Petitioner's direct appeal was final in the state appellate courts on September 30, 1996. (Resp. Ex. 103).[2] Petitioner had one year from September 30, 1996, excluding any time during which a state post-conviction case, or other collateral remedy, was pending, to file a federal habeas corpus petition. Between September 30, 1996, the date on which the appellate judgment issued in the direct appeal, and February 5, 1998, the date on which petitioner signed[3] his petition for post-conviction relief, 511 days accrued. Between September 24, 2001, the date of the appellate judgment in the post-conviction proceeding, and February 6, 2002, the date on which petitioner signed the petition in the instant proceeding, 135 days accrued. In sum, petitioner waited 646 days to file his petition for writ of federal habeas corpus, 281 days past the deadline to file for Federal habeas relief.

#### B. THE "ACTUAL INNOCENCE" EXCEPTION CANNOT EXCUSE AN UNTIMELY PETITION.

As an initial matter, respondent submits that the procedural default's "actual innocence" exception should not be extended to excuse untimely federal habeas filings. As this court

---

[2] In *Bowen v. Roe*, 188 F.3d 1157 (1999), the Ninth Circuit held that the statute of limitations does not begin to run until petitioner's time in which to seek certiorari from the United States Supreme Court has expired. Bowen should not apply in this circumstance, however, because petitioner failed to seek review by the Oregon Supreme Court, depriving the state courts the ability to complete the first level of appellate review.

[3] Respondent has elected to calculate the timeliness of the instant petition based on when petitioner signed the petition for post-conviction relief and the petition for writ of federal habeas corpus rather than on the dates the petitions were received by the appropriate courts.

recently noted, "[n]either the Supreme Court nor the Ninth Circuit has ever held that a habeas petitioner who breaches AEDPA's limitation period may overcome that procedural bar by proving his actual innocence." *Zapata v. Belleque*, 2007 WL 756715 (D. Or. Mar. 3, 2007) (citing *Majoy v. Roe*, 296 F.3d 770, 777 (9th Cir. 2002) (declining to resolve whether actual innocence can excuse an untimely petition)). Thus, petitioner cannot excuse his untimely filing by showing "actual innocence."

### C. PETITIONER'S UNTIMELY FILING SHOULD NOT BE EXCUSED UNDER THE "ACTUAL INNOCENCE" EXCEPTION.

Even assuming the court finds that the procedural default's "actual innocence" exception also excuses violations of the AEDPA's limitations period, petitioner's 281-day delay should not be excused because petitioner has not shown that he is "actually innocent," as that term is used in *Schlup v. Delo*, 513 U.S. 298 (1995). In *Schlup*, the Court noted that a habeas petitioner "comes before the habeas court with a strong–and in the vast majority of the cases conclusive–presumption of guilt." *Schlup*, 513 U.S. at 326 n. 42. To successfully demonstrate a fundamental miscarriage of justice, habeas petitioners must show that the constitutional error complained of probably resulted in the conviction of one who is "actually innocent." *Id.* at 327. "Actual innocence *means factual innocence, not mere legal insufficiency.*" *Bousley v. United States*, 523 U.S. 614, 623 (1998) (emphasis added); *see also Calderon v. Thompson*, 523 U.S. 538, 559 (1998) ("'[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.'" (*quoting Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

The standard is whether petitioner has shown that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Schlup*, 513 U.S. at 329 (citing *Murray v. Carrier*, 477 U.S. 478 (1986).[4] And this standard is not satisfied by a

---

[4] Petitioner claims that "to meet the *Schlup* requirements, [he] must document that . . . it is more likely than not that *a* reasonable juror would have decline to convict him." Memorandum at 51 (emphasis added). Respondent submits that this is not the *Schlup* standard. *See House*, 126 S. Ct. at 2077 (stating that the *Schlup* standard, without the double negative, is that it is "more likely than not *any* reasonable juror would have reasonable doubt.") (emphasis added).

showing of reasonable doubt in light of evidence not presented at trial; rather, a petitioner must show that it is more likely than not that, in light of all the evidence, no reasonable juror would have found him guilty. *Schlup*, 513 U.S. at 328; *Calderon*, 523 U.S. at 565 (showing of actual innocence must be made in light of "the totality of the evidence of [the petitioner's] guilt").

Furthermore, as noted above, the evidence of innocence must be "new" and "reliable" evidence not presented at trial. *House v. Bell*, __ U.S. __, 126 S. Ct. 2064, 2077-78 (2006) (holding that a credible gateway claim "requires new reliable evidence"). New reliable evidence can consist of "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup v. Delo*, 513 U.S. 298, 324-27 (1995). It can also be "evidence that *significantly* undermines or impeaches the credibility of witnesses presented at trial." *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2001) (emphasis added).[5] However, "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected." *Calderon*, 523 U.S. at 559 (emphasis added, internal quotations and citations omitted).

