FILED'08 MAR 11 09:28USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RICHARD LEE,

        Petitioner,        Civil No. 02-300-CL

        v.        REPORT AND
                RECOMMENDATION
ROBERT LAMPERT,

        Respondent.

CLARKE, Magistrate Judge.

    Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his convictions in Linn County Circuit Court Case No. 94071507. (Respondent's Exhibit 101). The petition contains five grounds for relief.

    Respondent argues that petitioner did not file his habeas corpus petition within the time allowed by 28 U.S.C. §2244. Petitioner argues that his petition should not be dismissed because: 1) he has demonstrated sufficient evidence of actual innocence to warrant an evidentiary hearing regarding grounds

for equitable tolling; and 2) "the statute of limitations should be equitably tolled because [he] was a victim of the Oregon two-year statute of limitations trap." For the reasons set forth below, petitioner's petition should be denied as untimely and this proceeding should be dismissed.

## BACKGROUND

Petitioner was convicted of first-degree Sexual Abuse and first-degree Sodomy. (Respondent's Exhibit 101). Petitioner directly appealed his convictions to the Oregon Court of Appeals. The Oregon Court of Appeals affirmed his convictions without opinion in State v. Lee, 141 Or.App. 597 (1996). Petitioner did not seek review by the Oregon Supreme Court. The appellate judgment was issued on September 30, 1996. (Respondent's Exhibit 103).

On February 23, 1998, petitioner filed a petition for post-conviction relief in Marion County Circuit Court Case No. 98C11671 and on October 5, 1998, petitioner filed an amended petition for post-conviction relief, but the post-conviction court denied relief. (Respondent's Exhibits 119, 130-132). Petitioner appealed to the Oregon Court of Appeals, but the court affirmed without opinion in Lee v. Palmateer, 174 Or.App. 320 (2001), and the Oregon Supreme Court denied review, 332 Or. 430(2001). (Respondent's Exhibit 136).

REPORT AND RECOMMENDATION - 2

## DISCUSSION

Petitioner's first petition was filed on March 11, 2002 (#2). Petitioner filed an amended petition on July 25, 2005 (#37). Therefore, the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) govern this case.

The AEDPA imposes a one-year statute of limitations on the filing of federal habeas corpus petitions by state prisoners. 28 U.S.C. §2244(d)(1). The one-year statute of limitations begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. 28 U.S.C. §2244(d)(1)(A-D).

The AEDPA provides that the statute of limitations is tolled during the time that a state prisoner is attempting to exhaust his claims in state court. Nino v. Galaza, 183 F.3d

REPORT AND RECOMMENDATION - 3

1003, 1005 (9th Cir. 1999), cert. denied, 529 U.S. 1104 (2000) (citing 28 U.S.C. §2244(d)(2)). In addition, the "statute of limitations is tolled for all of the time during which a state prisoner is attempting, through proper use of state court procedures, to exhaust state court remedies with regard to a particular post-conviction application." Id. at 1006 (citation omitted). However, the "AEDPA's statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case 'pending' during that interval." Id.

In this case, petitioner's direct appeal was final on September 30, 1996. (Respondent's Exhibit 103). Petitioner did not seek review by the Oregon Supreme Court. Therefore, the AEDPA statute of limitations began to run on September 30, 1996.

Petitioner had one year from September 30, 1996 to file his habeas corpus petition. Petitioner filed his petition for post-conviction relief on February 23, 1998. (Respondent's Exhibit 104). The AEDPA's statute of limitations is not tolled "from the time a final decision on direct state appeal and the time the first state collateral challenge is filed because there is no case 'pending' during that interval."

REPORT AND RECOMMENDATION - 4

Nino, 183 F.3d at 1006. The AEDPA's one year statute of limitations ran before petitioner filed his petition for post-conviction relief.

Absent equitable tolling, petitioner's petition is untimely. To be entitled to equitable tolling, a petition must demonstrate extraordinary circumstances beyond the petitioner's control that made it impossible to file a timely petition. Allen v. Lewis, 255 F.3d 798, 799-800 (9th Cir. 2001), rehearing en banc granted, 278 F.3d 1357 (9th Cir. 2002), on rehearing en banc, 295 F.3d 1046 (9th Cir. 2002).

**Actual Innocence**

Petitioner argues that he is actually innocent and, therefore, the statute of limitations should be tolled. In O'Neal v. Lampert, 199 F.Supp.2d 1064, 1066-1-67 (D.Or.), Judge Aiken analyzed whether a petitioner could toll the habeas corpus statute of limitations by a showing of actual innocence. This court finds Judge Aiken's opinion well reasoned and based upon her opinion, rules that a petitioner may toll the habeas corpus statute of limitations by a showing of actual innocence under Schlup v. Delo, 513 U.S. 298, 327 (1995).

