**Stephen R. Sady, OSB #81099**
**Chief Deputy Federal Defender**
**101 SW Main Street, Suite 1700**
**Portland, OR 97204**
**Tel: (503) 326-2123**
**Fax: (503) 326-5524**
**Email: Steve_Sady@fd.org**

**Attorney for Petitioner**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **RICHARD LEE,** | Civ. No. 02-300-CL |
| Petitioner, | **OBJECTIONS TO REPORT AND RECOMMENDATION** |
| vs. | |
| **ROBERT LAMPERT,** | |
| Respondent. | |

**Introduction**

Five-year old Matthew was sexually abused in the fall of 1993. After a thorough investigation wherein Matthew said only one person abused him, Robert Nachand – not Richard Lee – was charged with and pleaded guilty to sexually abusing the child. Nearly six months later, allegations that Richard Lee also abused Matthew during the same period and

in the same apartment surfaced after Matthew's father asked the child, out of the blue, if the petitioner had also abused him. During the police interview, Matthew was asked questions about abuse by "Robert or Richard." Following that interview, Richard Lee was charged with two counts of sex abuse and two counts of sodomy.

The direct evidence against Mr. Lee was the testimony of the child victim who was never determined to be competent to testify, identified his abuser as "Robert," and only upon prompting by the prosecutor identified Mr. Lee as the perpetrator. Even then, Matthew said that his abuser never took his pants off and did not have tattoos, as did Mr. Lee. Officer Fowler offered hearsay testimony about what Matthew had told him that was significantly different from what Matthew testified to. The trial court prohibited the defense from questioning Matthew about the abuse by Robert Nachand under Oregon's rape-shield laws, thus impairing the petitioner's main defense of mistaken identity.[1] Significantly, the only evidence of sodomy came through the constitutionally inadmissible hearsay testimony of Officer Fowler and the father, the defense's only witness.

In his federal habeas petition, Mr. Lee raised numerous grounds of constitutional error, including that his attorneys failed to protect his Confrontation Clause rights and inadequately prepared his case in violation of his right to effective assistance of counsel. He also claimed that he is actually innocent and that insufficient evidence supported the

---

[1] Evidence of the abuse by Nachand eventually came before the jury after the prosecutor raised the issue. The defense, however, never had the opportunity to question the child.

**Page 2   OBJECTIONS TO REPORT AND RECOMMENDATION**

conviction. The petitioner submitted new reliable evidence in support establishing that another man, Larry Lee, the petitioner's brother, who has a history of child sex abuse, and who bears a striking resemblance to him but without tattoos, also had access to the child during the relevant period. This evidence was submitted on the theory that the child may have misidentified the petitioner for Larry Lee. The petitioner also submitted expert evidence on child sex abuse and child testimony that challenged the reliability of both the victim's and Officer Fowler's testimony. The State argued that the federal petition was time-barred. Mr. Lee requested an evidentiary hearing to demonstrate that there was sufficient evidence to pass through the actual innocence gateway established in *Schlup* for consideration of the merits of his constitutional claims.

In the Report and Recommendation, the Magistrate Judge was "troubled by the confusing testimony of the young victim in the context of multiple alleged abusers and potential evidentiary problems at trial" (R & R at 14). The Magistrate Judge also noted that the newly presented evidence submitted in this proceeding compounded his concerns (R & R at 14). Despite these indications that there can be no confidence in the outcome of the trial, the Magistrate Judge denied relief based on timeliness grounds without holding an evidentiary hearing to determine whether the petitioner has passed through the *Schlup* gateway.

This Court should review the case *de novo* and grant relief because the Magistrate Judge misapplied the *Schlup* actual innocence standard, failed to give sufficient weight to expert impeachment evidence, misunderstood the relevance of evidence relating to the

petitioner's brother, and misapplied 28 U.S.C. §2254(e)(2) to deny an evidentiary hearing on the issue of actual innocence under *Schlup*.

