HARDY MYERS
Attorney General
JACQUELINE SADKER  #06497
Assistant Attorney General
SUMMER R. GLEASON  #921127
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4794
Email:  Jacqueline.Sadker@doj.state.or.us
        Summer.R.Gleason@doj.state.or.us

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| RICHARD R. LEE, | Case No. 02-300-CL |
| Petitioner, | RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR HABEAS CORPUS |
| v. | |
| ROBERT O. LAMPERT, | |
| Respondent. | |

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND ...................................................................................................2

III.  DISCUSSION.....................................................................................................11

    A.   The State-Court Decisions Denying Relief On Petitioner's Claims Are
        Neither "Contrary To" Nor "Unreasonable Applications Of" Supreme
        Court Precedent .............................................................................................11

        1.   Applicable Law on Deference to State-Court Decisions..........................11

        2.   Analysis in This Case ..............................................................................13

                i.   The Trial Court Did Not Err in Denying Petitioner's OEC
                    412 Motion .........................................................................................13

                ii.  Petitioner Was Not Denied Effective Assistance of Trial or
                    Appellate Counsel...............................................................................17

                      a.   Appellate counsel was not ineffective for filing a
                          *Balfour* brief (Ground 2, Claim 1)......................................20

                      b.   Trial counsel was not ineffective for failing to
                        secure the testimony of an expert (Ground 1,
                        Claim 1) ................................................................................22

                      c.   Trial counsel was not ineffective for calling Daniel
                        Hendricks as a witness  (Ground 1 – claim not listed
                      in the petition).....................................................................27

    B.   Petitioner's Remaining Claims Fail to Establish That He Is In Custody In
        Violation of the Constitution or Laws or Treaties of the United States ................28

        1.   Applicable Law On the Standard of Review for Claims Not
            Presented to the Oregon State Courts.......................................................28

        2.   Analysis in this case ................................................................................29

                i.   The introduction of the hearsay statements of the victim
                    through Detective Fowler did not violate petitioner's rights
                    under the Confrontation Clause.  (Ground 5) ................................29

                  ii.  There was sufficient evidence to convict petitioner ......................32

IV.   CONCLUSION ...................................................................................................34

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

# TABLE OF AUTHORITIES

## Cases

*Baldwin v. Reese*, 541 U.S. 27 (2004) ............................................................................29

*Bell v. Cone*, 535 U.S. 685 (2002) .................................................................................19

*Brazzel v. Washington*, 491 F.3d 976 (9th Cir. 2007) ....................................................28

*Brecht v. Abrahamson*, 507 U.S. 619 (1993) ..................................................................16

*Bremner v. Charles*, 123 Or App 95 (1993) ...................................................................21

*California v. Green*, 399 U.S. 149 (1970) .......................................................................30

*Chapman v. California*, 386 U.S. 18 (1967) ...................................................................21

*Cooper-Smith v. Palmateer*, 397 F.3d 1236 (9th Cir. 2005) .........................................23

*Crawford v. Washington*, 541 U.S. 36 (2004) ................................................................29

*Davis v. Alaska*, 415 U.S. 308 (1974) ............................................................................14

*Delaware v. Fensterer*, 474 U.S. 15 (1985) ...................................................................14

*Delaware v. Van Arsdall*, 475 U.S. 673 (1986) .............................................................16

*Delgado v. Lewis*, 223 F.3d. 976 (9th Cir. 2000) ..........................................................12

*DePetris v. Kuykendall*, 239 F.3d 1057 (9th Cir. 2001) ................................................16

*Doty v. County of Lassen*, 37 F.3d 540 (9th Cir. 1994) .................................................10

*Fowler v. Sacramento County Sheriff's Dep't*, 421 F.3d 1027 (9th Cir. 2005) .............16

*Grant v. Demskie*, 75 F. Supp. 2d 201 (S.D.N.Y. 1999) ...............................................15

*Hayes v. Woodford*, 301 F.3d 1054 (9th Cir. 2002) ......................................................20

*Idaho v. Wright*, 497 U.S. 805 (1990) ...........................................................................31

*In re Winship*, 397 U.S. 358 (1970) ...............................................................................32

*Jackson v. Virginia*, 443 U.S. 307 (1979) ................................................................32, 33

*Jones v. Barnes*, 463 U.S. 745 (1983) ...........................................................................19

*Juan H. v. Allen*, 408 F.3d 1262 (9th Cir. 2005) ..........................................................32

*Lajoie v. Thompson*, 217 F.3d 663 (9th Cir. 2000) ..................................................16, 17

*Lambert v. Palmateer*, 182 Or. App. 130 (2002) ..........................................................22

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

*Latzer v. Abrams*, 602 F. Supp. 1314 (1985)................................................................15

*Lee v. Hill*, CV 05-004439M (filed March 9, 2005).....................................................29

*Lee v. Palmateer*, 174 Or. App. 320 (2001) ...............................................................9

*Lee v. Thompson,* Marion County Circuit Court Case No. 98C11671 ...........................9

*Lockyer v. Andrade*, 538 U.S. 63 (2003) ..............................................................11, 12

*Lowery v. Collins*, 996 F.2d 770 (5th Cir. 1993).........................................................30

*Michigan v. Lucas*, 500 U.S. 145 (1991)....................................................................14

*Miller v. Keeney*, 882 F.2d 1428 (9th Cir. 1989)..............................................18, 19, 20

*Paulino v. Harrison*, 542 F.3d 692 (9th Cir. 2008) ....................................................28

*Pirtle v. Morgan*, 313 F.3d 1160 (9th Cir. 2002) .......................................................28

*Raley v. Ylst*, 470 F.3d 792 (9th Cir. Cal. 2006)..........................................................22

*Renderos v. Ryan,* 469 F.3d 788 (9th Cir. 2006) ........................................................10

*Rice v. Collins*, 546 U.S. 333 (2006)..........................................................................12

*Robinson v. Newland*, 2001 U.S. Dist. LEXIS 22104 (N.D. Cal. Dec. 28, 2001).........................33

*Rock v. Arkansas*, 483 U.S. 44 (1987)........................................................................14

*Sarausad v. Porter*, 479 F.3d 671 (9th Cir. 2007).......................................................32

*Schlup v. Delo*, 513 U.S. 298 (1995)..............................................................1, 23, 29

*Smith v. Illinois*, 390 U.S. 129 (1968) ........................................................................14

*Smith v. Murray*, 477 U.S. 527 (1986) ........................................................................19

*Smith v. Robbins*, 528 U.S. 259 (2000) .................................................................18, 19

*State v. Gibson*, 338 Or 560 (2005), *cert. denied*, 546 U.S. 1044 ................................21

*State v. Lamb*, 161 Or. App. 66 (1999).......................................................................30

*State v. Lee*, 141 Or. App. 597 (1996) .........................................................................9

*State v. Lotches*, 331 Or. 455 (2000) ..........................................................................21

*Strickland v. Washington*, 466 U.S. 668 (1984) .....................................................passim

*Williams v. Taylor*, 529 U.S. 362 (2000)................................................................18, 23

*Woodford v. Visciotti*, 537 U.S. 19 (2002) ..................................................................19

Page iii

**Statutes**

ORS 40.460(18)(b) .......................................................................................30

**United States Code**

28 U.S.C. § 2244(d) ........................................................................................1

28 U.S.C. § 2248 ...........................................................................................10

28 U.S.C. § 2254 ...........................................................................1, 2, 11, 28

28 U.S.C. § 2254(a) ......................................................................................29

28 U.S.C. § 2254(d) ....................................................................11, 12, 19, 28

28 U.S.C. § 2254(d)(1) .................................................................................32

28 U.S.C. § 2254(e)(1) ..................................................................................11

28 U.S.C. § 2254(e)(2) ..................................................................................23

**Other Authorities**

OEC 412 .................................................................................................passim

OEC 412(2)(b)(C) ...........................................................................................2

OEC 803(18)(b) ......................................................................................30, 31

Laird C. Kirkpatrick, *Oregon Evidence* § 803.18b(3)(a) (5th ed 2007) .................................30, 31

Robert P. Mosteller, *Crawford v. Washington*: Encouraging and Ensuring the Confrontation of Witnesses, 39 U. Rich. L. Rev. 511 (2005) ....................................30

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4794

## I.   **INTRODUCTION**

Petitioner brings this habeas corpus proceeding under 28 U.S.C. § 2254, challenging his convictions for two counts of first-degree Sexual Abuse and two counts of first-degree Sodomy. Petitioner alleges numerous grounds for relief, all of which are time-bared under 28 U.S.C. § 2244(d).  In addition, many of his claims are also procedurally defaulted.  Finally, his underlying claims do not provide a basis for relief under section 2254.

Both petitioner and respondent provided extensive argument regarding the excusal of petitioner's defaults and untimeliness.  Magistrate Judge Clarke found that petitioner's untimeliness should not be excused because petitioner had not shown that he is "actually innocent," as that term is used in *Schlup v. Delo*, 513 U.S. 298 (1995).  Petitioner objected to the findings of Judge Clarke.  This court held an evidentiary hearing on October 30, 2008, at which both sides offered evidence regarding petitioner's allegation of actual innocence.  At the evidentiary hearing, this Court indicated that it was declining to adopt the findings and recommendations of Judge Clarke.

