IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| RICHARD LEE, | ) | CV 02-300-CL |
| | ) | |
| Petitioner, | ) | **AMENDED OPINION AND ORDER** |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT LAMPERT, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

**PANNER, Judge**.

Richard Lee served fourteen years in prison, while his appeals languished in file rooms and were shuffled between courts. On March 24, 2009, this court ruled that, on the basis of reliable new evidence that the jury at Lee's trial never heard and viewing the record as a whole, it is "more likely than not" that no reasonable juror would vote to convict Lee of the charges for which he had been imprisoned. Lee v. Lampert, CV 02-300-CL (docket # 112). This court further concluded that Lee had been denied his Sixth Amendment right to confront the witnesses against him at trial, and that Lee's trial and appellate counsel

1- AMENDED OPINION AND ORDER

had provided ineffective assistance.  In fact, Lee's appellate counsel had made no argument at all on behalf of his client.

This court ordered the State of Oregon to retry Lee within 120 days, or else release him from custody.  (# 113).  Respondent filed a notice of appeal.  (# 118).  Respondent now seeks to stay this court's judgment pending final resolution of that appeal.  Respondent's motion (# 117) for a stay is denied.

### A.   This Action is Not Moot

Richard Lee was released from prison six days before this court entered judgment.  His release was not a confession of error by the State.  Rather, the appeals process took so long that Lee served his full prison sentence while awaiting a decision on whether he ought to have been sent to prison in the first place.

Lee's release from prison does not moot this action.  Lee was in "custody" when this federal petition was filed.[1]  Despite his release from prison, Lee remains subject to 130 months (almost eleven years) of intensive post-prison supervision, and a lengthy list of prohibitions and restrictions.  Lee must register as a sex offender.  He is forbidden to reside in many places, and--if history is any guide--may be driven from others.

---

1  Resendiz v. Kovensky, 416 F.3d 952 (9th Cir. 2005), and similar decisions, are distinguishable because the petitioner was not in custody when the petition was filed.

2- AMENDED OPINION AND ORDER

Days before Lee's release, Linn County officials orchestrated a front page story in the local newspaper warning residents a dangerous sex offender was about to be released in their midst. Lee's every movement will be tracked by satellite, using a GPS system. Lee must submit to polygraph examinations, allow his home and person to be searched, and undergo drug testing. He may be required to ingest psychotropic drugs. He may be imprisoned anew if found to have violated post-prison supervision or stringent requirements governing sex offenders.

The foregoing is sufficient to establish that Lee continues to suffer severe adverse collateral consequences as a result of the challenged convictions, hence the case is not moot. <u>See Chaker v. Grogan</u>, 428 F.3d 1215, 1219 (9th Cir. 2005).

**B.    <u>Legal Standards for Staying the Judgment Pending Appeal</u>**

Federal Rule of Appellate Procedure 23(c) provides that:

> While a decision ordering the release of a prisoner is under review, the prisoner must-- unless the court or judge rendering the decision, or the court of appeals, or the Supreme Court, or a judge or justice of either court orders otherwise--be released on personal recognizance, with or without surety.

Fed. R. App. P. 23(c) erects a presumption that a state prisoner will be released from custody pending appellate review of the favorable decision. <u>Hilton v. Braunskill</u>, 481 U.S. 770,

/ / / /

3- AMENDED OPINION AND ORDER

774, 777 (1987).  Respondent has the burden of persuading the court that a different result is warranted here.

Some factors to consider are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  Hilton, 481 U.S. at 776.  The court also may consider whether the petitioner poses a flight risk, and whether the State has established there is a risk the prisoner will pose a danger to the public if released.  Id. at 777.

"The State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal is also a factor to be considered; it will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served."  Id.

    C.    **Evaluation of Factors**

        1.    **Risk of Flight**

The risk of flight is low.  Lee has already served his entire prison sentence.  He has little to gain by fleeing and much to lose.  Cf. Wenqin Sun v. Mukasey, 555 F.3d 802 (9th Cir. 2009) (explaining fugitive disentitlement doctrine).