Petitioner has not shown he is actually innocent as the term is defined in *Schlup* because has not identified any evidence that is new and reliable. Petitioner asserts that he "was not able to present a cohesive defense of mistaken identity." (Pet. Memo. 51). His allegation is, once again, premised upon the fact that the victim was also abused by another person. *Id*. This evidence, while reliable, is certainly not new. It was known to petitioner, his counsel, the court and the jury at the time of trial. It was thoroughly discussed during the prosecution's case, the defense's case, and during closing arguments. (*See* discussion *supra* at 2-5). Any evidence regarding the "mistaken identity" defense cannot support petitioner's claim of actual innocence because it is not new.

---

[5] Impeachment evidence will seldom, if ever, make a clear and convincing showing of actual innocence. *Sawyer v. Whitley*, 505 U.S. 333, 349 (1992). This is because the evidence is a step remove from evidence pertaining to the crime itself. *Calderon v. Thompson*, 523 U.S. 538, 563 (1998).

Page 8 -   RESPONSE TO PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF
            PETITION FOR HABEAS CORPUS AND REQUEST FOR EVIDENTIARY HEARING
JS/js3/TRIS7745                 Department of Justice
                                1162 Court Street NE
                                Salem, OR 97301-4096
                                (503) 947-4700

Petitioner next asserts that even if he "could establish his innocence only as to the sodomy charges, he still has passed through the *Schlup* gateway." (Pet. Memo. 51). This claim is based on the alleged lack of evidence that petitioner orally sodomized the victim. (*Id.* at 52). Petitioner presents no evidence—much less new or reliable evidence—to support this allegation. Rather, he makes bare allegations regarding the lack of medical evidence, the location of the victim in the house, the competency of the victim to testify and hearsay admitted at trial. Such allegations, at best, concern whether the evidence was legally insufficient and fall well short of the *Schulp* standard for demonstrating actual innocence.

Finally, petitioner explains that he would present evidence that his brother "was present during the relevant time and had a history of child sex abuse." (*Id.* at 52-53). This evidence is not reliable. It would not significantly undermine or impeach the credibility of the victim because it has nothing to do with whether petitioner abused the victim. *See Gandarela,* 286 F.3d at 1086. It was established at trial that the victim was abused by two men and that he could differentiate between them. (Resp. Ex. 116 at 124-50). Information regarding whether the victim's brother was present would not undermine or impeach the credibility of the victim.

Even assuming petitioner's evidence could be characterized as new and reliable, he would fail to show it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. It is impossible to decipher petitioner's theory of why his so-called evidence establishes his innocence. He puts forth the theory that the victim was abused by Robert Nachand, but became confused and named petitioner as well. (Pet. Memo. 51). He also attempts to establish his innocence by asserting that there was only enough evidence to support his conviction for Sexual Abuse, not Sodomy. (*Id.* at 51-52). Finally, petitioner includes a seemingly random assertion that it was his brother who abused the victim. (*Id.* at 52-53).

Petitioner's assertions are inconsistent and fail to show that any reasonable juror would have reasonable doubt. The first claim fails because the jury was aware that the victim was abused by another person yet convicted petitioner despite that knowledge. The second claim

Page 9 -   RESPONSE TO PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF
           PETITION FOR HABEAS CORPUS AND REQUEST FOR EVIDENTIARY HEARING
   JS/js3/TRIS7745              Department of Justice
                                1162 Court Street NE
                                Salem, OR 97301-4096
                                (503) 947-4700

fails because the jury heard sufficient evidence to find that the victim was sodomized. The third claim fails because is contrary to the basis of his claim for actual innocence—namely, that the victim was only abused by one person. A reasonable juror, when presented with both the evidence against petitioner and his inconsistent defenses, would find petitioner was guilty beyond a reasonable doubt.

In sum, petitioner has failed to present any new and reliable evidence. He has also failed to show that any reasonable juror would have reasonable doubt after considering all the evidence now available in this case. Thus, even if the actual innocence exception can excuse an untimely filing, petitioner's has failed to show actual innocence and his petition should be dismissed.

### D. PETITIONER'S ARGUMENT THAT THE STATUTE OF LIMITATIONS SHOULD BE EQUITABLY TOLLED (OR REINITIATED) BECAUSE HE WAS VICTIM OF A "TRAP" HAS BEEN REJECTED BY THE NINTH CIRCUIT.

Petitioner argues that the one-year statute of limitations should be equitably tolled because Oregon's two-year statute of limitations to file for post-conviction relief under ORS 138.510(3) somehow creates a "trap." (Pet. Memo. 54-55). This argument has been foreclosed. *See Ferguson v. Palmateer*, 321 F.3d 820 (2003). In *Ferguson*, the court held that AEDPA's one-year statute of limitations applies even if a longer state statute of limitations exists. *Id.* at 823. The court agreed with the Eleventh Circuit that AEDPA "does not permit the reinitiation of the limitations period that has ended before the state petition was filed." *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (citation omitted).