Petitioner's claim of actual innocence does not by itself provide a basis for habeas corpus relief, "but instead is a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claims considered on the merits." Schlup, 513 U.S. at 315. "Actual innocence" in this context means factual innocence and not mere legal insufficiency. Bousley v. U.S., 523 U.S. 614, 623 (1998).

"To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." Schlup, 513 U.S. at 324. The new evidence does not have to be newly available evidence, just newly presented evidence. Griffin v. Johnson, 350 F.3d 956, 963 (9th Cir. 2003), cert. denied, 541 U.S. 998 (2004); Sistrunk v. Armenakis, 292 F.3d 669, 673 n.4 (9th Cir. 2002)(en banc), cert. denied, 537 U.S. 1113 (2003).

Petitioner presents the following evidence in support of his actual innocence claim that the court rules is newly presented reliable evidence:

1) information regarding the conviction of Robert Nachand for the abuse of the same victim - Petitioner's Exhibits Q, R;

REPORT AND RECOMMENDATION - 6

2) reports regarding the sexual history of Robert Nachand;

3) the indictment and conviction of Larry Lee in 1992;

4) photographs of Larry Lee and Richard Lee showing that they look a like and the fact that Richard has tattoos while Larry does not - Petitioner's Exhibits U and V;

5) expert testimony regarding the use of anatomical dolls when questioning a child who has been previously sexually abused and the reliability of child testimony.

Petitioner also argues that he is actually innocent of the charge of oral sodomy as the victim never testified or claimed oral sodomy, there was no medical evidence of oral sodomy, the validity of the charge is unlikely given the circumstances of the conduct, the competency of the victim was not clearly established, and excessive hearsay was admitted at trial. The court finds that petitioner does not offer "new" evidence of the type contemplated by Schlup-witness testimony or physical evidence that is evidence of factual innocence of the charge of oral sodomy. Petitioner instead offers evidence of legal insufficiency which does not satisfy the actual innocence exception of Schlup. In the context of the miscarriage of justice exception, "It is important to note . . . that 'actual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623; Sawyer

REPORT AND RECOMMENDATION - 7

v. Whitley, 505 U.S. 333, 339 (1992) ("We emphasized that the miscarriage of justice exception is concerned with actual as compared to legal innocence . . . ." (citing Smith v. Murray, 477 U.S. 527, 537 (1986)); Kuhlmann v. Wilson, 477 U.S. 436, 453 (1986). Petitioner has not offered any new evidence of factual innocence, such as the declaration of a witness recanting testimony, or DNA evidence, but offers evidence only of "mere legal insufficiency," Bousley, 523 U.S. at 623, which does not satisfy the fundamental miscarriage of justice exception.

Once the court determines that the evidence is new and reliable, the court then considers if the evidence meets the standard set forth in Schlup. Id. To pass through the Schlup gateway, the standard requires that:

> "the habeas petitioner show that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' . . . To establish the requisite probability, the petitioner must show that it is more likely then not that no reasonable juror would have convicted him in light of [all available] . . . evidence . . . ."

Schlup, 513 U.S. at 327; Smith v. Baldwin, 510 F.3d 1127, 1140 (9th Cir. 2007).

> "In assessing the adequacy of petitioner's showing, . . . the district court is not bound by the rules of admissibility that would govern at trial. Instead, the emphasis on 'actual innocence' allows the reviewing tribunal also to consider the

REPORT AND RECOMMENDATION - 8

> probative force of relevant evidence that was either excluded or unavailable at trial. . . . The habeas court must make its determination concerning the petitioner's innocence 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial."

Schlup, 513 U.S. at 327-328 (citation omitted); See House v. Bell, 547 U.S. 518, 126 S.Ct. 2064, 2076-77 (2006).

Based on the new evidence presented, the court must "make a probabilistic determination about what reasonable, properly instructed jurors would do." Id. at 329. The petitioner does not meet the standard unless the court is persuaded that "in light of the new evidence, no juror, acting reasonably, would have voted to find [petitioner] guilty beyond a reasonable doubt." Id. In making this determination, the court should consider the cumulative effect of the new evidence. Battle v. Delo, 64 F.3d 347, 353 fn. 11 (8th Cir. 1995), rehearing and suggestion for rehearing en banc denied, cert. denied, 517 U.S. 1235 (1996)(citation omitted). "[I]mpeachment evidence provides [little] basis for finding a miscarriage of justice", because "the evidence is a step removed from evidence pertaining to the crime itself." Calderon v. Thompson, 523 U.S. 538, 563 (1998).

The victim admitted during his testimony that he was getting Richard and Robert mixed up, but he also clearly testified that Richard was the one "that did those things to you that you've drawn for us today?" (Respondent's Exhibit 115 - Tr. 84-91). Expert testimony regarding the credibility and reliability of a child's testimony may have served as impeachment evidence, but ultimately, the victim still identified the petitioner as the perpetrator of these acts.