> **A.  The Magistrate Judge Did Not Apply the *Schlup* Standard Which Asks Whether Any Reasonable Juror Would Have Reasonable Doubt Given The Totality of The Evidence.**

The Magistrate Judge applied the more demanding standard for sufficiency claims or free-standing innocence in finding that "the petitioner failed to demonstrate that no reasonable juror would have convicted him" (R&R at 12). By the Magistrate Judge's own statement, he was troubled by events at trial, which is especially significant given the taint of repeated constitutional error (R&R at 14). The Magistrate Judge's concern was compounded by the new reliable evidence submitted in this proceeding (R&R at 14). Because the Magistrate Judge failed to apply the *Schlup* gateway standard, this Court should reject the Report and Recommendation, find the facts are sufficient to meet the *Schlup* gateway, and consider the constitutional claims.

In *Schlup v. Delo*, the Supreme Court explained that the actual innocence standard requires that a petitioner establish that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." 513 U.S. 298, 329 (1995). In *House v. Bell*, the Court restated this standard, removing the double negative, to require "that more likely than not, any reasonable juror would have reasonable doubt." 547 U.S. 518, 539-40 (2006). The Magistrate Judge appears to have applied the standard applied by the *House* district court and set forth in the dissent in *House*: that every juror would have to entertain reasonable doubt

**Page 4  OBJECTIONS TO REPORT AND RECOMMENDATION**

about the petitioner's guilt to pass through the *Schlup* gateway. *House*, 547 U.S. at 570-71 (Roberts, J. dissenting).[2]

Contrary to the Magistrate Judge's conclusions that relief is foreclosed because some evidence pointed to petitioner's guilt (R&R at 10-12), the fact that some evidence points to the petitioner's guilt does not preclude consideration of the constitutional errors under *Schlup* and *House*. As in *House*, the actual innocence exception applies where "some aspects of the state's evidence . . . still support an inference of guilt." 547 U.S. at 554; *see also Majoy v. Roe*, 296 F.3d 770, 777 (9th Cir. 2002) (petitioner could pass though actual innocence gateway despite the fact that evidence remained that pointed to his guilt); *Carriger v. Stewart*, 132 F.3d 463, 478 (9th Cir. 1997) (en banc) (petitioner met *Schlup* standard where evidence pointed as directly to another person as to petitioner).

In *House*, the Supreme Court explained that the focus of the actual innocence inquiry under *Schlup* is different from the insufficiency of the evidence standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979):

> [A]s the *Schlup* decision explains, the gateway actual-innocence standard is by no means equivalent to the standard of *Jackson v. Virginia*. When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict. Because a *Schlup* claim involves evidence the trial jury did not have before it, the inquiry requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record. If new evidence so

---

[2] During oral argument in *House*, Justice Roberts explained his version of the standard as, "If we look at this and say, 'maybe a jury would come out 10 to 2 in favor of acquittal . . . then you lose." Transcript of Oral Argument at 22, *House*, 547 U.S. 518 (No. 04-8990)

**Page 5   OBJECTIONS TO REPORT AND RECOMMENDATION**

>requires, this may include consideration of the credibility of the witnesses presented at trial.

*House*, 547 U.S. at 538-539 (citations omitted).  Under *Jackson*, the question of whether a jury "could" find guilt inquires into the jury's power: either the jury has the power as a matter of law or it does not.  Under the actual innocence standard, in contrast, the habeas court must consider what reasonable jurors are likely to do.  *Schlup*, 513 U.S. at 330.  Thus, although under *Jackson* the mere existence of sufficient evidence to convict would be determinative of the petitioner's claim, *Schlup* explicitly rejects that approach.  *Buskirk v. Baldwin*, 265 F. 3d 1080, 1084-85 (9th Cir. 2001) (recognizing the distinction between the *Schlup* standard and the insufficiency of the evidence standard).

Similarly, there is a distinction between free-standing innocence claims under *Herrera v. Collins*, 506 U.S. 390 (1993), and actual innocence under *Schlup*.  The threshold for making out the "miscarriage of justice" exception is lower than the "extraordinarily high" threshold for free-standing claims of innocence.  *House*, 547 U.S. at 537-38.  Because a petitioner claiming to fall within the *Schlup* actual innocence exception asserts constitutional error at trial, his conviction does not deserve the same degree of respect as one concededly free of constitutional taint and "need carry less of a burden" than one who claims only innocence.  *Carriger*, 132 F.3d at 477-478 (citing *Schlup*, 513 U.S. at 316).  *Schlup* instructs that "it is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses, rather the standard requires the district court to make a

probabilistic determination about what a reasonable, properly instructed jury would do." 513 U.S. at 329.