The court requested the parties provide additional briefing on the "second phase" of the case, which is whether petitioner's underlying claims provide a basis for relief under 28 U.S.C. §2254.[1]  This response addresses the claims in petitioner's First Amended Petition For Writ of Habeas Corpus Under 28 U.S.C. § 2254 ("Petition").  It references the arguments presented in both petitioner's Memorandum of Law In Support of Petitioner For Habeas Corpus ("Pet.

---

[1] Pursuant to this Court's order, respondent will not address any additional argument or evidence regarding the "actual innocence" exception to procedural default and untimeliness.  However, respondent continues to assert that this court should adopt the Findings and Recommendations of Judge Clarke regarding:  1) the untimeliness of petitioner's petition; 2) petitioner's failure to make a showing of actual innocence; and 3) petitioner's arguments regarding the statute of limitations "trap" in Oregon.  (Report and Recommendation, 3-14).  In addition, respondent objects to Judge Clarke's finding that the actual innocence exception can excuse an untimely petition.  (*Id.* at 5).  Respondent relies on his previously-submitted arguments in support of these positions.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

Memo.") and Supplemental Memorandum of Law In Support of Petition for Writ of Habeas Corpus ("Pet. Sup. Memo.").

In sum, petitioner's arguments lack merit and do not establish a basis for relief under section 2254. The claims he fairly presented to the Oregon state courts were denied in decisions that were not "contrary to" or "an unreasonable application of" United States Supreme Court precedent. Petitioner's remaining claims fail to demonstrate that he is in custody in violation of the Constitution or laws or treaties of the United States. Accordingly, this Court should deny petitioner's request for relief.

## II.    **BACKGROUND**

Petitioner is in the custody of the Oregon Department of Corrections (ODOC) pursuant to the Judgment of Conviction and Sentence, dated June 26, 1995, from Linn County Circuit Court Case No. 94071507. (Respondent's Exhibit ("Resp. Ex.") 101). Petitioner is in custody because a jury found that he had he sexually abused and sodomized a five-year-old boy over the course of approximately five months in 1994 and 1995. (Resp. Ex. 115).

Petitioner was indicted on two counts of first-degree Sexual Abuse and two counts of first-degree Sodomy. (*Id.*). Prior to trial, petitioner's trial counsel moved *in limine* to admit evidence that the victim in petitioner's case had reported that he was sexual abused by another individual, Robert Nachand, during the same time period and in a similar manner, and that Nachand had pleaded guilty to charges stemming from that abuse. (Resp. Ex. 124). Counsel requested admission of the evidence under OEC 412(2)(b)(C), which is Oregon's Rape Shield Law.[2] The court denied this motion. (Resp. Exs. 125, 126).[3]

---

[2] OEC 412(2)(b)(C) provides, in relevant part, that "evidence of a victim's past sexual behavior other than reputation or opinion evidence is also not admissible, unless such evidence . . . is otherwise constitutionally required to be admitted."

[3] The judge who heard the OEC 412 motion did not preside over the trial.

Page 2 -    RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR HABEAS CORPUS
JS/1169093

Petitioner proceeded to jury trial on April 17, 2005. The state called the five-year old victim as its first witness. (Resp. Ex. 115, Tr. 69). One of the first questions asked of the victim was whether he knew who petitioner was. The victim replied, "Robert, I mean Richard." (*Id.* at 71). Later, using pictures as an aid, the victim testified that petitioner had touched him on his penis and his bottom. (*Id.* at 77, 79). He would not say that petitioner touched him with anything other than his hand, or that he had his pants off. (*Id.* at 79). The victim was then shown pictures of anatomically correct dolls that he had used with the investigating officer to demonstrate how petitioner sodomized him. (*Id.* at 80; 111-20). He was questioned:

> [Prosecutor:] [D]o you remember these pictures?
>
> [Victim:] Yeah.
>
> [Prosecutor:] And is that you in the picture?
>
> [Victim:] Yeah.
>
> [Prosecutor:] . . . What were you doing in those pictures?
>
> [Victim:] I'm showing them what they were doing.
>
> [Prosecutor:] Besides you in the picture, what else is in that picture?
>
> [Victim:] Richard.
>
> \*\*\*
>
> [Prosecutor:] Did you tell Detective Fowler what was happening in those pictures?
>
> [Victim:] Yeah. Cause he had the paper dolls.
>
> [Prosecutor:] Do you want to tell us what's happening in the pictures?
>
> [Victim:] No.

(*Id.* at 81). The victim would not confirm whether he had seen petitioner's penis. (*Id.*).

On cross-examination, counsel asked the victim about his earlier statement regarding Nachand:

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

[Trial counsel:]  Okay, and when [the prosecutor] first asked you, you know, who is this that was sitting here, you said – do you remember you said "Robert – I mean Richard."

[Victim:]  Yeah.

[Trial counsel:]  So you're getting those two people mixed up, huh, Robert and Richard?

[Victim:]  Yeah.

[Trial counsel:]  And these things that you've talked about, about being touched, that was by Robert?

[Victim:]  Yeah.

(*Id.* at 84).

Immediately after this exchange, the prosecutor asked to be heard outside the presence of the jury and witnesses and argued that counsel's cross-examination was improper under the court's earlier ruling.  (*Id.* at 84-85).  The trial court disagreed with the prosecutor, stating

At this particular point I think it's okay to talk to this witness on cross-examination as to whether this defendant did these acts or whether it was someone else or no one else.  So I don't think anything's happened so far that violates the prior ruling by. . . Judge Frost.  And [defense counsel is] certainly open to elicit from this witness whether this is [the] guy.  Now, I know in direct examination, [the prosecution] said, "does this person…" and she pointed to him, and he did identify the defendant, but that doesn't stop you from inquiring as to that issue.  And so far, I think that's. . . the extend of what you've been doing.  If we get into this[, "]was there another person at another time["], then we need to talk about that in dept, because there has been a  ruling on the 412 motion.

(*Id.* at 87-88).  Counsel then continued his examination:

[Trial counsel:]  Now, these things that you've described…

[Victim:]  Yeah.

[Trial counsel:]  [Y]ou said that's Robert?

[Victim:]  Yeah.

[Trial counsel:]  Now, you said he had his shirt off; is that right?

[Victim:]  Yeah.

[Trial counsel:]  [B]ut he had his pants on?

[Victim:]  Yeah.

Page 4 -    RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR HABEAS CORPUS
JS/1169093

[Trial counsel:] When he had his shirt off, did you . . . notice anything about his body?

[Victim:] No.

[Trial counsel:] Did you see anything on his arms or his stomach or anything?

[Victim:] No. No.

[Trial counsel:] Nothing? Nothing you can tell us about?

[Victim:] No.

[Trial counsel:] . . .Robert had his shirt off. Was that in the kitchen?

[Victim:] I don't know where?

[Trial counsel:] You're not sure where it was?

[Victim:] No.

(*Id.* at 89).

On re-direct, the prosecutor asked the victim the following questions:

[Prosecutor:] Okay. Mathew, is this Robert[?]

[Victim:] No.

[Prosecutor:] Who is this?

[Victim:] Richard.

[Prosecutor:] All right. And . . . is this the person that did those things that you've drawn for us today?

[Victim:] Yeah.

(*Id.* at 90). On re-cross, trial counsel attempted to establish that it was Robert Nachand who had touched him, but the victim maintained that it was petitioner. (*Id.* at 91).

Cheryl Lee, petitioner's former sister-in-law testified for the prosecution. (*Id.* at 93). Ms. Lee testified that she baby-sat for the victim during September, October, November and December of 1993, and that petitioner would come over to her apartment occasionally during this time period. (*Id.* at 93-95). During this period, both the victim and petitioner had been in

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

her apartment at the same time on more than one occasion. (*Id.* at 95-97). She left the victim

with petitioner on three occasions. (*Id.* at 101). The victim reported to Ms. Lee that petitioner

had touched his "pee-pee" and that when she confronted petitioner about it, he said it must have

occurred when he and the victim were wrestling while Ms. Lee was at the store. (*Id.* at 97-99).

On cross-examination, counsel elicited testimony that Nachand had also been in the apartment

with petitioner and the victim on the three occasions Ms. Lee had left the apartment. (*Id.* at 105).

　　The state then called Detective John Fowler from the Albany Police Department. (*Id.* at

109-10). Detective Fowler testified regarding his contacts with the victim, during which the

victim told Detective Fowler, through the use of anatomically-correct dolls, that petitioner had

sexually abused him in various ways. (*Id.* at 111-20). There was testimony to support both

counts of Sexual Abuse: Detective Fowler said that the victim took "the adult male's. . . hand

and placed it on the child doll's penis, and [the victim] also took that adult doll's hand and

placed it on the buttocks area." (Resp. Ex. 116 at 117). There was also testimony to support both

counts of Sodomy: Detective Fowler testified that, "[t]he victim "put the adult...male doll's

mouth to the penis of the child doll" and the prosecution introduced a photograph of the placed

dolls into evidence. (*Id.*). The victim told Detective Fowler that petitioner "had put his pee-pee"

in the victim's mouth and the victim again demonstrated this with the dolls. (*Id.* at 119).

　　Detective Fowler also testified that the victim "had told me that [petitioner] had also

touched his [the victim's bottom][4] with petitioner's mouth." (*Id.* at 118). Detective Fowler then

testified that the victim told him that petitioner "had put his pee-pee in" the victim's mouth and

that petitioner had "rubbed his . . . pee-pee on [the victim's bottom]." (*Id.* at 119). When asked

whether the contact was on the outside or inside of the bottom, the victim replied that it was on

the outside. (*Id.* at 119-20). The victim also spoke of petitioner rubbing his bottom with a cup or

---

[4] Previously, the victim had indicated that the term "bottom" meant both buttocks and anus. (*Id.* at 116).