4- AMENDED OPINION AND ORDER

### 2. Likelihood of Successful Appeal

Respondent has not made a "strong showing that he is likely to succeed on the merits." Hilton, 481 U.S. at 776. The Ninth Circuit almost certainly will conclude that a showing of actual innocence under Schlup v. Delo, 513 U.S. 298 (1995), authorizes a federal court to adjudicate a claim of constitutional error notwithstanding the tardy filing of a 28 U.S.C. § 2254 petition. Lee also has a fallback argument for equitable tolling of the limitations period, which this court did not even reach.

Respondent's other arguments fare little better.[2] For instance, Respondent reasons that a statutory standard stated in 28 U.S.C. § 2254(e)(2) outranks the constitutional standard articulated in Schlup. That argument seems unlikely to carry the day. See Marbury v. Madison, 1 Cranch 137, 176-80 (1803).

Respondent's weakest arguments are on the sodomy counts, which carry the most severe penalties. Lee received a 23-month sentence for the two sex abuse counts, to be served concurrently. Lee has served approximately 170 months.

If Respondent prevails on appeal as to the sex abuse charges, but loses on the sodomy counts, then Lee's term of post-prison supervision will be deemed to have commenced approximately

---

[2] Respondent's Memorandum (# 116) makes repeated reference to Magistrate Judge Clarke's "findings." Judge Clarke did not conduct an evidentiary hearing or trial, and he made no factual "findings." He filed a Report and Recommendation. (# 76).

5- AMENDED OPINION AND ORDER

twelve years ago, when Lee's sentence on the sex abuse charges was "legally completed." See Williamson v. Schiedler, 196 Or. App. 302, 306-07 (2004) (explaining Oregon law, and distinguishing United States v. Johnson, 529 U.S. 53 (2000)). Consequently, Lee's term of post-prison supervision would long since have expired.

Consecutive sentences were imposed on the sodomy counts. Lee already has served those sentences. If the Ninth Circuit agrees that one or both sodomy convictions should be vacated, then Lee's term of post-prison supervision likewise will be deemed to have commenced years ago.

To gain any appreciable benefit from this appeal, Respondent must prevail on all four challenged convictions. That seems unlikely. The solitary exception, where Respondent may arguably claim a benefit if any conviction survives, is the sex offender registration requirement discussed further below.

### 3. Continuing Custody and Rehabilitation

Lee has already served his entire prison sentence. The state's interest in Lee's "rehabilitation" is difficult to measure, as this mode of analysis begins with the questionable assumption that Lee is guilty and "needs" to be rehabilitated.

The court recognizes that after many years in prison, nearly every inmate--innocent or not--may experience some degree of difficulty adjusting to the outside world. To ease this

transition, the State may determine that the public interest is furthered by offering to Mr. Lee assistance such as lodging, employment, medical care, counseling, vocational training and other services during the pendency of this appeal.  The Judgment does not preclude the State from offering such services or Lee from voluntarily accepting those services.  Lee's experienced counsel undoubtedly will offer his client guidance on such matters, to help ensure that Lee achieves a successful transition to the free world.

### 4.    Other Factors

The other factors stated in Hilton are mostly different ways of stating a single issue, a flaw attributable to the Supreme Court's decision to borrow standards that were developed in more traditional civil actions.  Hilton, 481 U.S. at 775-77.

Regarding "(2) whether the applicant will be irreparably injured absent a stay," id. at 776, if "applicant" is defined as Respondent individually, no showing of harm has been made.  If Respondent is merely a surrogate for the public interest, then that inquiry is subsumed within the fourth prong.