Petitioner claims, however, that "*Ferguson* . . . discussed the Oregon statue of limitations, but did not consider whether the statue of limitations should be equitably tolled." (Pet. Memo. 55 n. 8). This claim is an exercise in semantics. Petitioner attempts to couch his "trap" argument in terms of equitable tolling (rather than using the term "reinitiation") in an effort to escape *Ferguson*.[6] He argues that an extraordinary circumstance "arises because of the

---

[6] *Ferguson* discusses whether "reinitiation" of the statute of limitations period is appropriate based on the "trap" theory that petitioner advances in this case. *Ferguson* adopts the Eleventh

irreconcilable and prejudicial tension between the Oregon and Federal statute[s] of limitations." Pet. Memo. 54. This argument fails because just as there is no "trap" that would allow for reinitiation, there is no "trap" that would constitute an extraordinary circumstance to justify equitable tolling. *See Ferguson*, 321 F.3d at 823. Petitioner's argument, whether it is for reinitiation or equitable tolling, should therefore be rejected.

### E. PETITIONER IS NOT ENTITLED TO AN EVIDENTIARY HEARING.

Petitioner requests an evidentiary hearing so that he may provide testimony supporting his claim of actual innocence. (Pet. Memo. 52-53). However, petitioner does not reveal how his testimony would prove that he is actually innocent. At most, he asserts that he could testify about the victim's veracity and his brother's whereabouts and history of sexual abuse. He also makes vague references to "other witnesses." (*Id.* at 53). These bare allegations are insufficient to permit an evidentiary hearing. As noted above, none of petitioner's claims, even if proven, would establish that he is "actually innocent" as the term is used in *Schlup*. Accordingly, petitioner should not be granted an evidentiary hearing on a petition that is so clearly time-barred.

/ / /

/ / /

/ / /

---

Circuit's reasoning from *Tinker v. Moore*, 255 F.3d 1331, 1333 (11th Cir. 2001). *Tinker* addressed an indistinguishable "trap" argument based on the relationship between Florida's two-year statute of limitations and AEDPA. *Tinker*, 255 F.3d at 1333. Tinker had argued that AEDPA's one-year statute of limitations should be equitably tolled. *Id.* The court took issue with the term "tolling" in that case, stating that "a state court petition like Tinker's that is filed following the expiration of the federal limitations period cannot toll that period because there is no period remaining to be tolled. What Tinker is really arguing for is not the tolling of § 2244(d)'s limitation period, but for its reinitiation." *Id* at 1333-34. Factually, the circumstances in this case are indistinguishable from *Tinker* and *Ferguson* because petitioner does not allege any extraordinary circumstance other than the Oregon and Federal statutes of limitations. What petitioner is really arguing for is not the tolling of §2254(d)'s limitation period, but for its reinitiation.

Page 11 -   RESPONSE TO PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF
             PETITION FOR HABEAS CORPUS AND REQUEST FOR EVIDENTIARY HEARING
             JS/js3/TRIS7745                Department of Justice
                                            1162 Court Street NE
                                            Salem, OR 97301-4096
                                            (503) 947-4700

## IV.  CONCLUSION

For the reasons stated above and in respondent's previously filed answer and response to habeas petition, petitioner is not entitled to an evidentiary hearing and his habeas petition should be dismissed.

DATED this 29th day of October, 2007.

Respectfully submitted,

HARDY MYERS
Attorney General

JACQUELINE SADKER #06497
Assistant Attorney General
Trial Attorney
Tel (503) 947-4700
Fax (503) 947-4794
Jacqueline.Sadker@doj.state.or.us
Of Attorneys for Respondent

Page 12 -  RESPONSE TO PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF
          PETITION FOR HABEAS CORPUS AND REQUEST FOR EVIDENTIARY HEARING
JS/js3/TRIS7745              Department of Justice
                             1162 Court Street NE
                             Salem, OR 97301-4096
                                (503) 947-4700

## CERTIFICATE OF SERVICE

I certify that on October 29, 2007, I served the foregoing RESPONSE TO PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR HABEAS CORPUS AND REQUEST FOR EVIDENTIARY HEARING upon the parties hereto by the method indicated below, and addressed to the following:

Stephen R. Sady  
Assistant Federal Public Defender  
101 SW Main Street, Suite 1700  
Portland, OR 97204

\_\_\_ HAND DELIVERY  
\_\_\_ MAIL DELIVERY  
\_\_\_ OVERNIGHT MAIL  
\_\_\_ TELECOPY (FAX)  
\_\_\_ E-MAIL  
_X_ E-FILE

JACQUELINE SADKER #06497  
Assistant Attorney General  
Trial Attorney  
Tel (503) 947-4700  
Fax (503) 947-4794  
Jacqueline.Sadker@doj.state.or.us  
Of Attorneys for Respondent

Page 1 -   CERTIFICATE OF SERVICE  
JS/gcz/TRIK5943

Department of Justice  
1162 Court Street NE  
Salem, OR 97301-4096  
(503) 947-4700