The state presented testimony from the babysitter that the petitioner had access to the victim and that the victim told her that the petitioner touched his "pee-pee". (Id. at 93-99). She also testified that Robert had also been left alone in the apartment with the victim. (Id. at 105). The victim's father testify that the victim told him that the petitioner "stuck it up inside me". (Respondent's Exhibit 116 at 164).

The State presented testimony from Detective Fowler who used anatomically-correct dolls when questioning the victim and the victim showed the detective how the petitioner abused him in various ways, including oral sodomy. (Respondent's Ex. 115 at 109-120). Expert testimony regarding teh appropriateness of using anatomical dolls in this situation may have been used to impeach the victim's testimony, but

REPORT AND RECOMMENDATION - 10

ultimately, the victim identified those pictures and testified that they depicted what the petitioner did to him. (Id. at 81).

The evidence that Robert Nachand was convicted of abusing the same victim and evidence of his sexual history would be unlikely to change the verdict as this information, at least to a certain extent did come out at trial. It was revealed during the detective's testimony that the victim was abused by both Richard and Robert. (Id. at 109, 131, 133-134, 138-140). The issue of mistaken identity was brought out during the trial through testimony and through the prosecutor's closing argument. (Respondent's Ex. 117 at 190-191, 201-211).

The fact that petitioner's brother looks like him, but does not have tattoos, was a convicted child molester, and had access to the victim does not establish that no reasonable juror would not have convicted petitioner if they had been aware of this information. Petitioner's counsel cross-examined the victim and asked if "Robert" had his shirt off, not petitioner, and asked if he saw anything on "Robert's" arms or stomach, not the petitioner's arms or stomach. (Id. at 89). There is no evidence in the record regarding whether Robert had any tattoos. The victim later on redirect said it was "Richard" that "did those things that you've drawn for us

today". (Id. at 90). The victim confirmed the same thing on re-cross. (Id. at 91). It is quite possible that a reasonable juror could have found that the victim was molested by the petitioner despite the fact that the victim testified that he did not see tattoos or that a reasonable juror may have believed the victim was confused about the two men who molested him or that a reasonable juror could have found the victim was molested by all three men if this evidence was presented.

Considering all the evidence presented at trial and the petitioner's newly presented evidence, the court rules that petitioner has failed to demonstrate that no reasonable juror would have convicted him.

**Evidentiary Hearing**

Federal courts may hold evidentiary hearings on habeas claims only under certain circumstances:

If the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant can show that -

(A) the claim relies on -

(I) a new rule of constitutional law ...; or

(ii) a factual predicate that could not have been previously

discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense. 28 U.S.C. § 2254(e)(2).

Petitioner does not rely on "a new rule of constitutional law," and his actual innocence claim does not rely on facts "that could not have been previously discovered through the exercise of due diligence." Id. He has not shown that the facts underlying his actual innocence claim "establish by clear and convincing evidence that but for [ineffective assistance of counsel, violations of the Fourteenth Amendment, and violation of the Sixth Amendment], no reasonable factfinder would have found him guilty of the underlying offense." Id. Thus, section 2254(e)(2) dictates that Petitioner is not entitled to an evidentiary hearing on his actual innocence claim. Petitioner failed to establish that he is entitled to an evidentiary hearing. Therefore, this request should be denied.

In addition, because petitioner's claims can be resolved on the record before the Court, his request for an evidentiary hearing should be denied. See Battle v. Delo, 64 F.3d 347,

REPORT AND RECOMMENDATION - 13

353 n.11 (8th Cir. 1995); Bannister v. Delo, 100 F.3d 610, 616-17 (8th Cir. 1996), cert. denied, 521 U.S. 1126 (1997).

**Oregon's Two Year Period for Post-Conviction Relief**

In the alternative, petitioner argues that the court should reinstate or toll the limitations period during the two-year period that Oregon allows for prisoners to file state post conviction petitions because Oregon's two year statute of limitations to file for post-conviction relief under ORS 138.510(3) creates a "trap". The Ninth Circuit has rejected this argument. Ferguson v. Palmateer, 321 F.3d 820 (9th Cir.), cert. denied, 540 U.S. 924 (2003); Green v. White, 223 F.3d 1001, 1003 (9th Cir. 2000).

## CONCLUSION

The court is troubled by the confusing testimony of the young victim in the context of multiple alleged abusers and potential evidentiary problems at trial. Newly presented reliable evidence presented by petitioner compounds the concerns of the court. However, under habeas corpus law, there is nothing at the federal habeas level to reach these concerns.

## RECOMMENDATION

Based on the foregoing, it is recommended that petitioner's amended petition (#37) be denied, and this case

REPORT AND RECOMMENDATION - 14

be dismissed.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.* Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. *Objections to this Report and Recommendation, if any, are due by March 25, 2008. If objections are filed, any responses to the objections are due 14 days after the objections are filed.* Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 11 day of March, 2008.

_____
UNITED STATES MAGISTRATE JUDGE