Accordingly, to pass through the *Schlup* gateway, a petitioner need only present evidence of innocence strong enough "that a court cannot have confidence in the outcome of the trial." *Schlup*, 513 U.S. at 316. In this case, newly presented evidence compounded concerns about the trial that results in a lack of confidence in the outcome of the trial sufficient to pass through the *Schlup* gateway.

### B. "Innocence" Under *Schlup* Incorporates The Reasonable Doubt Standard For Innocence.

The Magistrate Judge, citing to *Bousley v. United States*, 523 U.S. 614, 623 (1998), and *Sawyer v. Whitely*, 505 U.S. 333, 339 (1992), found that the petitioner offered evidence of legal insufficiency rather than of factual innocence and, thus, failed to pass through the *Schlup* actual innocence gateway (R&R at 7). However, under *Schlup,* which was left undisturbed by *Bousley*, "the line between innocence and guilt is drawn with reference to a reasonable doubt." *Schlup*, 513 U.S. at 328 (citing *In re Winship,* 397 U.S. 358 (1970)). The *Schlup* court elaborated on this:

> Indeed, even in *Sawyer*, with its emphasis on eligibility for the death penalty, the Court did not stray from the understanding that the eligibility determination must be made with reference to reasonable doubt. Thus, whether a court is assessing eligibility for the death penalty under *Sawyer*, or is deciding whether a petitioner has made the requisite showing of innocence under *Carrier*, the analysis must incorporate the understanding that proof beyond a reasonable doubt marks the legal boundary between guilt and innocence.

*Schlup*, 513 U.S. at 328.  Accordingly, "the *Schlup* inquiry, we repeat, requires a holstic judgment about 'all the evidence' and its likely effect on reasonable jurors applying the reasonable-doubt standard." *House*, 547 U.S. at 539.  *De novo* review is necessary because the Magistrate Judge did not assess the likely affect of the total evidence on reasonable jurors applying a reasonable doubt standard.

### C. The Magistrate Judge Did Not Give Sufficient Weight To The Newly Presented Impeachment Evidence.

Contrary to the Magistrate Judge's conclusion that the petitioner did not offer the type of new evidence contemplated by *Schlup* because impeachment evidence is a "step removed from evidence pertaining to the crime itself" (R&R at 9), the newly presented impeachment evidence, which undermined the child's testimony and that of Officer Fowler, is precisely the type of evidence that this Court may and should consider.

A petitioner can pass through the *Schlup* gateway by presenting evidence that significantly undermines or impeaches the credibility of witnesses presented at trial, if all the evidence, including new evidence, makes it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. "The newly presented evidence may indeed call into question the credibility of the witnesses presented at trial." *Schlup*, 513 U.S. at 330.  The Supreme Court in *House* expressly noted that the habeas court was not limited to exculpatory scientific evidence or exculpatory reliable witness statements.  547 U.S. at 537.  In fact, the Ninth Circuit held where the new impeachment evidence "casts a vast shadow of doubt over the reliability" of the conviction

by undercutting the reliability of the witnesses, that alone is enough to pass through the *Schlup* gateway because newly presented impeachment evidence would have raised sufficient reasonable doubt for acquittal. *Carriger*, 132 F.3d at 482.

Here, the Magistrate Judge misconstrued the importance of impeachment evidence by concluding that only evidence of innocence such as DNA or witness recantations should be considered. As the *Carriger* court observed, impeachment evidence may make the difference between conviction and acquittal. 132 F.3d at 482; *see also Napue v. Illinois*, 360 U.S. 264, 269 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence . . . ."). Accordingly, assessment of the reliability or unreliability of the testimony at trial, in light of newly presented impeachment evidence, is an essential component of the *Schlup* inquiry: "[T]he prisoner must 'show a fair probability that, in light of all the evidence, including that alleged to have been illegally admitted (but *with due regard to any unreliability of it*) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial, the trier of the facts would have entertained a reasonable doubt of his guilt.'" *Schlup*, 513 U.S. at 327 (quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U.Chi.L.Rev. 142, 160 (1970) (emphasis added)).