Page 6 -　RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
　　　　　OF PETITION FOR HABEAS CORPUS
　　　　　JS/1169093

toy. (*Id.* at 120). Finally, the victim indicated that petitioner had ejaculated during the abuse. (*Id.*). There was no clear indication as to how many times this abuse occurred. (*Id.* at 122).

On cross-examination, counsel elicited testimony from the detective that during his contacts with the victim, he had asked the victim questions regarding both petitioner and Nachand:

> [Trial Counsel:]  I think your testimony is then he said at one point that water came out.  Water came out; is that right?
>
> [Fowler:]  That was in response to a question by me, words to the effect of, "when these things happened, did anything happen to Richard's pee-pee?"
>
> [Trial Counsel:]  Richard's pee-pee or Robert's pee-pee?
>
> [Fowler:]  Correct.
>
> [Trial Counsel:]  So you were asking questions about both of these men?

(*Id.* at 131).

Following this testimony, the prosecutor objected and counsel and the court discussed the issue again outside the presence of the jury.  (Resp. Ex. 109, Tr. 131).  Counsel explained to the trial court he was in a "bind" regarding cross-examination of the detective because when the detective had interviewed the victim regarding petitioner's abuse, he had had the victim describe what petitioner had done and what Robert Nachand had done to him.  (*Id.* at 133-34).  The court allowed counsel to cross-examine the detective as to whether the victim's reports of abuse referred to Robert Nachand or petitioner, stating:

> Given the circumstances in that it was an interview involving, apparently, the questioning about two people, and limited to the scope, I'm not going to tip this 412 ruling.  But it seems to me that as to this particular interview, there could be an issue as to this victim being confused, not prior sexual conduct per se, but as to this particular interview, saying Richard when he meant Robert or vice versa.
>
> ***
>
> [I]t's a sticky area, but I don't really see how in fairness I can exclude cross-examination of this particular witness with respect to Robert when he was using the same dolls at the same time with possible respect to both of these people. . . . I'm not opening the door to Robert's sexual abuse of this boy, I just think with the purposes of cross-examination that we can't just leave it out there hanging.

Page 7 -   RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
OF PETITION FOR HABEAS CORPUS
JS/1169093

(*Id.* at 137-39). Detective Fowler testified that he had questioned the victim regarding the abuse by both petitioner and Nachand. (*Id.* at 141-43). Detective Fowler stated that some of the victim's responses could have referred to either abuser. (*Id.* at 143).

Detective Strong was the last witness for the prosecution. (*Id.* at 154). He had interviewed petitioner after the allegations of abuse had surfaced. (*Id.*). Petitioner admitted to having minimal contact with the victim but denied having ever baby-sat him. (*Id.* at 155-56). He denied wrestling with "any five-year old." (*Id.* at 157). He denied that he had been confronted about the allegations of abuse. (*Id.*). Finally, he denied that he abused the victim. (*Id.*).

Daniel Hendricks, the victim's father, was the only witness called by the defense. (Resp. Ex. 117, Tr. 160). Trial counsel questioned Mr. Hendricks regarding the victim's reports of abuse by Nachand. (*Id.* at 162). Trial counsel questioned Mr. Hendricks about the later reports of sexual abuse by petitioner:

> [Trial Counsel]: So [the Nachand case] started in March, and had been going on for at least three months when you called the Police Department about [petitioner], is that right?
>
> [Mr. Hendricks]: Yes.
>
> [Trial Counsel]: [S]o your testimony is that your son said something to you about [petitioner]?
>
> [Mr. Hendricks]: Yes, he did.
>
> [Trial Counsel]: Would you say that it was specific or general?
>
> [Mr. Hendricks]: Very specific.
>
> [Trial Counsel]: Very specific that . . . [petitioner] touched him?
>
> [Mr. Hendricks]: He did more that touch him. My son told me that he had been sodomized by him. Not using the word "sodomy," but he did show me that, "yes, daddy, he stuck it up inside of me."

(*Id.* at 164). Mr. Hendricks then testified that the victim had not said anything about petitioner prior to this report. (*Id.* at 165). Finally, on re-direct, Mr. Hendricks testified that he had

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

questioned the victim about petitioner and that the victim "did not volunteer any information."
(*Id.* at 174-75).

At the close of trial, the defense offered and the court received the sentencing order
pertaining to Nachand's convictions. (*Id.* at 179). The defense also displayed petitioner's tattoos
for the jury. (*Id.* at 178).

During her closing statement, almost the first issue addressed by the prosecutor was the
evidence regarding Nachand. (*Id.* at 190-91). Defense counsel's theory of the case during
closing argument was that this was a case of mistaken identity. (*Id.* at 201-11). He relied
heavily on the testimony elicited regarding Nachand. (*Id.*)

Petitioner was convicted on all counts. (*Id.* at 227). Petitioner was sentenced to
concurrent 28-month terms of imprisonment on the Sexual Abuse convictions and consecutive
110-month and 60-month terms of imprisonment on the Sodomy convictions, totaling 170
months' imprisonment. (*Id.* at 258-61).

Petitioner directly appealed the convictions and filed a *Balfour* brief. (Resp. Ex. 118).
The Oregon Court of Appeals affirmed without opinion. (Resp. Ex. 103); *State v. Lee*, 141 Or.
App. 597 (1996). Petitioner did not seek review by the Oregon Supreme Court. Petitioner filed
an amended petition for post-conviction relief in *Lee v. Thompson,* Marion County Circuit Court
Case No. 98C11671, but the court denied relief. (Resp. Exs. 119, 130-132). The Oregon Court
of Appeals affirmed without opinion, *Lee v. Palmateer*, 174 Or. App. 320 (2001), and the
Oregon Supreme Court denied review. (Resp. Ex. 136); 332 Or. 430 (2001).

In this federal habeas corpus proceeding, petitioner alleges the following grounds for
relief:

Ground 1: Ineffective assistance of counsel in violation of the 6th Amendment to
the United States Constitution in the following respects:

1.   Trial counsel refused to secure the services of an expert witness in the area
     of child coaching.
2.   Trial counsel failed to object to the State's limitation and interference with
     defense efforts.

Page 9 -   RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
           OF PETITION FOR HABEAS CORPUS
           JS/1169093

3.    Trial counsel failed to move to recuse trial judge based on bias.
4.    Trial counsel refused to withdraw as counsel.

Ground 2:  Ineffective assistance of appellate counsel in violation of the 6th and
14th Amendment to the United [sic] States Constitution in the following respect:

1.    Appellate counsel failed to present trial court error by filing a *Balfour*
      brief.

Ground 3:  Violation of due process rights secured by the 14th Amendment.

1.    Trial court abused his discretion by allowing the State to present
      inadmissible inflammatory evidence without the proper pre-admission
      evidentiary hearing.
2.    Denial of a fair trial by several biased and patently unfair and unfounded
      rulings.
3.    Trial court allowed the State to wrongfully limit the defense effort at the
      behest of the State prosecutor.

Ground 4:  Insufficiency of the evidence and actual innocence in violation of the
14th Amendment.

1.    The State's entire case rested on the credibility of a child with a long
      history of prior abuse and other hearsay representations made by the State
      and its witnesses who provided clearly and obviously tailored testimony to
      obtain a conviction.

Ground 5:  The petitioner was denied his right to confrontation in violation of his
Sixth Amendment rights under the Untied State Constitution and *Crawford v.
Washington*, 124 S. Ct. 1384 (2004), when and unavailable witness's testimonial
out-of-court statements were admitted into evidence although the petitioner had
no prior opportunity to cross-examine the witness.

(First Amended Petition, 3-4).[5]  These claims are incorrect and should be dismissed.

---

[5] Petitioner has only briefed certain grounds raised in his petition.  (Pet. Memo. 23-49, Pet. Supp
Memo. 1-20).  Because petitioner has submitted no argument on the remaining grounds, this
Court should deny relief on those claims.  *See* 28 U.S.C. § 2248 ("[t]he allegations of a return to
the writ of habeas corpus or of an answer to an order to show cause in a habeas proceeding, if not
traversed, shall be accepted as true except to the extent that the judge finds from the evidence
that they are not true"); *see also See Renderos v. Ryan,* 469 F.3d 788, 800 (9th Cir. 2006)
(counsel for petitioner waived claims in petition for writ of federal habeas corpus, where counsel
did not attempt to set forth the legal standards for such claims or attempt to meet them); *Doty v.
County of Lassen,* 37 F.3d 540, 548 (9th Cir. 1994) ("failure to brief [an] issue waives [the
appellant's] right to appeal" it).

Page 10 -  RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
          OF PETITION FOR HABEAS CORPUS
          JS/1169093

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

### III.    DISCUSSION

**A.    The State-Court Decisions Denying Relief On Petitioner's Claims Are Neither "Contrary To" Nor "Unreasonable Applications Of" Supreme Court Precedent**

The claims that petitioner fairly presented to the Oregon state courts are entitled to deference under 28 U.S.C. § 2254 regardless of whether he is "actually innocent."[6]  In petitioner's case, the Oregon state courts denied relief on all of the claims that were fairly presented to them.  These state-court decisions are neither "contrary to," nor "unreasonable applications of," clearly established law as determined by United States Supreme Court. Accordingly, under 28 U.S.C. § 2254, as modified by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), relief on petitioner's claims should be denied.  The specific state-court findings and decisions will be discussed *infra* in discussion section A(2) of this memorandum.  The following section focuses generally on the deference federal courts must give state-court factual findings and decisions under the AEDPA.