The third prong is "(3) whether issuance of the stay will substantially injure the other parties interested in the proceeding[.]" Id.  The only official "parties" are Respondent and Lee.  The latter faces significant harm if a stay is granted.
/ / / /

7- AMENDED OPINION AND ORDER

Matthew, the boy Richard Lee allegedly molested in 1993, may have a personal preference as to the motion for a stay. However, it is unlikely that Matthew or his family, or any witnesses in this case, will have any contact with Richard Lee, regardless of whether a stay is granted or denied. Upon request, the Court will enter an order prohibiting such contact.

Regarding "(4) where the public interest lies," that query largely is redundant of whether the State has established that Lee poses a danger to the public if released. Lee already has been released from prison. The only dispute is over the degree of supervision and the restrictions Lee faces while Respondent's appeal is pending, and whether Lee risks being returned to prison if he violates any post-prison rules.

Respondent prophesizes calamities that will befall Oregon unless the Judgment of this court is stayed. The predicted perils presume Lee is guilty of the crimes charged in the indictment. Respondent pays mere lip service to the possibility that Lee might be innocent. "Granted, this Court has found that no reasonable jury would have convicted him of those charges." Respondent's Memorandum in Support of Motion to Stay Judgment Pending Appeal, p. 8.

Respondent also argues that Lee has a prior criminal conviction. Lee has served his sentence for that crime. Respondent points to no legal authority authorizing Oregon to

8- AMENDED OPINION AND ORDER

keep Lee in custody or under supervision in perpetuity for that past offense.  Rather, the State's power to supervise Lee arises, if at all, from the present offenses for which he was imprisoned.

Lee knows he is a marked man.  The police and others in the community are carefully watching his behavior, regardless of whether Lee is on formal supervised status or is officially registered as a sex offender.  Any misstep and Lee risks returning to prison.  Lee also knows he would be well-served by avoiding situations that could expose him to new suspicions or allegations, whether well-founded or otherwise.

### 5.    Conditioning a Judgment Granting Habeas Relief

A federal judge has broad discretion in conditioning a judgment granting habeas relief.  For instance, "federal courts may delay the release of a successful habeas petitioner in order to provide the State an opportunity to correct the constitutional violation found by the court."  Hilton, 481 U.S. at 775.

The Judgment entered on March 24, 2009, did not order Lee's immediate release from custody.  Rather, the Judgment requires the State to release Lee within 120 days only if the State fails to retry Lee within that time period "excepting such delays as are otherwise excludable under any applicable speedy trial laws . . . ."  The Judgment further provides that "[w]hether Lee remains in custody pending a retrial shall be determined by Oregon courts in accordance with the laws of that state."  Thus,

9- AMENDED OPINION AND ORDER

the State can readily avoid the perils it prophesizes simply by retrying Lee in a timely fashion.

Alternatively, by deferring Lee's release from "custody" for 120 days--which term includes post-prison supervision--the Judgment provides the State time to readjust Lee to the outside world after so many years in prison. As the experienced attorneys on both sides realize, that period of adjustment will benefit Lee as well as the community.

The present motion is before this court only because the State spurned both options provided in the Judgment. The State wants Lee to remain in custody while Respondent appeals.

Even if the Ninth Circuit orders expedited briefing and argument, several years may elapse before a decision is issued. The losing party on appeal might then seek rehearing en banc or a writ of certiorari. The appellate court could decide that a remand is appropriate to hear additional testimony.

The offenses at issue allegedly occurred in 1993. Lee was indicted in 1994, and convicted in 1995. It is now 2009. At this rate, it could be 2019 before the appeal finally is resolved. I will not require Lee to remain in custody, indefinitely, while that process unfolds.

/ / / /

/ / / /

/ / / /

10- AMENDED OPINION AND ORDER

## Conclusion

Respondent's motion (# 117) to Stay the Judgment (# 113) pending appeal is denied.

IT IS SO ORDERED.

DATED this 14th day of April, 2009.

/s/ Owen M. Panner

_____
OWEN M. PANNER
UNITED STATES DISTRICT JUDGE

11- AMENDED OPINION AND ORDER