In this case, the testimony of the child witness is troubling, as the Magistrate Judge noted. Had the jury been presented with expert testimony challenging the reliability of the child's testimony, coupled with expert evidence that would impeach Fowler by demonstrating that he improperly interviewed the child by asking questions of both Nachand

**Page 9   OBJECTIONS TO REPORT AND RECOMMENDATION**

and Lee and incorrectly used anatomically correct dolls, it is more probable than not that the jury would not have found guilt beyond a reasonable doubt.

> **D.   The Evidence About The Petitioner's Brother Is Relevant Not To The Mistaken Identity Between The Victim's Confessed Abuser And The Petitioner, But Between The Petitioner And His Brother.**

The Magistrate Judge discounted newly presented reliable evidence that the petitioner's brother looks like him except for tattoos, is a convicted child sex abuser, and had access to the victim during the relevant period. Instead, the Magistrate Judge focused on Robert Nachand (R&R at 11-12). Evidence about Larry Lee is significant not to the mistaken identity defense presented at trial – whether the child was confusing Nachand and the petitioner. Rather, it is relevant to the potential mistaken identity between the petitioner and his brother, assuming the child was molested by two men, Nachand and one who resembles the petitioner.

The newly presented reliable evidence regarding Larry Lee's appearance, background and access to the victim, considered in light of the child's confused testimony, coupled with expert evidence undermining the credibility of the child and the investigating officer, meets the *Schlup* gateway standard. It is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. This Court should consider the merits of the constitutional claims.

> **E.   The Rules Governing Evidentiary Hearings Under §2254(e)(2) Do Not Apply To Evidentiary Hearings In A *Schlup* Gateway Inquiry.**

Case 1:02-cv-00300-CL     Document 77     Filed 03/25/08     Page 11 of 12

Although the Magistrate Judge found that the newly presented evidence was reliable and concluded that "the petitioner's claims can be resolved on the record before the Court" (R&R at 13), the petitioner still should be allowed to develop *Schlup* actual innocence in the context of an evidentiary hearing. In *House*, the Supreme Court stated that, in evaluating a request for an evidentiary hearing, the court's task is to make "a probabilistic determination about what reasonable, properly instructed jurors would do" in light of all of the evidence. 547 U.S. at 357-58. *House* expressly held that the standard of review in the context of *Schlup* is not governed by 28 U.S.C. §2254(e)(2):

> Neither provision [in §2254(e)(2)] address the type of petition at issue here – a first federal habeas petition seeking consideration of defaulted claims based on a showing of actual innocence. Thus, the standard of review in these provisions is inapplicable.

*House*, 547 U.S. at 539. This makes sense because the plain language of 28 U.S.C. §2254(e)(2)(B) describes a far different task than that undertaken in determining whether a petitioner can pass through the *Schlup* gateway. First, rather than a "more likely than not" standard, §2254(e)(2) applies a clear and convincing standard, a standard expressly rejected by *Schlup*. Second, the focus of the inquiry is on the constitutional error, not actual innocence: " . . . but for the constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. §2254(e)(2)(B).

The petitioner's request for an evidentiary hearing to establish that he meets the miscarriage of justice exception to warrant consideration of his constitutional claims was

denied based on application of the rules that only apply once a petitioner has passed through the *Schlup* gateway.

**Conclusion**

The scant and unreliable evidence of guilt presented at trial troubled the Magistrate Judge. Those concerns were compounded by the reliable evidence submitted in this proceeding. These doubts easily meet the threshold required under *Schlup*. Had the Magistrate Judge applied the correct *Schlup* standard, it is more likely than not, given the totality of the evidence, that any reasonable juror would have reasonable doubt as to Mr. Lee's guilt. This Court should consider the merits of Mr. Lee's constitutional claims.

Respectfully submitted this 25th day of March, 2008.

    /s/ Stephen R. Sady
Stephen R. Sady
Attorney for Petitioner

On the brief:

Lynn Deffebach
Research and Writing Attorney