**1.    Applicable Law on Deference to State-Court Decisions.**

In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the Court reiterated that the "AEDPA circumscribes a federal habeas court's review of a state-court decision." *Id.* at 70.  Thus, under 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct . . . [,]" unless the petitioner rebuts "the presumption of correctness by clear and convincing evidence."  Furthermore, under 28 U.S.C. § 2254(d), habeas relief may not be granted on any claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was *contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States*;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[6] 28 U.S.C. § 2254(d), which addresses deference to state-court decisions, applies "with respect to any claim that was adjudicated on the merits in State court proceedings."  As discussed *infra* in section B, section 2254(d) does not apply to claims that were not adjudicated on the merits.

Page 11 -  RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR HABEAS CORPUS
JS/1169093

*Id.* (emphasis added).

Regarding the "contrary to" clause, *Andrade* reiterated that:

a state court decision is 'contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.'

*Andrade*, 538 U.S. at 73 (citations omitted).

Regarding the "unreasonable application of" clause, the Court in *Andrade* reiterated that:

[u]nder the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. The 'unreasonable application' clause requires the state court decision to be *more than incorrect or erroneous*. The state court's application of clearly established law must be *objectively unreasonable*.

*Andrade*, 538 U.S. at 75 (quotation marks and citations omitted, emphasis added). *Andrade*

further clarified that under § 2254(d) a state-court's decision is not necessarily "objectively

unreasonable" even if it is "clear error." Rather, the Court held that:

*It is not enough that a federal habeas court, in its 'independent review of the legal question' is left with a "firm conviction" that the state court was "erroneous.[.]" We have held precisely the opposite*: Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable.

*Andrade*, 538 U.S. at 75-76 (quotation marks and citations omitted, emphasis added).[7]

In sum, even incorrect state-court decisions must be given deference, unless they are

"contrary to" or "objectively unreasonable" applications of a Supreme Court holding. *Andrade*,

538 U.S. at 70-75. This is true even if the state courts do not fully articulate their reasoning.

*Delgado v. Lewis*, 223 F.3d. 976, 982 (9th Cir. 2000) ("federal habeas review is not *de novo*

when the state court does not supply reasoning for its decision, but an independent review of the

---

[7] In addition, the Supreme Court recently cautioned that in deciding whether a state-court decision is objectively unreasonable, federal courts should not rely on "debatable inferences to set aside" the conclusions reached by the state courts. *Rice v. Collins*, 546 U.S. 333, 342 (2006).

Page 12 -   RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
            OF PETITION FOR HABEAS CORPUS
            JS/1169093

record is required to determine whether the state court clearly erred in its application of the controlling federal law.").

    **2.**    **Analysis in This Case**

        **i.**    **The Trial Court Did Not Err in Denying Petitioner's OEC 412 Motion**

In ground 3 of his petition, petitioner alleges a "[d]enial of a fair trial by several biased and patently unfair and unfounded rulings" and that the "[t]rial court allowed the State to wrongfully limit the defense effort at the behest of the State prosecutor." (Petition at 3). Petitioner clarifies in his memoranda that he alleges that the trial court violated his Due Process and confrontation rights by "apply[ing] an unconstitutional procedural bar to prevent him from offering evidence central to his defense of mistaken identity."[8]  This claim is incorrect.

Petitioner raised this issue at trial by filing a Motion to Admit Evidence Under OEC 412. (Resp. Ex. 124).  He claimed that "it is critical to [petitioner's] case that he be able to call and cross-examine witnesses as to this evidence of mistaken identification.  Such evidence is constitutionally required to be admitted so that [petitioner's] confrontation rights and his right to present exculpatory material will be protected." (*Id.* at 2).  He submitted an offer of proof and the court held a pre-trial hearing to determine the admissibility of the OEC 412 evidence. (Resp. Ex. 115, Tr. 2).  The court denied petitioner's motion, stating:

> Based upon the offer of proof and the testimony, the facts relating to the identification in the instant case are quite different from the fact in *Latzer v. Abrams*, 602 F. Supp. 1314 (1985) and other cases cited.  For example, the victims in *Latzer* were introduced to the accused by an alias name at an unfamiliar place on a particular day.  The next day the victims departed from the accused and the place where they met, and did not meet again.
>
> Here the testimony establishes that both the accused person were known to the victim over a period of at least weeks, at a place familiar to the child victim.

---

[8] It is unclear whether petitioner is assigning error to the trial court's denial of his OEC 412 motion *and* to appellate counsel's failure to brief this issue on appeal.  His memoranda suggest that he is only assigning error to appellate counsel's failure to brief the issue. (Pet. Memo. 37). Regardless, respondent will address both claims since they are interrelated and because this Court has inquired into trial court's decision to deny the OEC 412 motion.

Page 13 -  RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR HABEAS CORPUS
        JS/1169093

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

Further, a witness, Cheryl, can give evidence that [petitioner] was in the presence of the victim at that place at the time alleged. Finally, [petitioner] has made statements to Cheryl, which according to her, reported statements tend to show that the victim and [petitioner] knew each other and relevant conduct did occur.

This court recognizes that the provisions of OEC 412 must give precedence to the [petitioner's] right to cross examine on the issue of identification of the [petitioner] and possible faulty memory. However in this case, this Court finds the threshold proof is insufficient to establish that the Constitutional right brought into play here.

(Resp. Ex. 125).

This decision was not contrary to nor an unreasonable application of the U.S. Supreme Court precedent and is entitled to deference.

"Cross-examination is the principle means by which the believability of a witness and the truth of his testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316 (1974). Nonetheless, "the right to present relevant testimony is not without limitation. The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (quoting *Rock v. Arkansas*, 483 U.S. 44, 55 (1987)). The limitations placed on a defendant's right to present relevant testimony, however, cannot be "'arbitrary nor disproportionate to the purposes they are designed to serve.'" *Rock*, 483 U.S. at 55. The Confrontation Clause "guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Accordingly, a Confrontation Clause violation occurs only when restrictions on cross-examination work "effectively to emasculate the right of cross-examination itself." *Smith v. Illinois*, 390 U.S. 129, 131 (1968).

The U.S. Supreme Court has stated that rape shield statutes "represent[] a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy." *Michigan v. Lucas*, 500 U.S. 145, 149-150 (1991). However, state and federal courts have struggled with the constitutional issues raised when rape shield laws prevent a defendant from presenting evidence that would otherwise be

Page 14 -   RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
            OF PETITION FOR HABEAS CORPUS
            JS/1169093

relevant. *See Grant v. Demskie*, 75 F. Supp. 2d 201 (S.D.N.Y. 1999) (providing a thorough analysis of the cases addressing this issue). In 1994, when petitioner's conviction became final, there were many disparate views regarding the circumstances when cross-examination is constitutionally required. *See id* at 212-118 (discussing cross-examination to explain previous physical injuries and knowledge of sexual matters by child victims). And the particular issue in this case—whether and under what circumstances there was a right to cross-examine regarding misidentification—was far from settled. In *Latzer*, which both the court and petitioner relied upon in regard to the OEC 412 motion, the court stated that "the cases do not conclusively establish whether the defendant has a similar right to cross-examine witnesses with respect to possible sources of mistaken identification (i.e., faulty memory.)" *Latzer*, 602 F. Supp. at 1319.

The trial court was reasonable in stating that petitioner had failed to establish that he had a right to cross-examine the victim regarding past abuse that outweighed the state's legitimate interest in protecting the victim's privacy through the rape-shield law. There was no indication or implication the victim harbored any bias towards petitioner or had an improper motive in testifying. And the evidence of the specific acts of sexual abuse committed by Robert, although may have provided some evidence of the child's knowledge of some of the acts the victim claimed Richard committed, the victim described additional acts committed only by Richard. Moreover, the specifics of the prior acts of sexual abuse do not demonstrate that the victim had a motive to make up sexual offenses involving Richard. In fact, no evidence support that his child victim was in any way motivated to make up these allegation. Further, the offer of proof contained no evidence that the victim was mistaken other than to show that victim suffered similar acts of abuse during the same time. (Resp. Ex. 124). Thus, petitioner's only argument was that it could have been Richard, Robert, or both Richard and Robert that abused him, and that triggered petitioner's confrontation clause rights.

Based on petitioner's offer of proof, the trial court correctly distinguished *Latzer*, where there was clearly only one abuser, and the present case, where there was no indication that the

Page 15 - RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
OF PETITION FOR HABEAS CORPUS
JS/1169093

victim was not abused twice. The probative value of the evidence was clearly less significant in this case and petitioner's interests in the evidence were outweighed by the victim's interest in not having the fact that he was abused twice used against him. Thus, the court did not unreasonably apply the requirements of the Confrontation clause to the facts of this case, especially considering the lack of clearly settled Supreme Court precedent on this issue.

Even if this court determines that the denial of the OEC 412 motion was an unreasonable application of United States Supreme Court precedent, any error was harmless. In a federal habeas proceeding, constitutional error is harmless unless it had "'substantial and injurious effect or influence in determining the jury's verdict.'" *DePetris v. Kuykendall*, 239 F.3d 1057, 1061 (9th Cir. 2001) (*quoting Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993). In determining whether petitioner was denied his Sixth Amendment right to cross-examination, this court "must . . . decide whether that error was harmless 'assuming that the damaging potential of the [precluded] cross-examination [would otherwise have been] fully realized.'" *Fowler v. Sacramento County Sheriff's Dep't*, 421 F.3d 1027, 1041 (9th Cir. 2005) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

This harmless error analysis ordinarily involves a consideration of numerous factors pertaining to the facts of the case and the particularities of the cross-examination.[9] Such an analysis is unnecessary in this case, however, because petitioner was allowed to fully cross-examine the victim regarding Nachand. Petitioner cannot identify any evidence that he was unable to present to the jury because of the court's ruling on the OEC 412 motion.[10] Petitioner

---

[9] When making this determination of harmless error under *Van Arsdall*, the relevant factors are: "(1) the importance of the witness' testimony in the prosecution's case, (2) whether the testimony was cumulative, (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, (4) the extent of cross-examination otherwise permitted, and, of course, (5) the overall strength of the prosecution's case. *Fowler*, 421 F.3d at 1041-1042 (9th Cir. 2005) (*citing Van Arsdall*, 475 U.S. at 684)

[10] This presents the most obvious distinction from *Lajoie v. Thompson*, 217 F.3d 663, 671 (9th Cir. 2000), relied upon heavily by petitioner. In *LaJoie*, the evidence of prior sexual abuse did not come in at all, despite the jury receiving medical evidence of sexual abuse of the 8-year-old victim. The jury was offered no other explanation for the hymenal scarring or the sexual

Page 16 -  RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR HABEAS CORPUS
JS/1169093

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

asserts that "cross-examination of [the victim] would have put [his] knowledge of sex acts in

context." (Pet. Memo. 45). The record does not support this conclusion, however.  The trial

judge allowed counsel to cross the victim "as to whether this defendant did these acts or whether

it was someone else or no one else." (Resp. Ex. 115, Tr. 88).  Petitioner also asserts that "this

decision kept the theory of defense from even being mentioned until the end of trial," which is

presumably a reference to counsel's inability to mention Nachand in the opening statement.  (*Id.*)

This has nothing to do with the evidence presented to the jury.  Finally, petitioner asserts "that

counsel would have been more likely to obtain an expert to put these facts in context." (*Id.*).

Again, whether counsel obtained an expert is not relevant to the evidence presented to the jury

and, as explained below, an expert would not have been helpful.  Moreover, petitioner offers

nothing to explain why the 412 ruling has any bearing on whether petitioner would have

obtained an expert.  Because the evidence came in, petitioner cannot demonstrate that the ruling

on the OEC 412 motion had a substantial or injurious effect on the jury's verdict.[11]

### ii.    Petitioner Was Not Denied Effective Assistance of Trial or Appellate Counsel

In grounds one and two of his petition, petitioner alleges that his Sixth Amendment right

to effective assistance of counsel was violated because (1) appellate counsel failed to assign error

to the court's denial of the 412 motion; (2) trial counsel failed to consult with or call and expert;

---

knowledge of the child, other than the alleged abuse by the defendant.  Moreover, (and likely for
these reasons) the trial court in *LaJoie* had determined that the evidence was likely *admissible*
under Oregon's rape shield law, but excluded it because the defense violated OEC 412's 15-day
notice requirement.  *Id.* at 666.  The Ninth Circuit concluded that this blanket prohibition
violated LaJoie's Sixth Amendment rights, while repeatedly stressing that its decision was based
on the interests in "LaJoie's particular case." *Id.* at 670.  In the instant case, the jury received the
evidence of the prior abuse, and thus the concerns at issue in *LaJoie* are not implicated here.

[11] The denial of the of the 412 motion followed by the subsequent presentation of the same
evidence could have helped petitioner's case.  The jury very likely could have perceived that
"damaging evidence" was elicited on cross-examination through the shrewd questioning of the
defense attorney.  Or, perhaps their perception was that this information was withheld by the
prosecution and decreased the credibility or the prosecutor.

Page 17 -  RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
          OF PETITION FOR HABEAS CORPUS
          JS/1169093

and (3) trial counsel called a witness who provided testimony regarding the abuse.[12]  Relief on

these claims should be denied because the state-court decisions denying relief on them were

neither "contrary to," nor an "unreasonable applications of," the ineffective-counsel standard

outlined in *Strickland v. Washington*, 466 U.S. 668 (1984), which is what petitioner must prove

to obtain relief on ineffective-counsel claims in this proceeding.

In *Williams v. Taylor*, 529 U.S. 362 (2000), the Court held that under the AEDPA,

*Strickland v. Washington*, is the clearly established federal law that governs ineffective-counsel

claims. *Williams*, 529 U.S. at 391.  In order to prove an ineffective-counsel claim under

*Strickland*, however, a petitioner must generally prove two things:

> First, the defendant must show that counsel's performance was deficient.  This
> requires showing that counsel made errors so serious that counsel was not
> functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.
> Second, the defendant must show that the deficient performance prejudiced the
> defense.  This requires a showing that counsel's errors were so serious as to
> deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.

Thus, under *Strickland*, a petitioner claiming ineffective assistance of trial counsel must

show (1) that counsel's representation fell below an objective standard of reasonableness, and (2)

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceedings would have been different.  *Strickland*, 466 U.S. at 688, 694.

Ineffective-appellate-counsel claims are also reviewed under the *Strickland* standard.

*Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Miller v. Keeney*, 882 F.2d 1428 (9th Cir. 1989).

Accordingly, to prevail on an ineffective assistance of appellate counsel claim, petitioner must

show that appellate counsel's performance fell below an objective standard of reasonableness,

and that there is a reasonable probability that, but for counsel's unprofessional errors, petitioner

---

[12] As outlined below, these claims were raised in petitioner's Petition for Post-conviction Relief.
An additional ineffective counsel claim—that trial counsel failed to object to hearsay statements
—was raised for the first time in this proceeding and is subject to a different standard of review.
*See infra* at 25.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

would have prevailed on appeal. *Smith*, 528 U.S. at 285; *Miller*, 882 F.2d at 1434. It is not

unreasonable or unprofessional for appellate counsel to not raise on appeal every colorable or

nonfrivolous issue. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983) (nothing in the Constitution

requires "judges to second-guess reasonable professional judgments and impose on appointed

counsel a duty to raise every 'colorable' claim suggested by a client."). Rather, the "process of

'winnowing out weaker claims on appeal and focusing on' those more likely to prevail, far from

being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v.

Murray*, 477 U.S. 527, 536 (1986).

In *Bell v. Cone*, 535 U.S. 685 (2002), the Court reiterated that when considering

ineffective-counsel claims:

> judicial scrutiny of a counsel's performance must be highly deferential and that
> every effort [must] be made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's challenged conduct, and to evaluate the
> conduct from counsel's perspective at the time. Thus, even when a court is
> presented with an ineffective-assistance claim not subject to § 2254(d)(1)
> deference, a defendant must overcome the presumption that, under the
> circumstances, the challenged action might be considered sound trial strategy.

*Bell*, 535 U.S. at 698 (citations and quotation marks omitted). *Bell* also cautioned that for a

habeas petitioner to succeed under the AEDPA:

> he must do more than show that he would have satisfied *Strickland's* test if his
> claim were being analyzed in the first instance, because under § 2254(d)(1), it is
> not enough to convince a federal habeas court that, in its independent judgment,
> the state-court decision applied *Strickland* incorrectly. Rather, he must show that
> the [state court] applied *Strickland* to the facts of his case in an objectively
> unreasonable manner.

*Bell*, 535 U.S. at 698-99 (citations quotation marks omitted). Furthermore, when considering

ineffective-counsel claims under 28 U.S.C. § 2254(d), "it is the habeas applicant's burden to

show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable

manner." *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam). Under these standards,

petitioner cannot demonstrate that he is entitled to relief.

Page 19 -  RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
OF PETITION FOR HABEAS CORPUS
JS/1169093

a.     Appellate counsel was not ineffective for filing a *Balfour* brief (Ground 2, Claim 1)

In ground two, claim one, petitioner alleges that appellate counsel performed deficiently by "[failing] to present trial court error by filing a *Balfour* brief." (Petition 3). In his memoranda, he clarifies that counsel should have assigned error to the OEC 412 motion. (Pet. Memo. 37-45). This claim is similar to the ineffective-counsel claim petitioner raised in ground (2) of his PCR petition. (Resp. Ex. 119, 4). In denying relief on this claim, however, the PCR trial court found that "because the evidence at issue in counsel's OEC 412 motion was eventually admitted at petitioner's trial, appellate counsel reasonably did not assign error [to] the court's initial ruling excluding the evidence." (Resp. Ex. 131, 7). These factual findings, and the ultimate decision to deny relief on this claim, are entitled to deference.

As stated, petitioner's OEC 412 motion was properly denied by the trial court. Since the denial was proper, petitioner cannot prove either prong of *Strickland. See Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989) ("Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason - because she declined to raise a weak issue."); *Hayes v. Woodford*, 301 F.3d 1054, 1086 (9th Cir. 2002) ("whether appellate counsel acted unreasonably in failing to raise a particular issue is often intertwined with the merits of the issue and whether the defendant would have prevailed.").

Appellate counsel's performance was not deficient for an additional reason: because it would have been futile to assign error to the court's failure to admit evidence when that evidence was admitted. Appellate counsel stated:

> Although the trial court denied the pretrial OEC 412 motion regarding evidence of Robert Nachand, the door was later opened to this evidence. A defense witness also offered evidence about Nachand. Nachand's conviction record was a defense exhibit.
>
> After reviewing the transcript, I discussed the case with at least one other attorney in my office. We believed I could not assign error to the denial of the pretrial motion, even if denial was improper. Because the evidence was later received. I

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

filed a *Balfour* brief because it was my opinion that there were no meritorious appellate issues in the case.

(Resp. Ex. 129, 1-2).

Appellate counsel's determination was correct. In *State v. Lotches*, 331 Or. 455 (2000), the Oregon Supreme Court summarized the tests for harmless error under the OEC, the Oregon Constitution and the United States Constitution:

> Under the [OEC], evidentiary error is not presumed to be prejudicial. OEC 103(1). A defendant in a criminal case assigning error to the exclusion or admission of evidence must establish that the error was not harmless. [T]he Oregon Constitution, requires appellate courts to affirm a conviction, notwithstanding any evidentiary error, if there is substantial and convincing evidence of guilt and little likelihood that the error affected the verdict. *State v. Van Hooser*, 266 Or 19, 23-26 (1973). . . Under the United States Constitution, the court must determine whether the error is harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24 (1967).

*Id.* at 487.[13]  In addition, the Oregon Court of Appeals, applying the Oregon Evidence Code, has held that "[t]he exclusion of evidence will not constitute reversible error if the jury had been given substantially the same information as was contained in the offer of proof." *Bremner v. Charles*, 123 Or App 95, 103 (1993).

Petitioner cannot meet this standard for the same reason the court's decision to deny the OEC 412 motion was harmless under *Brecht*: because all the evidence relating to Nachand was admitted at trial and presented to the jury.[14]  Although the standard under *Lotches* is more

---

[13] Petitioner incorrectly asserts that *Chapman* requires that the burden is on the state to prove beyond a reasonable doubt that the error was harmless. (Pet. Memo. 45). This is not a requirement of *Chapman* nor the rule in Oregon. *Chapman*, 386 U.S. at 23 ("before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."); *State v. Gibson*, 338 Or 560, 576 (2005), *cert. denied*, 546 U.S. 1044 (criminal defendant who assigns error to the exclusion or admission of evidence bears burden of establishing that error was not harmless). However, the Supreme Court noted in *Chapman* that there was "little or no difference" between the current rule and "requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman*, 386 U.S. at 23.

[14] This basic, undeniable fact prevents petitioner from meeting three separate burdens in this case, which are that:  (1) trial court's alleged error had a substantial and injurious effect on the jury under *Brecht*; (2) appellate counsel was ineffective for failing to brief an issue that was allegedly meritorious because it would have been futile under *Lotches*; and (3) petitioner was prejudiced by appellate counsel's failure to brief this issue under *Strickland*.

Page 21 -  RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR HABEAS CORPUS
JS/1169093

onerous than *Brecht*, discussed earlier, petitioner cannot demonstrate that there was any substantive evidence that the jury was unable to consider. The Oregon Court of Appeals would have clearly found that any error in the Court's denial of the OEC 412 motion was harmless beyond a reasonable doubt. The same evidence presented in the offer of proof was eventually put before the jury. (Resp. Ex. 124). Thus, petitioner cannot show that appellate counsel was ineffective.

b.    <u>Trial counsel was not ineffective for failing to secure the testimony of an expert (Ground 1, Claim 1)</u>

In ground one, claim one, petitioner alleges that counsel performed deficiently by "[refusing] to secure the services of an expert witness in the area of child coaching." (Petition at 3). This claim is similar to the ineffective-counsel claim petitioner raised in ground (k) of his PCR petition. (Resp. Ex. 199, 4). In denying relief on this claim, the PCR trial court found that "[p]etitioner did not submit evidence to demonstrate that counsel's decision not to call an expert witness to testify regarding witnesses who have been 'coached' was a failure to exercise reasonable professional skill and judgment." (Resp. Ex. 131, 6). These factual findings, and the ultimate decision to deny relief on this claim are entitled to deference.

The PCR court correctly determined that petitioner had, as a matter of law, failed to meet his burden regarding prejudice because he presented no evidence as to what an expert would have said had she testified at trial. *Raley v. Ylst*, 470 F.3d 792, 802 (9th Cir. Cal. 2006) ("in order to prevail on a claim of prejudice, Petitioner must demonstrate that counsel's failure to call expert witnesses rendered the results of his trial unreliable or fundamentally unfair."); *Lambert v. Palmateer*, 182 Or. App. 130, 137 (2002) (denying relief because "[p]etitioner put forth no evidence in the post-conviction proceeding that the result of the trial would have been different had trial counsel found an expert to testify."). The decision of the trial court was clearly correct in this regard.

Page 22 -  RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
OF PETITION FOR HABEAS CORPUS
JS/1169093

In his supplemental memorandum, petitioner attempts to address his lack of evidence by relying on the testimony of Maggie Bruck, which was admitted to support petitioner's claim of actual innocence. (Pet. Supp. Memo. 7-9). The use of this expert testimony to support petitioner's substantive claims is an improper attempt to expand the record. If a federal habeas petitioner "failed to develop the factual basis of a claim" in State court, the federal court shall not hold an evidentiary hearing so that the petitioner may further develop the claim unless the petitioner shows that the claim relies on (1) a new and retroactive rule of constitutional law, or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence[.]"). 28 U.S.C. § 2254(e)(2); *Williams v. Taylor*, 529 U.S. 420 (2000). A petitioner has "failed to develop the factual basis of a claim in State court proceedings" if he has not "made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court." *Williams*, 529 U.S. at 436. The requirements of 28 U.S.C. § 2254(e)(2) also apply to decisions regarding expansion of the record under Rule 7. *See also Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241 (9th Cir. 2005).

The testimony and declaration of Dr. Bruck, admitted to support petitioner's claim of actual innocence, should not be considered to support petitioner's substantive claims because they could have been presented during the PCR proceedings with the exercise of due diligence. Petitioner cannot establish that he made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court or that his claim relies on a new and retroactive rule of constitutional law. He should not be allowed to circumvent rules which apply equally to all habeas petitioners solely because he has been allowed to introduce evidence pertaining to his allegation of actual innocence. Moreover, had respondent been apprised that the evidentiary hearing would be an opportunity to present evidence as to the merits of petitioners' habeas petition, as opposed to actual innocence under *Schlup*, respondent would

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

have presented an expert to combat petitioner's expert's testimony in support of his ineffective assistance of counsel claim.[15]

Even if this Court were to consider Bruck's testimony, petitioner's claim still fails. First, Bruck's testimony indicates that her opinion was based upon current research and not the practice of interviewing children and the use of anatomically correct dolls at the time of petitioner's trial. *See, e.g.*, October 30, 2008 Hearing Transcript at 19. Trial counsel could not possibly be deficient for failing to present testimony that was not even available at the time of petitioner's trial.

Even relying upon Bruck's testimony, petitioner has not shown that the failure to call an expert witness prejudiced the defense. Petitioner offers Bruck's testimony as evidence of what a defense expert may have testified during petitioner's trial. However, Bruck's testimony would have been substantially impeached based upon her bias. She testified under cross-examination that she was paid $375 and hour to review the records and testify on behalf of petitioner. *Id.* at 9. In total she earned between $6,000 and $7,000 dollars for her testimony. *Id.* Moreover, Bruck is clearly a defense expert. Although, she refused to give a percentage of the time she testified on behalf of the defense, she agreed it was "most of [the time]." *Id.* at 9-10. Additionally, the prosecutor would have argued that the jury should not accept Bruck's testimony because it is not based upon any real life experiences. Certainly, medical doctors rely on statements like the victim made in order to diagnose medical conditions. And must jurors are parents or interact with children. The prosecutor would have pointed out that in "real life" you do not have to follow any strict guidelines to determine whether obtain a truthful statement by a child. Dr. Bruck, however, has never interviewed a child. October 30, 2008 Hearing Transcript at 7. The prosecutor would certainly have pointed out how Bruck would not even find a child's testimony

---

[15] Should the court expand the record to consider the affidavit for this purpose, respondent requests the opportunity to present expert testimony to disprove the claim.

Page 24 -   RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
            OF PETITION FOR HABEAS CORPUS
            JS/1169093

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

reliable if the child was *not affected* by any suggestive interviewing techniques unless her

interviewing rubric had been strictly followed. *Id.* at 19-21.

Moreover, the content of her opinion revealed her bias, and the prosecution would have

so proven. Bruck indicated that she had only reviewed the materials provided to her by

petitioner. She had not interviewed any of the witnesses, and so her testimony was based upon a

review of the record. *Id.* at 9. However, throughout her declaration Bruck made assumptions

and statements about the motives and behaviors of the witnesses that were not supported by the

written record she reviewed. And in each and every circumstance, her assumptions were clearly

biased in favor of the petitioner. For example, Bruck's assumptions that Mr. Hendricks used

emotional of physical force against the victim to make disclosures against petitioner was

unreasonable and not supported by the evidence. Bruck Decl. at 7. Furthermore, she does not

and cannot substantiate any motive, bias or reason Mr. Hendricks would have to prompt his child

to make up such disclosures.

Bruck next challenges the reliability of Cheryll Lee Lewis' testimony. She assumed that

Lewis changed to testimony over the period of months to avoid prosecution herself. *Id.* at 11.

However, this assumption is not based upon the record in this case, and there is no evidence that

Lewis even suspected that she could be prosecuted. More likely the reason that Lewis

minimized her initial statement to police was that petitioner was waiting in the lobby of the

police station while she made the reports. (Pet. Ex. T, p. 4). Moreover, the statement that Lewis

gave to the investigator for petitioner's trial counsel was the most damaging to petitioner. In that

statement she confirmed that the victim had disclosed to sexual abuse to her and that petitioner

had been alone with the victim just prior to the time the victim disclosed the sexual abuse.

(Resp. Ex. 128).

Had Bruck been called to testify, the state would certainly have impeached her testimony

with other expert opinions that the use of anatomically correct dolls was not improper in this

case. For example the state may have called Dr. Kathleen Faller to testify that the use of

Page 25 -  RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
OF PETITION FOR HABEAS CORPUS
JS/1169093

anatomically correct dolls was widely accepted at the time, and still is accepted within guidelines. (Resp. Ex. 144). Petitioner recognizes Faller's expertise and even submitted an article authored by Faller to support his claim. (*See* Pet. Ex. X). Faller criticizes researchers like Bruck for their attacks on the use of anatomically correct dolls. In Faller's expert opinion, "[b]ased upon a review of the literature, the research does not support the fear that anatomical dolls will elicit false allegation of sexual abuse ***." (Resp. Ex. 144). Faller notes that fear of attacks like the one mounted by Bruck have caused many professionals to abandon the use of the dolls. *Id.* And that such attacks are "but one of a series of maneuvers to undermine efforts to uncover sexual abuse. In the guise of getting to the truth, these maneuvers aim at obscuring the truth – the widespread prevalence of sexual abuse of children." *Id.* Faller's opinion is supported by many professional organizations who have established guidelines for the use of anatomical dolls for interviewing children regarding sexual abuse. *Id.* at 11.

Had Bruck-like testimony been presented at trial, the state would have certainly called an expert in the area of forensic interviewing of children to rebut Bruck's testimony regarding the unreliability of the victim's testimony. The expert would have testified, as Bruck did, that children report sexual abuse to someone they trust. October 30, 2008 Hearing Tr. at 12. In the instant case, the victim first reported the abuse to his babysitter, Cheryll Lee Lewis. The expert would have likely testified that Lewis' response to the victim's report, that she became angry, likely discouraged the victim from reporting the abuse further. (*See* Pet. Ex. T, p. 4). The state would have argued that Lewis informing Richard of the victim's disclosure but not taking any action would have provided Richard the opportunity to threaten or otherwise coerce the victim's silence. Moreover, such negative reaction to the victim's initial report about petitioner could explain why it took so long for him to report again. An expert would also testify that Child Sexual Abuse is a medical diagnosis made by family pediatricians and forensic medical clinics routinely. An expert could testify that pediatricians rely on statements like the statements the

Page 26 -   RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
OF PETITION FOR HABEAS CORPUS
JS/1169093

victim made to diagnosis Child Sexual Abuse every day, and that such statement can be reliably

obtained.

Ultimately, even Bruck testified that she could only call the evidence into question, [a]nd

at that point it's the jury's duty." *Id.* at 18. At trial her testimony would have been impeached

by a number of sources, and would not likely have had not have swayed any jurors. The jurors

are likely to have given more weight to a medical doctor who has experience interviewing

children and their own experiences obtaining truthful statements than the ivory tower rubric that

Bruck demands before a child's statement could be deemed reliable. Thus, even if trial counsel

was deficient for failing to call an expert, petitioner has not demonstrated that the failure would

have a reasonable probability of affecting the outcome of the trial. *Strickland*, 466 U.S. at 687.

> c. <u>Trial counsel was not ineffective for calling Daniel
> Hendricks as a witness  (Ground 1 – claim not listed in the
> petition)</u>

In petitioner's memorandum, he alleges that counsel performed deficiently by "calling

[the victim's father] Daniel Hendricks and eliciting hearsay testimony about what [the victim]

had told him." (Pet. Memo. 29). This claim is similar to the ineffective-counsel claim petitioner

raised in ground (g) of his PCR petition. (Resp. Ex. 199, 3). In denying relief on this claim,

however, the PCR trial court found:

> Counsel called the victim's father, Dan Hendricks, as a witness because he
> believed that Mr. Hendricks had some pertinent information that might help
> petitioner's case. The transcript supports counsel's belief. Counsel elicited from
> Mr. Hend[r]icks testimony regarding the victim's allegation against Richard
> Nachand. Counsel also elicited testimony that the victim had reported petitioner's
> sexual abuse only after his father had specifically . . . asked the victim if petitioner
> had sexually abused him. Counsel's decision to call this witness was reasonable.

(Resp. Ex. 131, 6). These factual findings, and the ultimate decision to deny relief on this claim,

are entitled to deference.

The testimony of Mr. Hendricks was useful to the defense. Although Mr. Hendricks

offered the hearsay statements of the victim in regard to one act of oral sodomy (Resp. Ex. Tr.

117), the remainder of his testimony was favorable to the defense. The admission of oral

Page 27 -  RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
OF PETITION FOR HABEAS CORPUS
JS/1169093

sodomy evidence was useful to the defense, because it was consistent with the defense theory of

the case – that the victim was mistaken about who sexually offended him. So, the testimony

regarding the victim making similar allegations against Nachand and petitioner was beneficial to

the defense. Mr. Hendricks admitted that the victim had not said anything about petitioner until

he was questioned by him, which tended to discredit the victim's statements. Further, Mr.

Hendricks's statements regarding anal sodomy and allegations of contemporaneous abuse by

petitioner and Nachand had little relevance the prosecution's case. Trial counsel used these

statements in closing to discredit Mr. Hendricks, stating that "it was almost like his son was in

the middle of some type of perverted orgy." (*Id.* at 205). In sum, Mr. Hendricks provided no

new favorable evidence for the prosecution and provided testimony that trial counsel used to cast

doubt on the veracity of the victim's allegations. Trial counsel was therefore not ineffective for

calling him as a witness and the PCR court's decision was not contrary to federal law.

**B.    Petitioner's Remaining Claims Fail to Establish That He Is In Custody In Violation of the Constitution or Laws or Treaties of the United States**

The claims that petitioner did not "fairly present" to the Oregon state courts do not

demonstrate that petitioner is in custody in violation of the Constitution or laws or treaties of the

United States, as required by 28 U.S.C. § 2254. Petitioner's specific claims will be addressed in

section B(2) of this memorandum. The following section focuses generally on the standard of

review for claims presented for the first time in Federal court.

**1.    Applicable Law On the Standard of Review for Claims Not Presented to the Oregon State Courts**

28 U.S.C. § 2254(d) applies "to any claim that was adjudicated on the merits in State

court proceedings." However, this court reviews *de novo* any claims that were no presented to or

adjudicated in the Oregon state court proceedings. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th

Cir. 2002); *Paulino v. Harrison*, 542 F.3d 692, 698 (9th Cir. 2008) (noting that "because no state

court ever reached the issue before us, we are not bound by AEDPA's strictures."); *Brazzel v.*

*Washington*, 491 F.3d 976, 983 (9th Cir. 2007) ("If the state court has not addressed a

Page 28 -   RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR HABEAS CORPUS
JS/1169093

constitutional issue at all, then our review is *de novo*."). In this case, petitioner has included

claims that were not presented to any state court at any level of review.[16] These claims,

addressed below, are reviewed *de novo* to determine whether petitioner is "in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

> **2. Analysis in this case**
>
> > i. The introduction of the hearsay statements of the victim through
> > Detective Fowler did not violate petitioner's rights under the
> > Confrontation Clause. (Ground 5)

In ground five of his petition, petitioner alleges that counsel performed deficiently

because he "failed to object to the admission of hearsay that constituted the only state's evidence

of the most serious charges against [him]." (Pet. Supp. Memo, 23). This claim was not

addressed in petitioner's petition for post-conviction relief.[17] Petitioner now alleges that the

admission of the hearsay statements of the victim through the testimony of Detective Fowler

violated his rights under the Confrontation Clause of the Sixth Amendment and that counsel was

ineffective for failing to raise this objection. This claim is incorrect and does not provide a basis

for relief.

Trial counsel had no basis to object to the introduction of the victim's statements through

Officer Fowler, either based on the Oregon Evidence Code or the Constitution. The state

---

[16] Ordinarily, such claims would be procedurally defaulted if a petitioner failed to fairly present them to the Oregon state courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Respondent concedes that if this court finds that petitioner is "actually innocent," his procedural defaults would be excused and this court could hear the merits of his claims. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) (under the fundamental miscarriage of justice exception to the procedural default doctrine, a credible claim of actual innocence requires the petitioner "to support his allegations of constitutional error with new reliable evidence . . .."). Respondent notes that if petitioner is not found to be "actually innocent," many of his claims should be dismissed as untimely and procedurally defaulted.

[17] Petitioner filed a second state post-conviction petition raising claims based on *Crawford v. Washington*, 541 U.S. 36 (2004) after he initiated this Habeas Corpus proceeding. *Lee v. Hill*, CV 05-004439M (filed March 9, 2005). Petitioner's claims based on *Crawford* are distinct from the ineffective assistance of counsel claims raised in petitioner's memoranda of law and the underlying issues in these claims were not presented to any state court.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

introduced the hearsay statements of the victim pursuant to the 1993 version of OEC 803(18)(b), which states: "A statement made by a child victim, which statement concerns an act of sexual conduct performed with or on the child by another, is not excluded . . . if the child . . . testifies at the proceeding and is subject to cross-examination." ORS 40.460(18)(b) (1993). There is no indication that trial counsel objected to the introduction of these statements on the ground that they violated the Confrontation Clause.

As previously discussed, the victim then testified and was subject to cross-examination. Therefore, the introduction of the victim's hearsay statements did not violate the confrontation clause. The Supreme Court has long held that the admission of out-of-court statements do not create a confrontation problem when the victim testifies and is subject to cross. *California v. Green*, 399 U.S. 149, 162 (1970) ("where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem."). The wide latitude given the state to admit hearsay under OEC 803(18)(b) when the victim testifies is therefore permissible.[18]  In addition, "the Sixth Amendment is complied with when the prosecution calls the witness first, and then the defendant, for tactical or other reasons, voluntarily limits or chooses to forego cross-examination." *Lowery v. Collins*, 996 F.2d 770, 772 (5th Cir. 1993). Thus, petitioner had an opportunity for cross and counsel cannot be ineffective for failing to object to later hearsay statements.

Despite the clarity of the authority on this issue, petitioner presents two theories as to how the admission of the victim's statements through Detective Fowler could violate the

---

[18] In commenting on the current version of OEC 803(18)(b), Professor Kirkpatrick has stated that "if the victim testifies at the proceeding and is subject to cross-examination, the exception presents relatively few difficulties." Laird C. Kirkpatrick, *Oregon Evidence* § 803.18b(3)(a) (5th ed 2007). *See also* Robert P. Mosteller, *Crawford v. Washington*: Encouraging and Ensuring the Confrontation of Witnesses, 39 U. Rich. L. Rev. 511, 591-94 (2005) (discussing the operation and constitutionality of OEC 803(18)(b) when the victim testifies and is subject to cross); *State v. Lamb*, 161 Or. App. 66 (1999) (interpreting OEC 803(18)(b).

Page 30 -  RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PETITION FOR HABEAS CORPUS
JS/1169093

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

Confrontation Clause. He first asserts that "the Confrontation Clause requires that the state elicit the damaging testimony—here the sodomy evidence—from the witness while under oath in a face-to-face confrontation." (Pet. Memo. 24). This is an incorrect statement of the law, since there are many instances where hearsay statements of child victims can be used to obtain a conviction. *See Idaho v. Wright*, 497 U.S. 805, 821 (1990) (noting cases where hearsay statements of abuse victims are sufficient without direct testimony). Second, petitioner claims that "[w]hen the prosecutor fails to question the child about the substance of the hearsay statement, excuses the witness, and then introduces the hearsay statement, the child, in essence, because unavailable for cross-examination." (Pet. Memo. 26). Again, this is an unsupported statement and it fails to take into account the fact that petitioner was allowed to cross the victim "as to whether this defendant did these acts or whether it was someone else or no one else." (Resp. Ex. 115, Tr. 87).

Petitioner also asserts in his supplemental memoranda that trial counsel was ineffective for failing to object to the admission of the hearsay statements based on the alleged failure of the prosecution to comply with the requirements of the Oregon Evidence Code. (Pet. Supp. Memo. 5-6). Petitioner incorrectly asserts that 15-days pretrial notice was not given, which is not supported by the record. (Ex 117, Tr. 256).[19] He also incorrectly asserts that a pretrial hearing was required. A pretrial hearing is only required to determine the unavailability and reliability of the hearsay declarant which, as previously stated, were not required to be proven in this case. OEC 803(18)(b); Kirkpatrick, *Oregon Evidence* § 803.18b(3)(c-d). Petitioner therefore cannot show that trial counsel had any basis to object to the hearsay statements of the victim offered through Detective Fowler, either based on the confrontation clause or the Oregon Evidence Code.

---

[19] To provide a complete record in regard to this issue, respondent provides Exhibit 143 (State's Notice; Child Victim). This was not submitted in any state court proceeding because petitioner raises this claim for the first time on habeas review. Exhibit 143 indicates that notice was given on March 30, 1995, which was more than 15 days prior to trial.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

ii.    There was sufficient evidence to convict petitioner
        (Ground 4)

In ground four of his petition, petitioner alleges that his conviction was unconstitutional

due to "insufficiency of the evidence." (Petition 3-4). Petitioner did not raise this claim at any

point in the state court proceedings.[20] He now claims that he was convicted without proof

beyond a reasonable doubt, as required by *Jackson v. Virginia*, 443 U.S. 307 (1979).

Specifically, he claims that there was "no state's evidence of sodomy." (Pet. Memo. 38). He

also raises a general claim that the testimony of the victim was unreliable and improbable. (*Id.* at

38-39). These claims are incorrect.

Due process requires that "no person shall be made to suffer the onus of a criminal

conviction except upon sufficient proof—defined as evidence necessary to convince a trier of

fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v.*

*Virginia*, 443 U.S. 307, 316 (1979) (explaining *In re Winship*, 397 U.S. 358, 364 (1970). "To

determine whether this due process right has been violated, the appropriate inquiry [is] 'whether,

after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt.'" *Sarausad v.*

*Porter*, 479 F.3d 671, 678 (9th Cir. 2007) (*citing Jackson*, 443 U.S. at 319).[21] If confronted by a

record that supports conflicting inferences, a federal habeas court "must presume—even if it

---

[20] This claim could have been raised at trial and later on direct appeal had trial counsel moved for
a judgment of acquittal. In petitioner's post-conviction proceeding, he assigned error to
counsel's failure to move for a judgment of acquittal. In this proceeding, however, petitioner
appears to have abandoned this specific ineffective assistance of counsel claim. He instead
claims, for the first time, that his due process rights were violated due to a conviction based on
insufficient evidence. (Pet. Memo 45-49; Pet. Supp. Memo. 19).

[21] Under 28 U.S.C. § 2254(d)(1), the appropriate inquiry is whether a state court determination
that the evidence was sufficient to support a conviction was an "objectively unreasonable"
application of *Jackson. Sarausad v. Porter*, 479 F.3d 671, 678 (9th Cir. 2007); *Juan H. v. Allen*,
408 F.3d 1262, 1274 (9th Cir. 2005). Since this sufficiency of the evidence claims was not
raised in any state court proceeding and there is not state-court decision to defer to, the
"objectively unreasonable" standard does not apply.

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

does not affirmatively appear on the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.

Petitioner's claims relating to the sodomy conviction are based on his incorrect assertion that the hearsay statements of the victim should not be assessed in determining the sufficiency of the evidence. As previously discussed, the introduction of hearsay statements in this case did not violate the Confrontation Clause. The jury was entitled to consider these statements and this Court should presume that they are reliable, even if they differed from the victim's testimony at trial.[22] In addition, petitioner misstates the record when he claims that the only evidence of sodomy was thought the hearsay statements. The victim confirmed, through the pictures, that he was sodomized by petitioner. (Resp. Ex 115, Tr. 81). Even if petitioner disputes whether that affirmatively appears on the record, this court must resolve the conflict in favor of the state.

In sum, the evidence against petitioner was more than sufficient to support both counts of sodomy and both counts of Sexual Abuse. The victim testified that he was sexually abused and acknowledged through the use of pictures that he was sodomized. The victim's hearsay statements describing the abuse with particularity were properly admitted and before the jury. The jury knew that petitioner had an opportunity to abuse the victim. Finally, petitioner's only defense was that of mistaken identity, which the jury did not believe. On this record, it is clear that any rational trier of fact could have found petitioner guilty beyond a reasonable doubt.

---

[22] *See Robinson v. Newland*, 2001 U.S. Dist. LEXIS 22104 (N.D. Cal. Dec. 28, 2001) (finding that properly admitted hearsay evidence was sufficient under *Jackson* even though it was contradicted by the hearsay declarant at trial).

Page 33 -  RESPONSE TO PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT
        OF PETITION FOR HABEAS CORPUS
        JS/1169093

IV.    **CONCLUSION**

For the reasons stated above and in respondent's previously filed answer and response to habeas petition, petitioner is not entitled to an evidentiary hearing and his habeas petition should be dismissed.

DATED this 24ᵗʰ day of November, 2008.

Respectfully submitted,

HARDY MYERS
Attorney General

JACQUELINE SADKER #06497
Assistant Attorney General
SUMMER R. GLEASON #921127
Senior Assistant Attorney General
Trial Attorneys
Tel (503) 947-4700
Fax (503) 947-4794
Jacqueline.Sadker@doj.state.or.us
Summer.R.Gleason@doj.state.or.us
Of Attorneys for Respondent

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700

## CERTIFICATE OF SERVICE

I certify that on November 24, 2008, I served the foregoing RESPONSE TO

PETITIONER'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF PETITION

FOR HABEAS CORPUS upon the parties hereto by the method indicated below, and addressed

to the following:

Stephen R. Sady                                  ___ HAND DELIVERY
Assistant Federal Public Defender                ___ MAIL DELIVERY
101 SW Main Street, Suite 1700                   ___ OVERNIGHT MAIL
Portland, OR 97204                               ___ TELECOPY (FAX)
                                                 ___ E-MAIL
                                                 _X_ E-FILE


JACQUELINE SADKER #06497
Assistant Attorney General
SUMMER R. GLEASON #921127
Senior Assistant Attorney General
Trial Attorneys
Tel (503) 947-4700
Fax (503) 947-4794
Jacqueline.Sadker@doj.state.or.us
Summer.R.Gleason@doj.state.or.us
Of Attorneys for Respondent

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700